1  LAW OFFICES OF DALE K. GALIPO
   Dale K. Galipo, Esq. (Bar No. 144074)
2  dalekgalipo@yahoo.com
   21800 Burbank Boulevard, Suite 310
3  Woodland Hills, California 91367
   Tel:   (818) 347-3333
4  Fax:   (818) 347-4118

5

6  *Attorneys for Plaintiffs V.R., et al.*

7              **UNITED STATES DISTRICT COURT**

8             **CENTRAL DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| V.R., a minor, by and through her guardian *ad litem* Ariana Toscano, individually and as successor in interest to Juan Ramon Ramos, deceased; and RAMONA TERRAZAS, individually, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF SAN BERNARDINO; GARY WHEELER; THUN HOUN; JASON CALVERT; and DOES 4-10, inclusive, <br><br> Defendants. | **Case No. 5:19-cv-01023-JGB-SPx** <br><br> [*Hon. Jesus G. Bernal*] <br><br> **THIRD AMENDED COMPLAINT FOR DAMAGES** <br><br> 1. Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983) <br> 2. Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983) <br> 3. Due Process—Interference with Familial Relationship (42 U.S.C. § 1983) <br> 4. Municipal Liability – Inadequate Training (42 U.S.C. § 1983) <br> 5. Municipal Liability – Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983) <br> 6. Battery (wrongful death and survival) <br> 7. Negligence (wrongful death and survival) <br> 8. Violation of Cal. Civil Code § 52.1 <br><br> **DEMAND FOR JURY TRIAL** |

1

## **THIRD AMENDED COMPLAINT FOR DAMAGES**

COME NOW Plaintiffs V.R., a minor, by and through her guardian *ad litem* Ariana Toscano, individually and as successor in interest to Juan Ramon Ramos, deceased and RAMONA TERRAZAS individually, for their Third Amended Complaint against Defendants County of San Bernardino, Gary Wheeler, Jason Calvert, Thun Houn and Does 4-10, inclusive, and allege as follows:

## **JURISDICTION AND VENUE**

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.  This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## **INTRODUCTION**

3.      This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the fatal deputy-involved shooting of Plaintiffs' father and son Juan Ramon Ramos ("DECEDENT"), on July 22, 2018.

**PARTIES**

4.    At all relevant times, DECEDENT was an individual residing in the City of Highland, California.

5.    Plaintiff V.R., a minor, is an individual residing in the City of Victorville, California and is the natural daughter of DECEDENT.  V.R. sues in her individual capacity as the daughter of DECEDENT and also as the successor in interest to DECEDENT.  V.R. seeks both survival and wrongful death damages under federal and state law.

6.    Plaintiff RAMONA TERRAZAS is an individual residing in the City of San Bernardino, California and is the natural mother of DECEDENT.  RAMONA TERRAZAS sues in her individual capacity as the mother of DECEDENT.  RAMONA TERRAZAS seeks wrongful death damages under state law.

7.    At all relevant times, Defendant COUNTY OF SAN BERNARDINO ("COUNTY") is and was a municipal corporation existing under the laws of the State of California.  COUNTY is a chartered subdivision of the State of California with the capacity to be sued.  COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the San Bernardino County Sheriff's Department and its agents and employees.  At all relevant times, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the San Bernardino County Sheriff's Department and its employees and agents complied with the laws of the United States and of the State of California.  At all relevant times, COUNTY was the employer of Defendants DOES 4-10.

8.    Defendant GARY WHEELER ("WHEELER") is a deputy sheriff working for the San Bernardino County Sheriff's Department.  At all relevant times, WHEELER was acting under color of law within the course and scope of his duties as a sheriff's deputy for the San Bernardino County Sheriff's Department.

1   WHEELER was acting with the complete authority and ratification of his principal,

2   Defendant COUNTY.

3        9.    Defendant JASON CALVER ("CALVERT") is a deputy sheriff

4   working for the San Bernardino County Sheriff's Department.  At all relevant times,

5   CALVERT was acting under color of law within the course and scope of his duties

6   as a sheriff's deputy for the San Bernardino County Sheriff's Department.

7   CALVERT was acting with the complete authority and ratification of his principal,

8   Defendant COUNTY.

9        10.    Defendant THUN HOUN ("HOUN") is a deputy sheriff working for

10   the San Bernardino County Sheriff's Department.  At all relevant times, HOUN was

11   acting under color of law within the course and scope of his duties as a sheriff's

12   deputy for the San Bernardino County Sheriff's Department.  HOUN was acting

13   with the complete authority and ratification of his principal, Defendant COUNTY.

14        11.    Defendants DOES 4-5 ("DOE DEPUTIES") are deputy sheriffs

15   working for the San Bernardino County Sheriff's Department.  At all relevant times,

16   DOE DEPUTIES were acting under color of law within the course and scope of

17   their duties as sheriff's deputies for the San Bernardino County Sheriff's

18   Department.  DOE DEPUTIES were acting with the complete authority and

19   ratification of their principal, Defendant COUNTY.

20        12.    Defendants DOES 6-10 are managerial, supervisorial, and

21   policymaking employees of the San Bernardino County Sheriff's Department, who

22   were acting under color of law within the course and scope of their duties as

23   managerial, supervisorial, and policymaking employees for the San Bernardino

24   County Sheriff's Department.  DOES 6-10 were acting with the complete authority

25   and ratification of their principal, Defendant COUNTY.

26        13.    On information and belief, DOES 4-10 were residents of the County of

27   San Bernardino.

28

14.     In doing the acts and failing and omitting to act as hereinafter described, Defendants DOE DEPUTIES were acting on the implied and actual permission and consent of Defendants DOES 6-10 and the COUNTY.

15.     In doing the acts and failing and omitting to act as hereinafter described, Defendants CALVERT, HOUN, WHEELER, and DOES 4-10 were acting on the implied and actual permission and consent of the COUNTY.

16.     The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 4-10, inclusive, are unknown to Plaintiffs, who otherwise sue these Defendants by such fictitious names.  Plaintiffs will seek leave to amend their complaint to show the true names and capacity of these Defendants when they have been ascertained.  Each of the fictitiously-named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

17.     At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

18.     All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity.  Moreover, Defendants and their agents ratified all of the acts complained of herein.

19.     CALVERT, HOUN, WHEELER, and DOES 4-10 are sued in their individual capacity.

20.     On or around December 4, 2018, Plaintiffs filed comprehensive and timely claims for damages with the County of San Bernardino pursuant to applicable sections of the California Government Code.

21.     On January 28, 2019, the COUNTY rejected Plaintiffs' claims.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

22.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 21 of their Complaint with the same force and effect as if fully set forth herein.

23.     On July 22, 2018, at approximately 4:00 p.m. in Highland, California, Defendant WHEELER initiated a traffic stop on DECEDENT's vehicle after allegedly receiving a dispatch regarding the vehicle. DECEDENT slowly drove into a gas station parking lot where he stopped his vehicle. WHEELER approached the vehicle and allegedly observed DECEDENT with a box cutter inside the vehicle. DECEDENT was the only person inside the vehicle. WHEELER drew his gun and held DECEDENT at gunpoint.

24.     WHEELER reached into the vehicle through the front driver side door and attempted to take the keys from the vehicle. DECEDENT closed the door of the vehicle and drove away. After a short pursuit, DECEDENT stopped the vehicle at a dead end and remained in the vehicle.

25.     WHEELER broke the front passenger window of DECEDENT's vehicle with a battering ram. DECEDENT then drove the vehicle forward and exited the vehicle.

26.     After DECEDENT exited the vehicle, HOUN fired three beanbag rounds at DECEDENT without justification, striking him, and CALVERT deployed his Taser for one cycle against DECEDENT around the same time, also without justification. When HOUN deployed the three beanbag rounds against DECEDENT and also when CALVERT deployed his first Taser cycle against DECEDENT, DECEDENT posed no threat to any person and was not attempting to attack any

person.  Neither HOUN nor CALVERT issued a warning prior to using force against DECEDENT

27.     After HOUN deployed his third beanbag round and after CALVERT fired his first Taser cycle, DECEDENT retreated to his vehicle.  Shortly thereafter, DECEDENT began to run northbound in the alleyway.  As DECEDENT was running, WHEELER fired one round at DECEDENT from a lethal firearm, striking him in the left side with a back-to-front trajectory.  WHEELER failed to issue a warning that he was prepared to use deadly force prior to shooting.  WHEELER shot DECEDENT without justification, thereby using excessive force against him.

28.     A few seconds after the shooting, CALVERT deployed a second Taser cycle against DECEDENT, notwithstanding that DECEDENT had already been struck with a lethal round.

29.     At the time of the shooting and other uses of force against him, including the beanbag guns and both Taser cycles, DECEDENT did not pose an immediate threat of death or serious bodily injury to the deputies or to anyone else.  DECEDENT was not armed with a gun at any point during this incident.

30.     On information and belief, DECEDENT was mentally ill or undergoing a mental health crisis.

31.     After being shot with beanbag rounds and a lethal firearm, as well as being Tased twice, DECEDENT was immobile, bleeding profusely, and in obvious and critical need of emergency medical care and treatment.  Defendants did not timely summon medical care or permit medical personnel to treat DECEDENT.  The delay of medical care to DECEDENT caused DECEDENT extreme physical and emotional pain and suffering and was a contributing cause of DECEDENT's death.

32.     DECEDENT survived for a period of time after the shooting.  He was transported from the scene of the shooting to the hospital, where he was pronounced dead.

33.     Plaintiff V.R. is DECEDENT's successor in interest as defined in Section 377.11 of the California Code of Civil Procedure and succeeds to DECEDENT's interest in this action as the natural child of DECEDENT.

34.     Plaintiff RAMONA TERRAZAS was financially dependent on DECEDENT, to some extent, for the necessities of life.

35.     Plaintiffs incurred funeral and burial expenses as a result of the shooting.

## FIRST CLAIM FOR RELIEF

### Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)

(By Plaintiff V.R. against Defendants WHEELER, CALVERT, and HOUN)

36.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 35 of their Complaint with the same force and effect as if fully set forth herein.

37.     On July 22, 2018, at approximately 4:00 p.m. in Highland, California, Defendant WHEELER initiated a traffic stop on DECEDENT's vehicle after allegedly receiving a dispatch regarding the vehicle.  DECEDENT slowly drove into a gas station parking lot where he stopped his vehicle.  WHEELER approached the vehicle and allegedly observed DECEDENT with a box cutter inside the vehicle. DECEDENT was the only person inside the vehicle.  WHEELER drew his firearm and held DECEDENT at gunpoint.

38.     WHEELER reached into the vehicle through the front driver side door and attempted to take the keys from the vehicle.  DECEDENT closed the door of the

vehicle and drove away.  After a short pursuit, DECEDENT stopped the vehicle at a dead end and remained in the vehicle.

39.    WHEELER broke the front passenger window of DECEDENT's vehicle with a battering ram.  DECEDENT then drove the vehicle forward and exited the vehicle.

40.    After DECEDENT exited the vehicle, HOUN fired three beanbag rounds at DECEDENT without justification, striking him, and CALVERT deployed his Taser for one cycle against DECEDENT around the same time, also without justification.  When HOUN deployed the three beanbag rounds against DECEDENT and also when CALVERT deployed his first Taser cycle against DECEDENT, DECEDENT posed no threat to any person and was not attempting to attack any person.  Neither HOUN nor CALVERT issued a warning prior to using force against DECEDENT

41.    After HOUN deployed his third beanbag round and after CALVERT fired his first Taser cycle, DECEDENT retreated to his vehicle.  Shortly thereafter, DECEDENT began to run northbound in the alleyway.  As DECEDENT was running, WHEELER fired one round at DECEDENT from a lethal firearm, striking him in the left side with a back-to-front trajectory.  WHEELER failed to issue a warning that he was prepared to use deadly force prior to shooting.  WHEELER shot DECEDENT without justification, thereby using excessive force against him.

42.    A few seconds after the shooting, CALVERT deployed a second Taser cycle against DECEDENT without justification, notwithstanding that DECEDENT had already been struck with a lethal round.

43.    At the time of the officers' uses of force against him, DECEDENT did not pose an immediate threat of death or serious bodily injury to the deputies or to anyone else.  Therefore, all of their uses of force were excessive and objectively

unreasonable.  DECEDENT was not armed with a gun at any point during this incident.

44.     Defendants' unjustified shooting and other uses of force against DECEDENT deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

45.     The shooting and other uses of force were excessive and unreasonable, particularly because DECEDENT posed no immediate threat of death or serious bodily injury at the time of the shooting and other uses of force.  Moreover, CALVERT, WHEELER, and HOUN all failed to give a warning that they were prepared to use force against him.  Further, the shooting and other uses of force violated the defendant officers' training and standard police officer training.

46.     As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of his death at the hospital after the shooting, loss of enjoyment of life, loss of life, and loss of earning capacity.

47.     The conduct of Defendants CALVERT, WHEELER, and HOUN was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages as to Defendants CALVERT, WHEELER, and HOUN.

48.     Plaintiff V.R. brings this claim as successor in interest to DECEDENT, and seeks survival damages for the violation of DECEDENT's rights. Plaintiffs further seek attorney's fees and costs under this claim.

THIRD AMENDED COMPLAINT FOR DAMAGES

## SECOND CLAIM FOR RELIEF

### Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)

(By Plaintiff V.R. against Defendants CALVERT, WHEELER, and HOUN)

49.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 48 of their Complaint with the same force and effect as if fully set forth herein.

50.      After being Tased twice and shot with both a bean bag gun and a lethal firearm, DECEDENT was immobile, bleeding profusely, and in obvious and critical need of emergency medical care and treatment.  Defendants did not timely summon medical care or permit medical personnel to treat DECEDENT.  The delay of medical care to DECEDENT caused DECEDENT extreme physical and emotional pain and suffering and was a contributing cause of DECEDENT's death.

51.     The denial of medical care by the defendant officers deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

52.     As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity.

53.     Defendants CALVERT, WHEELER, and HOUN knew that failure to provide timely medical treatment to DECEDENT could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing DECEDENT great bodily harm and death.

54.     DECEDENT survived for a period of time after incident.  He was transported from the scene of the shooting to the hospital, where he died on the date of the shooting.

55.     The conduct of CALVERT, WHEELER, and HOUN was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to Defendants CALVERT, WHEELER, and HOUN.

56.     As a result of their misconduct, Defendants CALVERT, WHEELER, and HOUN are liable for DECEDENT's injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

57.     Plaintiff  V.R. brings this claim as successor in interest to DECEDENT, and seeks survival damages for the violation of DECEDENT's rights. Plaintiffs further seek attorney's fees and costs under this claim.

## THIRD CLAIM FOR RELIEF

**Due Process—Interference with Familial Relationship (42 U.S.C. § 1983)**

(By Plaintiffs V.R. and RAMONA TERRAZAS against Defendants CALVERT, WHEELER, and HOUN)

58.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 57 of their Complaint with the same force and effect as if fully set forth herein.

59.     Plaintiff V.R. had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with her father, DECEDENT.

60.     Plaintiff RAMONA TERRAZAS had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a

manner as to shock the conscience, including but not limited to unwarranted state interference in her familial relationship with her son, DECEDENT.

61.     The aforementioned actions of CALVERT, WHEELER, and HOUN, including Tasing DECEDENT, using a bean bag gun against him, and then shooting him as he was running away, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

62.     CALVERT, WHEELER, and HOUN thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with DECEDENT, their father and son.

63.     As a direct and proximate cause of the acts of CALVERT, WHEELER, and HOUN, all Plaintiffs suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

64.     The conduct of CALVERT, WHEELER, and HOUN was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to Defendants CALVERT, WHEELER, and HOUN.

65.     Plaintiffs V.R. and RAMONA TERRAZAS bring this claim in each case individually and seek wrongful death damages under this claim for the interference with Plaintiffs' familial relationship with DECEDENT.  Plaintiffs also seek attorney's fees and costs under this claim.

## **FOURTH CLAIM FOR RELIEF**

### **Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

(By Plaintiff V.R. against Defendants COUNTY and DOES 6-10)

66.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 65 of their Complaint with the same force and effect as if fully set forth herein.

67.     Defendants CALVERT, WHEELER, and HOUN acted under color of law.

68.     The acts of Defendants CALVERT, WHEELER, and HOUN, including Tasing DECEDENT, using a bean bag gun him, fatally shooting DECEDENT while he was running away, using other undiscovered force against him, failing to give a warning that deadly force would be used prior to shooting, failing to appropriately address a situation involving a mentally ill individual, and then denying DECEDENT prompt and necessary medical care, deprived DECEDENT and Plaintiffs of their particular rights under the United States Constitution.

69.     The training policies of Defendant COUNTY were not adequate to train its deputies to handle the usual and recurring situations with which they must deal.  This includes training polices with respect to the use of the Taser, the use of the bean bag gun, and the use of deadly force, as well as with respect to handling situations involving a person who is having a mental crisis or who is mentally ill.

70.     Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train its deputies adequately.

71.     The failure of Defendant COUNTY to provide adequate training caused the deprivation of Plaintiffs' rights by Defendants CALVERT, WHEELER, and HOUN; that is, the defendants' failure to train is so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused the ultimate injury.

72.   The following are only a few examples of continued conduct by sheriff's deputies working for the County of San Bernardino, which indicate the County of San Bernardino's failure to properly train its sheriff's deputies:

a)   In *Estate of Merlin Factor v. County of San Bernardino, et al.*, case number 5:14-cv-01289-DMG-AGR(x), Plaintiffs argued that the use of deadly force against the unarmed Merlin Factor was unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.

b)   In *Archibald v. County of San Bernardino*, case number 5-16-cv-1128, Plaintiff argued that the involved San Bernardino County sheriff's deputy used deadly force against the unarmed Nathanael Pickett when he posed no immediate threat. The jury in that case returned a $33.5 million verdict against Defendant County of San Bernardino and its involved officer.

c)   Numerous prior incidents at County San Bernardino detention centers also support Plaintiffs' claims for Municipal Liability in this case. For example, between 2014 and 2016, thirty-three County inmates filed lawsuits alleging torture by the County and its deputies involving violations of 42 USC 1983. (Case Nos. 5:15-cv-02515-JGB-DTB) Johnny Alcala and 14 other inmates sued the County, and David Smith filed his own lawsuit (5:15-cv-02513-JGB-DTB), going back to years of torture by County correctional officers. Moreover, the ACLU also brought a class action lawsuit alleging unconstitutional practice of LGBT inmates at the County's WVDC. (Case No. 14-2171-JGB-SP). The ACLU's lawsuit addressed the trouble of WVDC in denying services in unconstitutional manner, including failure to make safety

checks as mandated by Title 15, and the suit represented approximately 600 individuals.

73.     By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

74.     Accordingly, Defendants COUNTY and DOES 6-10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

75.     Plaintiff V.R. brings this claim as successor in interest to DECEDENT and seeks both survival and wrongful death damages under this claim.  Plaintiffs also seek attorney's fees and costs under this claim.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)

(By Plaintiff V.R. against Defendants COUNTY and DOES 6-10)

76.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 75 of their Complaint with the same force and effect as if fully set forth herein.

77.     Defendants CALVERT, WHEELER, and HOUN acted under color of law.

78.     When CALVERT Tased DECEDENT, when HOUN used a bean bag gun against DECEDENT, when WHEELER fatally shot DECEDENT while he was running away, and when  Defendants denied DECEDENT prompt and necessary medical care, Defendants CALVERT, WHEELER, and HOUN acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the Defendant COUNTY.

79.     On information and belief, Defendants CALVERT, WHEELER, and HOUN were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with DECEDENT's death.

80.     Defendants CALVERT, WHEELER, and HOUN, together with other COUNTY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)     Using excessive force, including excessive use of deadly force and excessive use of less-than-lethal force, including of the Taser and the bean bag gun;

(b)     Providing inadequate training regarding the use of deadly force, the use of the Taser, and the use of the bean bag gun;

(c)     Employing and retaining as deputy sheriffs individuals such as Defendants CALVERT, WHEELER, and HOUN, whom Defendant COUNTY at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

(d)     Inadequately supervising, training, controlling, assigning, and disciplining COUNTY deputies and other personnel, including Defendants CALVERT, WHEELER, and HOUN, whom Defendant COUNTY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits, including a failure to train with respect to the Taser, lethal firearms, and bean bag guns;

(e)     Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by COUNTY deputies;

(f)   Failing to adequately discipline COUNTY deputies for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(g)   Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional;

(h)   Even where shootings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved;

(i)   Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing; and

(j)   Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings and other uses of force, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in shootings of unarmed people.

81.   By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT.  The aforementioned acts and

omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

82.     Defendants COUNTY and DOES 6-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies.  Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT, Plaintiffs, and other individuals similarly situated.

83.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, DOES 6-10 acted with intentional, reckless, and callous disregard for the life of DECEDENT and for DECEDENT's and Plaintiffs' constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants COUNTY and DOES 6-10 were affirmatively linked to and were a significantly influential force behind the injuries of DECEDENT and Plaintiffs.

84.     The following are only a few examples of continued conduct by sheriff's deputies working for the COUNTY, which indicate the COUNTY's failure to properly train its sheriff's deputies:

a) In *Estate of Merlin Factor v. County of San Bernardino, et al.*, case number 5:14-cv-01289-DMG-AGR(x), Plaintiffs argued that the use of deadly force against the unarmed Merlin Factor in 2013 was unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.

b) In *Archibald v. County of San Bernardino*, case number 5-16-cv-1128, Plaintiff argued that the involved San Bernardino County sheriff's

1     deputy used deadly force against the unarmed Nathanael Pickett in

2     2015 when he posed no immediate threat. In 2018, the jury in that case

3     returned a $33.5 million verdict against Defendant County of San

4     Bernardino and its involved officer.

5     c) Numerous prior incidents at County San Bernardino detention centers

6     also support Plaintiffs' claims for Municipal Liability in this case. For

7     example, between 2014 and 2016, thirty-three County inmates filed

8     lawsuits alleging torture by the County and its deputies involving

9     violations of 42 USC 1983. (Case Nos. 5:15-cv-02515-JGB-DTB)

10    Johnny Alcala and 14 other inmates sued the County, and David Smith

11    filed his own lawsuit (5:15-cv-02513-JGB-DTB), going back to years

12    of torture by COUNTY correctional officers. Moreover, the ACLU also

13    brought a class action lawsuit alleging unconstitutional practice of

14    LGBT inmates at the County's WVDC. (Case No. 14-2171-JGB-SP).

15    The ACLU's lawsuit addressed the trouble of WVDC in denying

16    services in unconstitutional manner, including failure to make safety

17    checks as mandated by Title 15, and the suit represented approximately

18    600 individuals.

19    85.   Accordingly, Defendants COUNTY and DOES 6-10 each are liable to

20    Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

21    86.   Plaintiff V.R. brings this claim individually and as successor in interest

22    to DECEDENT and seeks both survival and wrongful death damages under this

23    claim. Plaintiffs also seek attorney's fees and costs under this claim.

24

25

26

27

28

## SIXTH CLAIM FOR RELIEF

**Battery** (wrongful death and survival claim)

(By Plaintiffs V.R. and RAMONA TERRAZAS against Defendants CALVERT,

WHEELER, HOUN, and COUNTY)

87.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 86 of their Complaint with the same force and effect as if fully set forth herein.

88.     On July 22, 2018, at approximately 4:00 p.m. in Highland, California, Defendant WHEELER initiated a traffic stop on DECEDENT's vehicle after allegedly receiving a dispatch regarding the vehicle.  DECEDENT slowly drove into a gas station parking lot where he stopped his vehicle.  WHEELER approached the vehicle and allegedly observed DECEDENT with a box cutter inside the vehicle.  DECEDENT was the only person inside the vehicle.  WHEELER drew his gun and held DECEDENT at gunpoint.

89.     WHEELER reached into the vehicle through the front driver side door and attempted to take the keys from the vehicle.  DECEDENT closed the door of the vehicle and drove away.  After a short pursuit, DECEDENT stopped the vehicle at a dead end and remained in the vehicle.

90.     WHEELER broke the front passenger window of DECEDENT's vehicle with a battering ram.  DECEDENT then drove the vehicle forward and exited the vehicle.

91.     After DECEDENT exited the vehicle, HOUN fired three beanbag rounds at DECEDENT without justification, striking him, and CALVERT deployed his Taser for one cycle against DECEDENT around the same time.  When HOUN deployed the three beanbag rounds against DECEDENT, and also when CALVERT deployed his first Taser cycle against DECEDENT, DECEDENT posed no threat to any person and was not attempting to attack any person.  Neither HOUN nor

1   CALVERT issued a warning prior to using force against DECEDENT, even though
2   it was feasible to do so.

3        92.    After HOUN deployed his third beanbag round and after CALVERT
4   fired his first Taser cycle, DECEDENT retreated to his vehicle.  Shortly thereafter,
5   DECEDENT began to run northbound in the alleyway.  As DECEDENT was
6   running, WHEELER fired one round at DECEDENT from a lethal firearm, striking
7   him in the left side with a back-to-front trajectory.  WHEELER failed to issue a
8   warning that he was prepared to use deadly force prior to shooting.  WHEELER
9   shot DECEDENT without justification, thereby using objectively unreasonable
10  force against him.

11       93.    A few seconds after the shooting, CALVERT deployed a second Taser
12  cycle against DECEDENT without justification, notwithstanding that DECEDENT
13  had already been struck with a lethal round.

14       94.    At the time of the officers' uses of force against him, DECEDENT did
15  not pose an immediate threat of death or serious bodily injury to the deputies or to
16  anyone else.  Therefore, all of their uses of force were excessive and objectively
17  unreasonable.  DECEDENT was not armed with a gun at any point during this
18  incident.

19       95.    As a direct and proximate result of the conduct of CALVERT,
20  WHEELER, and HOUN as alleged above, DECEDENT sustained injuries, died
21  from his injuries and also lost his earning capacity.  As a direct and proximate result
22  of the conduct of CALVERT, WHEELER, and HOUN as alleged above,
23  DECEDENT suffered survival damages pursuant to Code of Civil Procedure
24  Section 377.34, including during the time that he survived after the shooting before
25  dying at the hospital on the date of the shooting.

26       96.    The COUNTY is vicariously liable for the wrongful acts of
27  CALVERT, WHEELER, and HOUN pursuant to section 815.2(a) of the California

28

1  Government Code, which provides that a public entity is liable for the injuries
2  caused by its employees within the scope of the employment if the employee's act
3  would subject him or her to liability.

4        97.    The conduct of CALVERT, WHEELER, and HOUN was malicious,
5  wanton, oppressive, and accomplished with a conscious disregard for the rights of
6  Plaintiffs and DECEDENT, entitling Plaintiffs, individually and as the successor in
7  interest to DECEDENT, to an award of exemplary and punitive damages as to
8  Defendants CALVERT, WHEELER, and HOUN.

9        98.    Plaintiff V.R. brings this claim individually and as successor in interest
10  to DECEDENT, and seeks both survival damages and wrongful death damages
11  under this claim.  Plaintiff RAMONA TERRAZAS brings this claim in her
12  individual capacity and seeks wrongful death damages under this claim.

13
14  **SEVENTH CLAIM FOR RELIEF**

15  **Negligence** (wrongful death and survival claim)

16  (By Plaintiffs V.R. and RAMONA TERRAZAS against all Defendants)

17        99.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1
18  through 98 of their Complaint with the same force and effect as if fully set forth
19  herein.

20        100.   Deputy sheriffs, including Defendants CALVERT, WHEELER, and
21  HOUN, have a duty to use reasonable care to prevent harm or injury to others. This
22  duty includes using appropriate tactics, giving appropriate commands, giving
23  warnings, and not using any force unless necessary, using less than lethal options,
24  and only using deadly force as a last resort.

25        101.   Defendants CALVERT, WHEELER, and HOUN breached this duty of
26  care.  The actions and inactions of Defendants CALVERT, WHEELER, and HOUN
27  were negligent and reckless, including but not limited to:

28

(a)   the failure to properly and adequately assess the need to use force against DECEDENT, including using a Taser, a bean bag gun and a lethal firearm against DECEDENT;

(b)   the negligent tactics and handling of the situation with DECEDENT, including pre-shooting negligence and the failure to properly handle a situation with a mentally ill individual or a person who is undergoing a mental crisis;

(c)   the negligent detention, arrest, and use of force, including deadly force, against DECEDENT;

(d)   the failure to provide prompt medical care to DECEDENT;

(e)   the failure to properly train and supervise employees, both professional and non-professional, including CALVERT, WHEELER, and HOUN;

(f)   the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT; and

(g)   the negligent communication of information during the incident.

102.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and suffering and ultimately died.  Also as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs have suffered emotional distress and mental anguish.  Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

103.   The COUNTY is vicariously liable for the wrongful acts of Defendants DOES 4-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within

the scope of the employment if the employee's act would subject her or her to liability.

104.    Plaintiff V.R. brings this claim individually and as successor in interest to DECEDENT, and seeks both wrongful death and survival damages under this claim. Plaintiff RAMONA TERRAZAS brings this claim individually and seeks wrongful death damages under this claim.

## EIGHTH CLAIM FOR RELIEF

### (Violation of Cal. Civil Code § 52.1)

(By Plaintiffs V.R. and RAMONA TERRAZAS against all Defendants)

105.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 104 of their Complaint with the same force and effect as if fully set forth herein.

106.    California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights, which can be shown by a reckless disregard for that person's civil rights.

107.    On information and belief, Defendants CALVERT, WHEELER, and HOUN, while working for the COUNTY and acting within the course and scope of their duties, intentionally committed and attempted to commit acts of violence against DECEDENT, including by Tasing DECEDENT, shooting him with a bean bag gun, fatally shooting him with a firearm without justification or excuse, handcuffing him, integrally participating and failing to intervene in the above violence, and denying him necessary medical care.

108.    When Defendants CALVERT, WHEELER, and HOUN used a Taser and a bean bag gun against DECEDENT, fatally shot DECEDENT with a firearm as he was running away, handcuffed him, and allowed him to lie bleeding on the

ground, they interfered with his civil rights to be free from unreasonable searches and seizures, to due process, to equal protection of the laws, to medical care, to be free from state actions that shock the conscience, and to life, liberty, and property.

109.   On information and belief, Defendants intentionally committed the above acts to discourage DECEDENT from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights, which he was fully entitled to enjoy.

110.   CALVERT, WHEELER, and HOUN intended to interfere with DECEDENT's constitutional rights, did interfere with DECEDENT's constitutional rights, and also acted with reckless disregard for DECEDENT's constitutional rights.

111.   On information and belief, DECEDENT reasonably believed and understood that the violent acts committed by Defendants CALVERT, WHEELER, and HOUN were intended to discourage him from exercising his constitutional rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

112.   Defendants successfully interfered with the constitutional rights of DECEDENT and Plaintiffs.

113.   The conduct of Defendants CALVERT, WHEELER, and HOUN was a substantial factor in causing Plaintiffs' harms, losses, injuries, and damages.

114.   The COUNTY is vicariously liable for the wrongful acts of Defendants CALVERT, WHEELER, and HOUN pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

115.   Defendants DOES 6-10 are vicariously liable under California law and the doctrine of *respondeat superior*.

116.   The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for DECEDENT's and Plaintiffs' rights, justifying an award of exemplary and punitive damages as to Defendants CALVERT, WHEELER, and HOUN.

117.   Plaintiff V.R. brings this claim as successor in interest to DECEDENT, and seeks wrongful death and survival damages under this claim. Plaintiff RAMONA TERRAZAS brings this claim individually and seeks wrongful death damages under this claim.  Plaintiffs also seek attorney's fees and costs under this claim pursuant to Cal. Civ. Code §52 *et seq*.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs V.R., by and through her guardian *ad litem* Ariana Toscano and RAMONA TERRAZAS request entry of judgment in their favor and against Defendants County of San Bernardino, Gary Wheeler, Jason Calvert, Thun Houn and Does 4-10, inclusive, as follows:

A.    For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in the amount to be proven at trial;

B.    For funeral and burial expenses, and loss of financial support;

C.    For punitive damages against the individual defendants in an amount to be proven at trial;

D.    For interest;

E.    For reasonable attorneys' fees, including litigation expenses;

F.    For costs of suit; and

G.    For such further other relief as the Court may deem just, proper, and appropriate.

DATED: May 26, 2020

LAW OFFICES OF DALE K. GALIPO

/s/

Dale K. Galipo
Renee V. Masongsong
*Attorneys for Plaintiffs*

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs hereby demand a trial by jury.

3

4    DATED: May 26, 2020         LAW OFFICES OF DALE K. GALIPO

5                                /s/

6                                Dale K. Galipo
                                 Renee V. Masongsong
7                                *Attorneys for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28