1  JOHN M. FUJII, SBN 172718
   JFujii@SilverWrightLaw.com
2  MAHADHI CORZANO, SBN 254905
   MCorzano@SilverWrightLaw.com
3  SILVER & WRIGHT LLP
   3 Corporate Park, Suite 100
4  Irvine, California 92606
   Phone: 949-385-6431
5  Fax:   949-385-6428

6  Attorneys for Defendants
   COUNTY OF SAN BERNARDINO;
7  GARY WHEELER; THUN HOUN; JASON
   CALVERT

8

9               UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  V.R., a minor, by and through her          Case No.:    5:19-cv-01023-JGB-SP
    guardian *ad litem* Ariana Toscano,        Judge:       Jesus G. Bernal
13  individually and as successor in interest  Mag. Judge:  Sheri Pym
    to Juan Ramon Ramos, deceased; and
14  RAMONA TERRAZAS,                            **DEFENDANTS' NOTICE OF
                                                MOTION AND MOTION TO
15          Plaintiffs,                         SUMMARY JUDGMENT, OR IN
                                                THE ALTERNATIVE, PARTIAL
16      v.                                      SUMMARY JUDGMENT**

17  COUNTY OF SAN BERNARDINO;                   [Filed concurrently with:
    GARY WHEELER; THUN HOUN;                    1.  Memorandum of Points and
18  JASON CALVERT; and DOES 4-10,                   Authorities
    inclusive                                   2.  Statement of Undisputed Facts
19                                              3.  Appendix of Exhibits
            Defendants.                         4.  [Proposed] Judgment]
20

21

22                                              <u>Hearing</u>
                                                Date:        November 8, 2021
23                                              Time:        9:00 a.m.
                                                Courtroom:   1
24                                              Judge:       Jesus G. Bernal

25

26

27

28

SILVER & WRIGHT LLP
IRVINE INLAND EMPIRE BAY AREA SACRAMENTO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SILVER & WRIGHT LLP
IRVINE INLAND EMPIRE BAY AREA SACRAMENTO

## DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on <u>November 8, 2021</u> at 9:00 a.m. in Courtroom 1 of the above-referenced Court, located at 3470 Twelfth Street, Riverside, California, 92501-3801, Defendants County of San Bernardino (the "County"), Sergeant Gary Wheeler, Sergeant Jason Calvert, and Deputy Thun Houn (collectively, "Defendants") will and hereby move this Court for an Order granting their Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, pursuant to Federal Rules of Civil Procedure rule 56 ("Motion"). This Motion is made on the grounds that:

1.     Plaintiffs' first claim for excessive force against Deputy Thun Houn ("Deputy Houn") fails as a matter of law since Deputy Houn used reasonable force on Decedent to gain his compliance. Deputy Houn deployed three consecutive beanbag rounds at Decedent to gain compliance because he posed an immediate threat to the safety of nearby deputies and bystanders. Prior to deploying his weapon, Decedent drove recklessly in evading police and risking the lives of the public, refused to comply with deputies' commands to drop the knife and exit his vehicle for over 30 minutes, was under the influence of drugs and behaving erratically, and was armed with a knife. At the time Deputy Houn deployed his weapon, Decedent had just attempted to flee from the deputies by accelerating his vehicle forward toward a dirt alleyway, exited his vehicle with a knife in his hand, refused commands to drop the knife, and was not subdued and still a flight risk.

2.     Plaintiffs' first claim for excessive force against Sergeant Jason Calvert ("Sergeant Calvert") fails as a matter of law since there was no seizure. Both times Sergeant Calvert deployed his taser, the probes did not penetrate Decedent's skin and Decedent continued fleeing. Even if there was a seizure, the seizure was not unlawful

because Sergeant Calvert used reasonable force on Decedent to restrain him. Sergeant Calvert deployed his taser twice to restrain Decedent since he posed an immediate threat to the safety of nearby deputies and bystanders. At the time Sergeant Calvert deployed his first taser dart, Decedent was armed, had refused deputies' commands, and was fleeing from the scene where deputies and bystanders were nearby. The second time Sergeant Calvert deployed his taser, Decedent had jumped over the front yard's chain-linked fence and was heading toward the front porch with a knife in his hand and where bystanders were nearby.

3. Plaintiffs' first claim for excessive force against Sergeant Gary Wheeler ("Sergeant Wheeler") fails as a matter of law since Sergeant Wheeler used reasonable force on Decedent to prevent him from causing an imminent and significant threat of death or serious physical injury to bystanders who were in the front yard and house. Prior to discharging his weapon, Sergeant Wheeler suspected Decedent was under the influence of drugs and was aware that Decedent had threatened the public's safety by driving recklessly in his attempt to evade the police, refused deputies' commands to drop the weapon and surrender for over 30 minutes, use of less-lethal alternatives was ineffective to gain compliance or restrain him, and Decedent was attempting to flee by running down a dirt alleyway with a knife in his hand. At the time Sergeant Wheeler discharged his weapon, Decedent was armed with a knife and posed an imminent and significant threat of causing death or serious physical injury to a bystander standing 12 feet away as Decedent was turning toward him. Sergeant Wheeler did not have an opportunity to delay firing of his weapon a split-second longer because another deputy, who was on the other side of the alleyway, would have been in his shooting background.

4. Plaintiffs' third claim for interference with familial relationship fails as a matter of law since Plaintiffs have presented no evidence that Sergeant Wheeler had a specific intent to harm Decedent that was unrelated to a legitimate law enforcement objective.

///

DEFENDANTS' NOTICE OF MOTION TO FOR SUMMARY JUDGMENT

SILVER & WRIGHT LLP
IRVINE, INLAND EMPIRE, BAY AREA, SACRAMENTO

5.      Defendant Deputy Houn is entitled to qualified immunity from Plaintiffs' federal claims as he did not violate Decedent's constitutional rights, and there was no clearly established law that would have put Deputy Houn on notice that it was unconstitutional to deploy three beanbag rounds at Decedent who was armed, had refused deputies' commands, was acting erratic due to being under the influence of drugs, was actively resisting by flight, and had not been subdued.

6.      Defendant Sergeant Calvert is entitled to qualified immunity from Plaintiffs' federal claims as he did not violate Decedent's constitutional rights, and there was no clearly established law that would have put Sergeant Calvert on notice that it was unconstitutional to deploy his taser on an armed suspect who was fleeing and where bystanders were nearby.

7.      Defendant Sergeant Wheeler is entitled to qualified immunity from Plaintiffs' federal claims as he did not violate Decedent's constitutional rights, and there was no clearly established law that would have put Sergeant Wheeler on notice that it was unconstitutional to shoot a suspect armed with a knife, who was noncompliant with deputies' command and was in close proximity of an innocent bystander to cause an imminent and significant threat of death or serious physical injury to the bystander standing 12 feet away as Decedent was turning toward him.

8.      Plaintiffs' sixth claim for battery fails as a matter of law since Defendants used reasonable force to gain compliance and restrain Decedent.

9.      Plaintiffs' seventh claim for negligence fails as a matter of law since Defendants used reasonable force to gain compliance and restrain Decedent.

10.     Plaintiffs' eight claim for violation of Civil Code § 52.1 fails as a matter of law since Plaintiffs have presented no evidence that Defendants had a specific intent to violate Decedent's constitutional rights.

///

///

///

DEFENDANTS' NOTICE OF MOTION TO FOR SUMMARY JUDGMENT

SILVER & WRIGHT LLP
IRVINE, INLAND EMPIRE, BAY AREA, SACRAMENTO

11.     Plaintiff Ramon Terrazas' sixth, seventh, and eighth claims under California wrongful death statutes should be dismissed as Ms. Terrazas, Decedent's mother, has no standing to pursue those claims because she was not dependent on Decedent for the necessaries of life.

This Motion is based upon this Notice, the Memorandum of Points and Authorities filed concurrently herewith, the Statement of Undisputed Facts, the Appendix of Exhibits, the [Proposed] Judgment filed concurrently herewith, the documents and evidence on file in this action, and such further evidence and arguments as may be presented to the Court in this matter.

Pursuant to Local Rule 7-3, on September 20, 2021, counsel for Defendants and Plaintiffs' counsel spoke on the telephone and thoroughly discussed the filing of a motion for summary judgment.  During the subsequent days, Plaintiffs agreed to dismiss the second claim for denial of medical care, the fourth claim for municipal liability – inadequate training, and the fifth claim for municipal liability – unconstitutional custom and practice.  ECF No. 58 (Stipulation).  On September 30, 2021, the Court granted the parties' stipulation and dismissed with prejudice Plaintiffs' second, fourth, and fifth claims in their Third Amended Complaint.  ECF No. 59 (Order of Dismissal).  As to the remaining claims in the Third Amended Complaint, the parties were unable to resolve their disputes, thus, necessitating Defendants filing this Motion for Summary Judgment.

Dated:  October 4, 2021                SILVER & WRIGHT LLP


By:  _/s/John M. Fujii_____
JOHN M. FUJII
MAHADHI CORZANO
Attorneys for Defendants
County of San Bernardino, Gary Wheeler, Thun Houn, Jason Calvert

SILVER & WRIGHT LLP
IRVINE INLAND EMPIRE BAY AREA SACRAMENTO

# <u>TABLE OF CONTENTS</u>

**I.  INTRODUCTION** ............................................................................. p. 1

**II.  STATEMENT OF FACTS** ................................................................ p. 1

    **A.** Defendants Responded To A 911 Call Of A Reckless Driver, Confronting An Armed, Non-Complaint Decedent Who Fled In His Vehicle ........................................................................................... p. 1

    **B.** For Over A Half Hour, Decedent Refused Numerous Orders To Throw The Knife Out The Window And Exit His Vehicle ..................... p. 2

    **C.** Deputies Attempted To Deescalate The Situation And Used Less Than Lethal Force To Restrain Decedent .................................................. p. 3

    **D.** Sergeant Wheeler Used Lethal Force To Prevent Decedent From Causing Imminent Death Or Serious Physical Injury To Nearby Bystanders ......................................................................................... p. 4

**III.  LEGAL ANALYSIS** ......................................................................... p. 4

    **A.** Legal Standard For Summary Judgment Motions ................................ p. 4

    **B.** Plaintiffs' First Claim For Excessive Force Fails As A Matter Of Law .................................................................................................. p. 5

        **1.** Decedent Committed Violent Serious Crimes ................................ p. 6

        **2.** Decedent Posed An Immediate Threat To The Safety Of Deputies And Others ...................................................................... p. 7

            **a.** Decedent Posed An Immediate Threat When Deputy Houn Deployed Beanbags At Decedent ................................. p. 7

            **b.** Decedent Posed An Immediate Threat When Sergeant Calvert Deployed His Taser .................................................. p. 8

            **c.** Decedent Posed A Significant Threat Of Death Or Serious Physical Injury To Nearby Bystanders When Sergeant Wheeler Discharged His Weapon ......................... p. 9

SILVER & WRIGHT LLP
IRVINE, INLAND EMPIRE, BAY AREA, SACRAMENTO

– i –
TABLE OF CONTENTS

3. **Decedent Was Actively Resisting Arrest**.........................p. 15

C. **Plaintiffs'   Third   Claim   For   Interference   With   Familial Relationship Fails As A Matter Of Law**.................................p. 15

D. **The Individual Defendants Are Entitled To Qualified Immunity On All Of Plaintiffs' Federal Claims** ...........................................p. 17

1. **Deputy Houn Is Entitled To Qualified Immunity**.....................p. 18

2. **Sergeant Calvert Is Entitled To Qualified Immunity**.................p. 18

3. **Sergeant Wheeler Is Entitled To Qualified Immunity** ...............p. 18

E. **Plaintiffs' Sixth and Seventh Claims For Battery And Negligence Fail As A Matter of Law** ....................................................p. 22

F. **Plaintiffs' Eighth Claim For Violation Of Civil Code § 52.1 Fails As A Matter Of Law**.........................................................p. 22

G. **Ramona Terrazas, Decedent's Mother, Should Be Dismissed As A Plaintiff To This Lawsuit** .................................................p. 23

H. **In The Alternative, Each Defendant Individually Seeks Summary Judgment Or Partial Summary Judgment** .............................p. 25

IV. **CONCLUSION**.................................................................p. 25

**SILVER & WRIGHT LLP**
IRVINE, INLAND EMPIRE, BAY AREA, SACRAMENTO

# TABLE OF AUTHORITIES

**CASES**

*A.B. v. City of Santa Ana*, No. SACV181553DOCADS, 2020 WL 1937879 (C.D.
Cal. Jan. 7, 2020) ................................................................... pp. 13-14, 23

*Acri v. Varian Associates, Inc.*, 114 F.3d 999 (9th Cir. 1997) ..................................... p. 6

*Arpin v. Santa Clara Transportation Agency*, 261 F.3d 912 (9th Cir. 2001)......... p. 6, 15

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ................................................................ p. 17

*Azevedo v. City of Fresno*, No. 1:09–CV–375 AWI DLB, 2011 WL 284637 (E.D.
Cal. Jan. 25, 2011) .......................................................................................... p. 9

*Beaver v. City of Federal Way*, 301 F.Appx. 704 (9th Cir. 2008).............................. p. 9

*Blanford v. Sacramento County*, 406 F.3d 1110 (9th Cir. 2005) ................ pp. 11-14, 21

*Brosseau v. Haugen*, 543 U.S. 194 (2004) ........................................................ p. 10, 17

*Brower v. County of Inyo*, 489 U.S. 593 (1989) ........................................................ p. 8

*Buchanan v. City of San Jose*, 782 F.Appx. 589 (9th Cir. 2019) ............................. p. 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................ p. 5

*Chappell v. City of Cleveland*, 585 F.3d 901 (6th Cir. 2009).................................. p. 10

*Chavez v. Carpenter*, 91 Cal.App.4th 1433 (2001) ........................................... pp. 24-25

*City & County of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015) ............... p. 14

*Corrales v. Impastato*, 650 F.Appx. 540 (9th Cir. 2016) ........................................ p. 15

*Cortesluna v. Leon*, 979 F.3d 645 (9th Cir. 2020)..................................................... p. 8

*Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001)....................................... pp. 7, 18-19

*Elifritz v. Fender*, 460 F.Supp.3d 1088 (D. Or. 2020)...................................... pp. 10, 14

*Estate of Gaona v. City of Santa Maria*, No. CV1701983ABAJWX, 2018 WL
6164266 (C.D. Cal. July 17, 2018), aff'd, 790 F.Appx. 103 (9th Cir. 2020)..... p. 19

*Estate of Martin v. United States*, Case No. 13cv1386 LAB (BGS), 2015 WL
5568049 (S.D. Cal. Sept. 22, 2015), aff'd, 686 F.Appx. 419 (9th Cir. 2017)...... p. 7

*Estate of Martinez v. City of Federal Way*, 105 F.Appx. 897 (9th Cir. 2004) .......... p. 15

SILVER & WRIGHT LLP
IRVINE INLAND EMPIRE BAY AREA SACRAMENTO

1   *Gelhaus v. Estate of Lopez*, 138 S.Ct. 2680 (2018) ...................................... p. 6

2   *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) ................................ p. 14

3   *Glenn v. Washington County*, 673 F.3d 864 (9th Cir. 2011) ............................. pp. 18-19

4   *Gonzalez v. City of Anaheim*, 715 F.3d 766 (9th Cir. 2013) ........................................ p. 6

5   *Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014) ............................ pp. 10, 16

6   *Graham v. Connor*, 490 U.S. 386 (1989) ..................................... pp. 5, 7, 9, 15

7   *Harper v. County of Merced*, No. 118CV00562LJOSKO, 2020 WL 243118 (E.D.

8       Cal. Jan. 16, 2020), aff'd sub nom. *Harper v. City of Merced*, 830 F.Appx.

9       217 (9th Cir. 2020) ............................................ p. 20

10  *Hayes v. County of San Diego*, 736 F.3d 1223 (9th Cir. 2013) ......................... pp. 16, 22

11  *Hazelwood v. Hazelwood*, 57 Cal.App.3d 693 (1977) ............................... p. 24

12  *Hernandez v. City of Pomona*, 46 Cal.4th 501 (2009) .......................... p. 22

13  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) ...................................... p. 5

14  *Isayeva v. Sacramento Sheriff's Dept.*, 872 F.3d 938 (9th Cir. 2017) ............... pp. 19, 20

15  *Johnson v. County of Los Angeles*, 340 F.3d 787 (9th Cir. 2003) ............................ p. 22

16  *Kisela v. Hughes*, 138 S.Ct. 1148 (2018) ..........................................pp. 10, 17-18, 20-21

17  *Lindsay v. Kiernan*, 378 F.Appx. 606 (9th Cir. 2010) ...................................... p. 8

18  *Little v. City of San Bernardino*, No. CV0906068JSTCWX, 2010 WL 11549690

19      (C.D. Cal. Oct. 28, 2010) ....................................... p. 8

20  *Lopez v. Gelhaus*, 871 F.3d 998 (9th Cir. 2017) ...................................... p. 6

21  *Mason v. Las Vegas Metropolitan Police Department* 754 F.Appx. 559 (9th Cir.

22      2019) ..................................................... p. 5

23  *Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) ..................................... p. 15

24  *Miller v. Clark County*, 340 F.3d 959 (9th Cir. 2003) ......................................pp. 6-7, 15

25  *Nelson v. County of Los Angeles*, 113 Cal.App.4th 783 (2003) .............................. p. 24

26  *O'Doan v. Sanford*, 991 F.3d 1027 (9th Cir. 2021) ...................................... p. 14

27  *Pelayo v. City of Anaheim*, No. 819CV02318MCSADSX, 2021 WL 2153220

28      (C.D. Cal. Apr. 6, 2021) ........................................... pp. 19, 23

SILVER & WRIGHT LLP
IRVINE; INLAND EMPIRE/ BAY AREA/ SACRAMENTO

1   *Perry v. Medina*, 192 Cal.App.3d 603 (1987) ..................................................... pp. 24-25

2   *Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008) ......................................... p. 16

3   *Reese v. County of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) ............................... p. 23

4   *Reynolds v. County of San Diego*, 84 F.3d 1162 (9th Cir. 1996) ............................... p. 6

5   *Scott v. Harris*, 550 U.S. 372 (2007) ............................................................ p. 5

6   *Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994) ................................................. p. 6

7   *Skylstad v. Reynolds*, 248 F.Appx. 808 (9th Cir. 2007)......................................... p. 6

8   *Smith v. County of Butte*, No. 215CV00988KJMCMK, 2017 WL 1540315 (E.D.

9       Cal. Apr. 28, 2017) ...................................................................... p. 7

10  *Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992) ............................................... p. 10

11  *Swearingen v. Carle*, 286 F.Supp.3d 1014 (S.D. Iowa 2017), aff'd sub nom.

12      *Swearingen v. Judd*, 930 F.3d 983 (8th Cir. 2019) .......................................... p. 10

13  *Tennessee v. Garner*, 471 U.S. 1 (1985)....................................................... p. 9

14  *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730 (9th Cir. 1979)...................... p. 5

15  *Torres v. City of Madera*, 648 F.3d 1119 (9th Cir. 2011) ..................................... p. 17

16  *United States v. Hernandez*, 27 F.3d 1403 (9th Cir. 1994) ......................................... p. 8

17  *Ventura v. Rutledge*, 978 F.3d 1088 (9th Cir. 2020) .......................................... p. 20

18  *White v. Pauly,* 137 S.Ct. 548 (2017) ........................................................ p. 17

19  *Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010).......................................... p. 16

20  *Woodward v. Town of Battleboro*, No. CIV. 1:02CV35, 2006 WL 36906 (D. Vt.

21      Jan. 5, 2006) ............................................................................ p. 11

22  *Wynn v. San Diego County*, No. 12CV3070 BTM–NLS, 2015 WL 472552 (S.D.

23      Cal. Feb. 5, 2015)........................................................................ p. 22

24  **FEDERAL STATUTES**

25  42 U.S.C. § 1983 ............................................................................ p. 22

26

27  **FEDERAL RULES OF CIVIL PROCEDURE**

28  Rule 56(a)................................................................................... pp. 5, 25

SILVER & WRIGHT LLP
IRVINE, INLAND EMPIRE, BAY AREA, SACRAMENTO

## CALIFORNIA CODES

CCP § 52.1 ................................................................................................ p. 22

CCP § 52.1(a)–(b) ..................................................................................... p. 23

CCP, § 377 ................................................................................................ p. 24

CCP, § 377.60 ........................................................................................... p. 24

CCP, § 377.60(b) ...................................................................................... p. 23

Cal. Vehicle Code § 2800.2 ...................................................................... p. 7

SILVER & WRIGHT LLP
IRVINE INLAND EMPIRE BAY AREA SACRAMENTO

# I.    INTRODUCTION

This lawsuit arises out of a July 22, 2018 deputies' involved shooting of Juan Ramon Ramos ("Decedent").  Plaintiffs V.R. and Ramona Terrazas ("Plaintiffs") allege that San Bernardino County (the "County"), Deputy Thun Houn, Sergeant Jason Calvert, and Sergeant Gary Wheeler ("Defendants") used excessive and deadly force during their course of restraining Decedent.  The entire incident was captured by video and audio recording.  The video footage shows no Fourth Amendment violation since Decedent, who was armed with a knife throughout the entire time, had defied deputies' commands for 45 minutes, was evading police, posed an immediate threat to the safety of deputies and bystanders when non-deadly force was used, and posed an imminent threat of physical injury or death to bystanders when he turned left toward the front yard of a house where the nearest bystander was standing 12 feet away when deadly force was used.  Moreover, the individual Defendants are entitled to qualified immunity as there was no clearly established constitutional violation for using force on a suspect who is armed with a knife, had erratic behavior, had refused deputies' commands to drop the knife, was actively resisting arrest, and bystanders were nearby who could be stabbed or killed.

# II.    STATEMENT OF FACTS

## A.    Defendants Responded To A 911 Call Of A Reckless Driver, Confronting An Armed, Non-Complaint Decedent Who Fled In His Vehicle

On Sunday, July 22, 2018, at 3:52 p.m., San Bernardino County Sheriff's Department received a call of a driver (later to be identified as Juan Ramon Ramos ("Decedent")) driving recklessly by nearly colliding with several vehicles, driving in reverse, and driving through red traffic lights. [SUF 1–2.] Sergeant Gary Wheeler located Decedent's vehicle and at 4:09 p.m. made a traffic stop. [SUF 3.]

During the traffic stop, Sergeant Wheeler noticed Decedent was armed with a utility knife with the blade extended (hereinafter "knife"). [SUF 4.] Deputy Thun Houn, who arrived a short time later, also saw the knife and instructed Decedent to leave the knife on top of the vehicle's dashboard. [SUF 5–6.] Not complying with the deputy's

SILVER & WRIGHT LLP
IRVINE, INLAND EMPIRE, BAY AREA, SACRAMENTO

command, Decedent grabbed the knife and opened the driver's door of his vehicle. [SUF 7–8.] Deputy Houn ordered Decedent to put his hands up, but instead, Decedent partially stepped out of his vehicle with a knife in his right hand. [SUF 9–10.] The deputies took several steps back, which gave Decedent the chance to close the door, start the engine, and "peel-out" as he drove away. [SUF11.] During the vehicle pursuit, Decedent failed to yield to oncoming traffic, drove through a red traffic light, and sped at around 40 mph through a residential neighborhood with a speed limit of 25 mph. [SUF 12–15.] Decedent turned on 13th Street and stopped at the end of the dead-end street. [SUF 16.]

**B.**   **For Over A Half Hour, Decedent Refused Numerous Orders To Throw The Knife Out The Window And Exit His Vehicle**

Deputy Houn was designated to use a beanbag shotgun and Sergeant Jason Calvert was designated to use a taser. [SUF 18–19.] To attempt to deescalate the situation, Sergeant Wheeler approached the driver's door of the vehicle, and said "my friend", "amigo", "come here" "no problemas", and then holstered his weapon and gestured for him to exit the vehicle. [SUF 20–21.] Not knowing if he spoke English or Spanish, Deputy Charles Lopez approached the vehicle and instructed Decedent in Spanish to open the door, exit the vehicle without the knife, and exit the vehicle with his hands up numerous times. [SUF 22.]

From approximately 4:17 p.m. to 4:52 p.m., Deputy Lopez gave Decedent orders to turn the car off, throw the knife out, open the door, and exit the vehicle with his hands in the air and kneel, to which Decedent did not comply. [SUF 23.] During this time, Defendants were informed that Decedent spoke English, the bystanders in the front yard adjacent to the vehicle were his relatives (aunt, uncle, and cousins), and he did not reside at that residence. [SUF 24–26.] Sergeant Wheeler was informed that Decedent had prior felonies and he suspected him of being under the influence of drugs. [SUF 27–28.] Deputy Houn also suspected Decedent was under the influence of drugs. [SUF29.] Also, during this time, one of Decedent's relatives called Decedent to persuade him to come out of the vehicle without the knife and his hands up, without success. [SUF 30–31.]

**C.  Deputies Attempted To Deescalate The Situation And Used Less Than Lethal Force To Restrain Decedent**

As a tactical matter, Sergeant Wheeler decided not to move the deputies back because of Decedent's potential flight risk and threat to nearby bystanders if he were to exit the vehicle and flee toward them with a knife.  [SUF 32.]  Sergeant Wheeler concluded that the benefit of extracting Decedent out of the vehicle was greater than the risk Decedent posed in remaining mobile inside the vehicle where he could cause injury to nearby deputies, bystanders, and the community if the fled the scene.  [SUF 33.]  After conferring with other deputies, Sergeant Wheeler discarded plans (1) to use OC pepper-spray on Decedent because the danger Decedent posed to others if he drove away while being affected by the chemical agent and (2) to use a police dog to enter the vehicle to subdue Decedent.  [SUF 34–35.]  Sergeant Wheeler settled on breaking the front passenger window so Decedent could hear the dog barking and be persuaded to exit the vehicle and surrender peacefully.  [SUF 36.]

At approximately 4:52 p.m., Sergeant Wheeler broke the vehicle's front passenger window.  [SUF 37.]  Rialto Police Department Officer Dane Stordahl ordered Decedent to exit the vehicle or he would send his police dog inside the vehicle.  [SUF 38.]  Decedent did not comply and instead accelerated his vehicle forward, jumped over the curb, and attempted to steer toward a dirt alleyway adjacent to his relatives' house.  [SUF 39.]  Once his vehicle stopped, Decedent opened the driver's side door and exited his vehicle with a knife in his hand.  [SUF 40.]  Commands to drop the knife were given to Decedent.  [SUF 41.]  Not complying with deputies' commands, Deputy Houn yelled "beanbag" and deployed three beanbag rounds at Decedent.  [SUF 42–44.]  Decedent did not drop the knife or get down on the floor but reentered his vehicle and closed the door.  [SUF 45.]

After a few seconds, Decedent opened the driver's side door of his vehicle and ran toward the alleyway with knife in hand.  [SUF 46.]  As he was fleeing, Sergeant Calvert deployed his taser in dart mode.  [SUF 47.]  The taser deployment was ineffective because the dart's two probes did not penetrate Decedent's skin.  [SUF 48.]

SILVER & WRIGHT LLP
IRVINE, INLAND EMPIRE, BAY AREA, SACRAMENTO

SILVER & WRIGHT LLP
IRVINE, INLAND EMPIRE, BAY AREA, SACRAMENTO

### D.     Sergeant Wheeler Used Lethal Force To Prevent Decedent From Causing Imminent Death Or Serious Physical Injury To Nearby Bystanders

As Decedent was fleeing and running down the alleyway, carrying the knife in his hand, he suddenly turned left toward the front yard of his relatives' house, where several bystanders were standing in the front yard and other(s) were inside the house. [SUF 49–50.] The nearest bystander, Abraham Terrazas, was standing approximately 12 feet away from Decedent at the time Decedent turned to the left. [SUF 51.] As Decedent turned left toward the front yard, Sergeant Wheeler fired a single gunshot at Decedent. [SUF 52.] Sergeant Wheeler did not have an opportunity to give a verbal warning due to Decedent's sudden movements toward the house and bystanders. [SUF 53.] Sergeant Wheeler did not have an opportunity to delay firing of his weapon a split-second longer because another deputy, who was on the other side of the alleyway, would have been in his shooting background. [SUF 54.] From the moment Decedent exited his vehicle to Sergeant Wheeler firing his weapon, less than six seconds had passed. [SUF 55.] The bullet trajectory confirmed Decedent was shot in the left side of his body. [SUF 56.]

Despite being shot on the left side of his chest, Decedent continued running toward the house and jumped over the front yard's chain-linked fence while still carrying the knife in his right hand. [SUF 57.] Knowing there were bystanders in the front yard of the house, Sergeant Calvert deployed his second taser dart at Decedent, but had no effect since the dart's probes did not attach to his skin. [SUF 58–59.] Decedent was able to reach the front porch of the house, and as he attempted to enter the house, he was pulled out of the house by two of his relatives, one of them taking the knife away from his hand. [SUF 60–61.] A toxicology analysis showed that Decedent's blood level of methamphetamine was higher than many recreational users and in the range of individuals acting violently, with poor judgment, and noncompliant behavior. [SUF 62–64.]

## III.   LEGAL ANALYSIS

### A.     Legal Standard For Summary Judgment Motions

Summary judgment is appropriate when there is no genuine issue of any material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  Once the moving party has met its initial burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  *In Oracle Corp. Sec. Litig.*, 627 F.3d at 387.  Conclusory, speculative testimony in affidavits is insufficient to raise genuine issues of fact.  *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Though courts generally construe the evidence in the light most favorable to the non-moving party, when video footage of the incident is captured, courts must view the facts "in light depicted in the videotape", even if it contradicts the non-moving party's versions of the facts.  *Scott v. Harris*, 550 U.S. 372, 380–81 (2007); see also *Mason v. Las Vegas Metropolitan Police Department* 754 F.Appx. 559, 560 (9th Cir. 2019) ("We review the whole record, drawing all reasonable inferences in favor of the non-moving party.  Where, as here, there is a videotape of the event in question, we must 'view[] the facts in the light depicted by the videotape.'").

## B.   Plaintiffs' First Claim For Excessive Force Fails As A Matter Of Law

A claim that law enforcement officers used excessive force is analyzed under the Fourth Amendment's objective reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  In determining whether the use of force was objectively reasonable, the Supreme Court has laid out three factors to consider: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight.  *Id.* at 396.  Plaintiff bears the burden of proving the force used was unreasonable.

1   *Arpin v. Santa Clara Transportation Agency*, 261 F.3d 912, 922 (9th Cir. 2001).

2          In addition, "[t]he fact that an expert disagrees with an officer's actions does not

3   render the officer's actions unreasonable.  The inquiry is not 'whether another reasonable

4   or more reasonable interpretation of events can be constructed ... after the fact.'

5   [Citation.]  Rather, the issue is whether a reasonable officer could have believed that his

6   conduct was justified.  'This is so notwithstanding that reasonable officers could disagree

7   on the issue.' [Citation.]" *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir.

8   1996) (affirming summary judgment for police defendant in fatal shooting case),

9   overruled on other grounds by *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th

10  Cir. 1997).  "With respect to the possibility of less intrusive force, officers need not

11  employ the least intrusive means available[,] so long as they act within a range of

12  reasonable conduct." *Lopez v. Gelhaus*, 871 F.3d 998, 1006 (9th Cir. 2017), cert. denied

13  sub nom. *Gelhaus v. Estate of Lopez*, 138 S.Ct. 2680 (2018); see also *Scott v. Henrich*, 39

14  F.3d 912, 915 (9th Cir. 1994) (appropriate inquiry is whether the officer acted reasonably,

15  not whether less intrusive alternatives were available), cert. denied 515 U.S. 1159 (1995).

16         As discussed below, the individual Defendants' use of force was reasonable.

17         **1.    Decedent Committed Violent Serious Crimes**

18         The Ninth Circuit has held that the severity of the crime factor weighs in favor of

19  officers when they have reason to believe the suspect had committed a felony offense.

20  *Gonzalez v. City of Anaheim*, 715 F.3d 766, 770 (9th Cir. 2013).  The reason is that the

21  government has an undeniable legitimate interest in apprehending criminal suspects, "and

22  that interest is even stronger when the criminal is ... suspected of a felony, which is by

23  definition a crime deemed serious by the state." *Miller v. Clark County*, 340 F.3d 959,

24  964 (9th Cir. 2003).  The Ninth Circuit has further held that attempting to flee from the

25  police by driving reckless is a violent and serious crime "that evinces a willingness to

26  threaten others' safety in an attempt to escape responsibility for past crimes." *Miller*, 340

27  F.3d at 965; see also *Skylstad v. Reynolds*, 248 F.Appx. 808, 811 (9th Cir. 2007) (evading

28  police by driving at high speeds through a residential area "pose[s] an immediate, serious

**SILVER & WRIGHT** LLP
IRVINE INLAND EMPIRE BAY AREA SACRAMENTO

threat to officers and others.”); *Estate of Martin v. United States*, Case No. 13cv1386 LAB (BGS), 2015 WL 5568049, at *9 (S.D. Cal. Sept. 22, 2015), aff'd, 686 F.Appx. 419 (9th Cir. 2017) (driving reckless while evading police is a serious crime).

Here, prior to making a traffic stop, Decedent had committed several misdemeanor traffic violations. [SUF 2.] Also, during the police pursuit, Decedent drove recklessly by failing to yield to oncoming traffic, running a red traffic light, and driving 40 mph in a 25-mph residential zone. [SUF 12–15.] Driving recklessly in evading police is a felony offense in California. See Cal. Vehicle Code § 2800.2. Therefore, Decedent had committed a violent and serious crime that favored the use of force to arrest him.

### 2. Decedent Posed An Immediate Threat To The Safety Of Deputies And Others

Whether Plaintiff posed an immediate threat to others' safety is "the most important single element" of the *Graham* excessive force analysis. *Miller*, 340 F.3d at 364. "[A]n officer's use of force must be objectively reasonable based on his contemporaneous knowledge of the facts." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). All determinations of unreasonable force "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

#### a. Decedent Posed An Immediate Threat When Deputy Houn Deployed Beanbags At Decedent

"The Ninth Circuit generally accepts that officers reasonably perceive a heightened risk of serious physical harm when a suspect disobeys the officers' orders in a way that signals active resistance." *Smith v. County of Butte*, No. 215CV00988KJMCMK, 2017 WL 1540315, at *11 (E.D. Cal. Apr. 28, 2017). A person who is armed, has erratic behavior, has disobeyed officers' commands, and is resisting arrest poses an immediate threat to the safety of officers and others. See *Miller*, 340 F.3d at 965 (suspect posed an immediate threat when he evaded police, defied prior orders, had possessed a knife earlier,

SILVER & WRIGHT LLP
IRVINE INLAND EMPIRE BAY AREA SACRAMENTO

and was resisting arrest); *Lindsay v. Kiernan*, 378 F.Appx. 606, 608 (9th Cir. 2010) ("[plaintiff's] intoxicated state, increasing hostility, physical resistance, and repeated refusal to leave the gas station could have led a reasonable officer to believe that [he] posed an immediate threat to the safety of the officers and [others].").

Decedent posed an immediate threat to the safety of deputies and bystanders when Deputy Houn used non-deadly force to gain his compliance.  Prior to deploying the beanbag rounds, Deputy Houn saw Decedent evade police, drive recklessly with disregard of the public's safety, and defy deputies' commands. [SUF 12–15, 23, 31.] He also knew that Decedent was armed with a knife, his behavior was erratic, and suspected he was under the influence of drugs. [SUF 29, 40.]  When Deputy Houn deployed the beanbag rounds, Decedent was armed, had refused deputies' commands to drop the knife, deputies and bystanders were nearby, and Decedent was a flight risk. [SUF 40–42.]  Discharging two beanbags rounds at a suspect that posed an immediate threat by having a knife in his pants' pocket, had not complied with deputies' commands, and was not subdued has been held to be constitutionally appropriate to gain compliance.  See *Cortesluna v. Leon*, 979 F.3d 645, 653 (9th Cir. 2020).  Thus, Decedent Deputy Houn's deployment of beanbag rounds was reasonable such that no Fourth Amendment violation occurred.

> **b.  Decedent Posed An Immediate Threat When Sergeant Calvert Deployed His Taser**

As an initial matter, Sergeant Calvert did not violate Decedent's Fourth Amendment rights because the two taser darts that he deployed at Decedent did not strike Decedent.  [SUF 48, 59.]  It is well established that for a violation of the Fourth Amendment to occur, a seizure must first occur.  If a person is never seized, then the Fourth Amendment simply has no application.  *Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989).  A "seizure" does not occur if a police officer applies physical force in attempt to detain suspect but such force is ineffective.  *United States v. Hernandez*, 27 F.3d 1403 (9th Cir. 1994).  Numerous courts have held that a missed shot is <u>not</u> a "seizure" under the Fourth Amendment unless the suspect yields.  See *Little v. City of San*

SILVER & WRIGHT LLP
IRVINE  INLAND EMPIRE  BAY AREA  SACRAMENTO

*Bernardino*, No. CV0906068JSTCWX, 2010 WL 11549690, at *1 (C.D. Cal. Oct. 28, 2010) (citing cases that firing a shot that misses a person does not constitute a seizure). Given that the taser darts missed Decedent, Decedent was not seized by Sergeant Calvert. Thus, Sergeant Calvert did not violate Decedent's Fourth Amendment rights.

Even assuming Sergeant Calvert is deemed to have seized Decedent, there is still no violation of the Fourth Amendment because the use of his taser was reasonable. Use of a taser in dart-mode at a suspect that had disobeyed officers' commands and is fleeing has been held to be objectively reasonable. See *Beaver v. City of Federal Way*, 301 F.Appx. 704, 705 (9th Cir. 2008); *Azevedo v. City of Fresno*, No. 1:09–CV–375 AWI DLB, 2011 WL 284637, at *8 (E.D. Cal. Jan. 25, 2011). Here, at the time Sergeant Wheeler deployed his taser, Decedent had exited his vehicle, armed with a knife, had refused deputies' commands, and was running full speed toward the alleyway in an attempt to flee. [SUF 46–47.] The second taser deployment occurred after Decedent suddenly turned left toward the front yard of his relatives' house, jumped over the front yard's chain-linked fence, and began running toward the front door with the knife still in his hand. [SUF 57–58.] Thus, both times Sergeant Calvert used his taser while Decedent was armed, fleeing, and posing an immediate threat of harm to nearby deputies and bystanders. Accordingly, Sergeant Calvert used reasonable force to arrest Decedent.

### c.   Decedent Posed A Significant Threat Of Death Or Serious Physical Injury To Nearby Bystanders When Sergeant Wheeler Discharged His Weapon

The Supreme Court has articulated a more particularized variation of the Fourth Amendment's objective reasonableness analysis for assessing the reasonableness of deadly force. An officer's use of deadly force is reasonable if "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 3 (1985). In determining whether a police officer's use of deadly force was reasonable, courts must take the perspective of an officer on the scene without the benefit of 20/20 hindsight. *Graham*,

SILVER & WRIGHT LLP
IRVINE INLAND EMPIRE BAY AREA SACRAMENTO

490 U.S. at 396.  Courts must also consider that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.  *Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014).

The Supreme Court has found that there is "no Fourth Amendment violation when an officer shoots a fleeing suspect who presented a risk to others."  *Brosseau v. Haugen*, 543 U.S. 194, 200 (2004), citing to *Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992).  The rationale in *Smith* is instructive to this case.  In that case, after a vehicle pursuit, the officer appeared to have trapped the suspect at the end of the street.  *Id.* at 347.  Suddenly, the suspect freed his car and began to speed down the street.  *Ibid.*  In that instant, the officer shot the suspect to prevent him from escaping.  *Ibid.*  The *Smith* court held that "no rational jury could say [the officer] acted unreasonably."  *Ibid.*  The *Smith* court found that even though there was a roadblock up ahead, had the suspect proceeded to escape, he would have posed a major threat to the officers manning the roadblock or could have stopped the vehicle and entered a neighboring house and potentially obtain hostages.  *Ibid.*

On multiple occasions, courts have determined that a person armed with a knife, who refuses officers' commands and makes a sudden movement toward officers or bystanders in close proximity, poses a significant threat of death or physical injury.  See *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (woman shot four times who was armed with a kitchen knife, had refused orders to drop the knife, and was standing 6 feet away from a bystander); *Buchanan v. City of San Jose*, 782 F.Appx. 589 (9th Cir. 2019) (officers did not use excessive force when they shot a man 55 feet away and moving toward them at a rapid pace armed with a knife); *Elifritz v. Fender*, 460 F.Supp.3d 1088, 1107 (D. Or. 2020) (use of deadly force on a suspect wielding a knife and being several seconds away from reaching the officers deemed reasonable); *Swearingen v. Carle*, 286 F.Supp.3d 1014, 1023 (S.D. Iowa 2017), aff'd sub nom. *Swearingen v. Judd*, 930 F.3d 983 (8th Cir. 2019) (use of deadly force was objectively reasonable, where a knife-wielding suspect was 12 feet away from the officers); *Chappell v. City of Cleveland*, 585

F.3d 901, 910 (6th Cir. 2009) (use of deadly force on a 15-year old who was moving toward the officer holding a knife and was 7 feet away was reasonable); *Woodward v. Town of Battleboro*, No. CIV. 1:02CV35, 2006 WL 36906, at *8 (D. Vt. Jan. 5, 2006) (finding no excessive force where police shot an individual who was armed with a knife and in a position to injure another person 21 feet away).

The case of *Blanford v. Sacramento County*, 406 F.3d 1110, 1115 (9th Cir. 2005) is analogous. Deputies received a call of a man carrying a sword walking in a residential neighborhood. *Id*. at 1112. When the deputies arrived, they drew their guns and told the man to stop and drop the sword. *Ibid*. The man did not comply, continued to walk, and made loud growling and roaring sounds. *Id.* at 1112–13. Unbeknownst to the deputies until after the man was shot, he was listening to music through headphones at the highest volume which were concealed under a ski mask. *Id*. at 1112. The man then turned the corner and headed toward a residential house, which was later discovered to be the house where he lived and where no one was currently at home. *Id*. at 1113. As the man walked toward the side of the house's gate that led to the backyard, the deputies shouted at the man to drop the sword, but he did not comply and continued to walk toward the side gate. *Ibid*. Based on the deputies' belief that, if the man was able to enter the backyard, he would present a danger to any person in the yard, both deputies fired their weapons at the man. *Ibid*. Despite being shot, the man continued through the gate, closed it behind him, and attempted to open a back door that led inside the house. *Ibid*. The deputies entered through the gate and again ordered the man to drop the sword. *Ibid*. When the man did not drop the sword and was still trying to push the door open, one of the deputies fired his weapon again. *Ibid*. The deputy fired his weapon because he was concerned that the man might have caused injury or death to unknown persons inside the house. *Ibid*. The man then walked away from the deputies toward no one, still holding the sword, and when he still refused to drop the sword, one of deputies fired his weapon again, striking the man in his back and severing his spine causing him to fall to the ground. *Id*. at 1113–14.

In affirming the trial court's ruling in granting summary judgment in favor of the

officers for all three gunshot volleys, the Ninth Circuit in *Blanford* held that "the deputies had cause to believe that [plaintiff] posed a serious danger to themselves and to anyone in the house or yard that he was intent upon accessing, because he failed to heed warnings or commands and was armed with an edged weapon that he refused to put down." *Id*. at 1116.   The *Blanford* court rejected plaintiff's argument that the third volley was unreasonable because, though he was still holding the sword, he was not holding it in a threatening manner, there were no persons in the vicinity, and he was walking away from the officers with gunshot wounds, finding that "[a]ll of the facts and circumstances from the beginning of the encounter must be considered", and based on those circumstances, "the deputies knew that [plaintiff] had committed a crime, albeit not a violent one, and was continuing a course of conduct that objectively indicated he was not giving up the sword that made him a threat to anyone in charging range." *Id*. at 1118–19.

Similar to *Blanford*, it is reasonable to believe that Decedent posed a significant threat of death or physical injury to the nearby bystanders given Decedent had led deputies in a vehicle pursuit to his relatives' house, refused to drop the knife despite repeated pleas for him to do so, the ineffective use of less-lethal alternatives, and his attempt to run toward the house armed with a knife where bystanders were in the front yard and inside the house.   [SUF 12–15, 23, 30–31, 44, 47, 49–51.]   In *Blanford,* no one was home, although the deputies who shot plaintiff did not know that.   Here, there is no dispute that a bystander was standing approximately 12 feet from Decedent.   Also, even though the wounded plaintiff in *Blanford* was "shot in the back" and not walking toward anyone, the Ninth Circuit found the deputy was objectively reasonable in shooting plaintiff since plaintiff had "committed a crime, albeit a nonviolent one" and "did not stop moving or holding the sword." *Id*. at 1118–19.   The seriousness of the danger plaintiff posed was also based on his intent on accessing the backyard and house and being armed with an edged weapon that he refused to put down. *Id*. at 1116.   Like in *Blanford*, Decedent's actions signaled his clear intent to evade police and reach his relatives' house all while being armed with an edged weapon that he had refused to put down, despite commands

1    to do so for 30 minutes.  The circumstances in *Blanford* were not even close to the severity

2    of the danger Decedent posed to the bystanders that were in close proximity to him.  Thus,

3    Sergeant Wheeler's perception that Decedent posed a significant threat of death or serious

4    physical injury to the bystanders in the front yard was objectively reasonable.

5         In a case from last year, the Central District court granted summary judgment to an

6    officer that fatally shot a 23-year-old man holding a knife and in close proximity to a

7    bystander.  *A.B. v. City of Santa Ana*, No. SACV181553DOCADS, 2020 WL 1937879,

8    at *3 (C.D. Cal. Jan. 7, 2020).  At the time the officer fired his weapon, the man was

9    standing and holding a knife on his side, had not moved from his position for three to five

10   seconds, and was twelve to sixteen feet away from the nearest person, his brother, who

11   was attempting to deescalate the situation.  *Id*. at 1, 4.  The court found that based on the

12   suspect being drunk, and who had a series of violent altercations with his father, walked

13   out of the house with a knife, was close in proximity to his brother who was walking

14   toward him, and refused the officer's command to drop the knife, the suspect posed a

15   significant threat of attacking someone with a knife.  *Id*. at 4.  In addition, the court noted

16   the suspect "had not given any indication that he had abandoned his violent intentions,"

17   which was important in determining the threat the suspect posed.  *Ibid*.

18        In the present case, Decedent posed an imminent threat of death or serious physical

19   injury to bystanders.  Though Decedent did not have any violent altercations with any of

20   his family members, his conduct and actions signaled to Sergeant Wheeler that he posed

21   a threat to the safety of nearby deputies and bystanders.  Decedent had evaded police and

22   risked the lives of the public by driving recklessly to reach his relatives' house.  [SUF 12–

23   15.]  For 30 minutes, Decedent refused to drop the knife and surrender.  [SUF 23, 31.]

24   Due to his erratic behavior and noncompliance, Sergeant Wheeler suspected Decedent

25   was under the influence of drugs.  [SUF 28.]  Non-deadly force was ineffective to gain

26   compliance or restrain Decedent, and he appeared to be adamant to flee and reach his

27   relatives' home armed with a knife that he had refused to discard.  [SUF 44–45, 47–48.]

28   The threat Decedent posed became an imminent threat when Decedent suddenly turned

SILVER & WRIGHT LLP
IRVINE INLAND EMPIRE BAY AREA SACRAMENTO

left toward the front yard of the house where bystanders were standing, all while holding a knife in his right hand.  [SUF 49–51.]  Just like in *A.B.*, Decedent's sudden movement put Mr. Terrazas, who was standing approximately 12 feet away, at risk of being attacked by Decedent with a knife.  [SUF 51.]  Though there was a chain-linked fence between them, Decedent still posed an imminent threat as he could have easily jumped over the fence (and he easily did).  See *Elifritz*, 460 F.Supp.3d at 1107 (finding a suspect wielding a knife and moving toward officers posed an imminent threat despite being several seconds away from the officers and having tables and chairs in between them); *Blanford*, 406 F.3d at 1110 (finding a suspect wielding a sword in a backyard posed an imminent threat to residents inside the house even though there was a locked door between them).  Indeed, Decedent easily managed to jump over the chain-linked fence despite being shot in the chest.  [SUF 57.]  Based on holding a knife in his hand and suddenly moving toward innocent bystanders in the yard, Sergeant Wheeler reasonably perceived that Decedent posed an imminent threat of death or serious physical injury to the bystanders.  See *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) ("If the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat."); *O'Doan v. Sanford*, 991 F.3d 1027, 1037 (9th Cir. 2021) ("[plaintiff's] failure to follow lawful commands, and his actions in making threatening gestures risked severe consequences.").

Sergeant Wheeler fired a single shot at Decedent to prevent him from injuring bystanders.  [SUF 52.]  The bullet trajectory confirmed that Sergeant Wheeler fired his weapon, not while Decedent was fleeing away from him, but when Decedent turned and made a sudden move toward the adjacent house where bystanders were in the front yard and inside the house.  [SUF 56.]  Also, it was not feasible for Sergeant Wheeler to give a verbal warning to Decedent given his sudden movement.  [SUF 53.]  See *City & County of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 612 (2015) ("[I]t is reasonable for police to move quickly if delay would gravely endanger their lives or the lives of others.").  The Ninth Circuit has found that "[v]erbal warnings are not feasible when lives are in

SILVER & WRIGHT LLP
IRVINE. INLAND EMPIRE. BAY AREA. SACRAMENTO

immediate danger and every second matters." *Estate of Martinez v. City of Federal Way*, 105 F.Appx. 897, 899 (9th Cir. 2004); *Corrales v. Impastato*, 650 F.Appx. 540, 541–42 (9th Cir. 2016) (officer was not required to issue a warning before firing his weapon due to the rapidly changing circumstances that spanned for 3.3 seconds). A single shot was fired at the only possible instance to prevent Decedent from reaching the bystanders. [SUF 54.] Even though Sergeant Wheeler believed the gunshot missed Decedent, he was unable to fire another round because another deputy was in his shooting background. [SUF 54.] Based on the totality of the circumstances, a reasonable officer in his position would have done the same in order to stop Decedent's imminent threat of death or serious physical injury to the innocent bystanders.

### 3.   Decedent Was Actively Resisting Arrest

An individual does not have the right to resist arrest simply because probable cause is absent unless the resistance is triggered by an officer's bad faith or provocative conduct. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001). Under this *Graham* factor, the court considers "whether [the suspect] was actively resisting arrest or attempting to evade arrest by flight." *Miller*, 340 F.3d at 965; see also *Mattos v. Agarano*, 661 F.3d 433, 450 (9th Cir. 2011) ("[W]e draw a distinction between a failure to facilitate an arrest and active resistance to arrest. Moreover, the crux of this *Graham* factor is compliance with the officers' requests, or refusal to comply."). Here, there is no dispute that Decedent was actively resisting arrest by not complying with deputies' commands and evading arrest by flight. [SUF 23, 31, 39–48.] Thus, this factor favors the use of force to restrain Decedent. Based on the *Graham* factors, Deputy Houn's deployment of three beanbag rounds, Sergeant Calvert's discharging his taser twice, and Sergeant Wheeler firing a single gunshot at Plaintiff were all objectively reasonable. Accordingly, summary judgment should be granted in favor of these Defendants.

### C.   Plaintiffs' Third Claim For Interference With Familial Relationship Fails As A Matter Of Law

To prevail on a Fourteenth Amendment claim for loss of a familial relationship, a

SILVER & WRIGHT LLP
IRVINE. INLAND EMPIRE. BAY AREA. SACRAMENTO

parent or child must prove that the "officers' use of force shocked the conscience." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 797 (9th Cir. 2014) (while reversing summary judgment on plaintiffs' 4th Amendment claim, Ninth Circuit affirmed summary judgment on plaintiffs' 14th Amendment claim for loss of familial relationship because there was no evidence that the officer's use of force shocked the conscious). "In determining whether excessive force shocks the conscience, the court must first ask whether the circumstances are such that actual deliberation by the officer is practical." *Hayes v. County of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013) (internal quotation marks omitted). "Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience. [But], where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may be found to shock the conscience only if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Ibid*. (affirming summary judgment for officer in shooting decedent under the purpose-to-harm standard because officer's "decision to employ deadly force in reaction to seeing the knife was sudden and did not include deliberation").

The "heightened purpose-to-harm standard applies where a suspect's evasive actions force the officers to act quickly. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010); see also *Porter v. Osborn*, 546 F.3d 1131, 1139 (9th Cir. 2008) ("[W]hen an officer encounters fast paced circumstances presenting competing public safety obligations, the purpose to harm standard must apply."). The Ninth Circuit has held that the purpose-to-harm standard is a "more demanding standard of culpability than [the] deliberate indifference" standard. *Porter*, 546 F.3d at 1133 (reversing denial of officer's summary judgment motion because trial court used the wrong "deliberate indifferent" standard); see also *Wilkinson*, 610 F.3d at 554 ("no intent to harm separate from a legitimate law enforcement objective is evidenced by the mere fact that [the officer] shot [the suspect].").

Here, Sergeant Wheeler acted reasonably under the totality of the circumstances. Sergeant Wheeler clearly had no intent to harm Decedent that was unrelated to a legitimate law enforcement objective—stopping the imminent threat of death or serious

SILVER & WRIGHT LLP
IRVINE, INLAND EMPIRE/BAY AREA, SACRAMENTO

physical injury to the nearly family members.  [SUF 68.]  Thus, the undisputed facts establish that the Court should grant Defendants' summary judgment on this claim.

### D.  The Individual Defendants Are Entitled To Qualified Immunity On All Of Plaintiffs' Federal Claims

"Qualified immunity shields an officer from suit when [] he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [] he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  Though the Supreme Court does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela*, 138 S.Ct. at 1152.  This does not mean, however, that the "clearly established law should be defined at a high level of generality.  *Id*. at 1152.  In fact, the opposite is true.  The Supreme court has repeated told courts, including the Ninth Circuit, that the established law must be "particularized" to the facts of the case.  *White v. Pauly*, 137 S.Ct. 548, 552 (2017).  As the Supreme Court has explained:

> Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.  Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue....

*Kisela*, 138 S.Ct. at 1152.

Determining whether officers are entitled to qualified immunity is an issue the court "must resolve ... 'at the earliest possible stage in litigation.'"  *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).  "A [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that <u>every</u> reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation and brackets omitted; underlining added).

SILVER & WRIGHT LLP
IRVINE INLAND EMPIRE BAY AREA SACRAMENTO

### 1.   Deputy Houn Is Entitled To Qualified Immunity

Deputy Houn did not violate Decedent's Fourth Amendment rights.  Even if the Court determines that he violated Decedent's Fourth Amendment rights, he is still entitled to qualified immunity since there was no clearly established law that deploying three beanbag rounds at Decedent was unlawful.  As of July 22, 2018, there were no Ninth Circuit cases that held that use of beanbags on an armed suspect who had committed a serious violent crime, had refused officers' commands, was acting erratic under the influence of drugs, and was actively resisting arrest by flight violated the Fourth Amendment.  One case that discussed the use of beanbag shotgun is *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001), which is distinguishable because plaintiff in *Deorle* was shot in the face, was unarmed, was following officers' orders, and no bystanders were nearby.  Another Ninth Circuit case on beanbag shots is *Glenn v. Washington County*, 673 F.3d 864, 870 (9th Cir. 2011).  *Glenn* is also distinguishable because there was no attempt to deescalate the situation or devise a tactical plan with a teenager holding a knife to his neck in front of his house—the two deputies who arrived on scene both skipped the staging area where responding officers were devising a tactical plan, and the police officer with the beanbag shotgun also skipped the staging area and proceeded directly to the house.  *Id*. at 868–69.  As soon as the officer with the ban bag shotgun arrived on scene, one of the deputies "immediately ordered [the officer] to 'beanbag him.'"  *Id*. at 869.  "Before [the teenager] was shot with the beanbag shotgun, he had not moved from the position he was in at the time officers arrived, and showed no signs of attempting to do so.  He moved only after being struck by the beanbag rounds."  *Id*. at 878.

In contrast to the situations in *Deorle* and *Glenn*, Decedent was armed with a knife, had disobeyed deputies' repeated attempts to put down the knife, bystanders were nearby, and Decedent attempted to escape and had the ability to continue to flee.  [SUF 24, 31, 40–44.]  Indeed, the Supreme Court has instructed the Ninth Circuit "not to read its decision in [*Deorle*] too broadly in deciding whether a new set of facts is governed by clearly established law."  *Kisela*, 138 S.Ct. at 1154.

The cases of *Estate of Gaona v. City of Santa Maria*, No. CV1701983ABAJWX, 2018 WL 6164266 (C.D. Cal. July 17, 2018), aff'd, 790 F.Appx. 103 (9th Cir. 2020) and *Pelayo v. City of Anaheim*, No. 819CV02318MCSADSX, 2021 WL 2153220 (C.D. Cal. Apr. 6, 2021) are instructive on whether there was a clearly established violation when deploying beanbag rounds at an armed suspect who had disobeyed orders.  In *Estate of Gaona*, 2018 WL 6164266, at *1, an officer deployed beanbag rounds on a woman who was holding a knife and who had disobeyed orders to drop the knife before another officer fatally shot her.  After distinguishing *Deorle* and *Glenn*, the court held the officers were entitled to qualified immunity because there was no clearly established law (prior to the date of the incident, March 2017) that the officers' actions violated plaintiff's rights.  *Id*. at *5.  In *Pelayo*, 2021 WL 2153220, at *1, an officer deployed four beanbag rounds after yelling "'stop', 'hands' and 'less lethal, less lethal'" at a suspect who was running away from officers and believed to be armed.  *Id*. at *2.  The court held that the officer was entitled to qualified immunity because there was no clearly established law (prior to April 13, 2018) that the officer's actions violated plaintiff's rights.  *Id*. at *7–8.  Accordingly, Deputy Houn is entitled to qualified immunity as there was no clearly established law at the time he deployed three beanbag rounds at Decedent that his conduct was unlawful.

## 2.   Sergeant Calvert Is Entitled To Qualified Immunity

Sergeant Calvert did not violate Decedent's Fourth Amendment rights.  Even if the Court determines that he did, he is still entitled to qualified immunity as there is no clearly established law that would have put him on notice that deploying his taser on an armed suspect who was fleeing and where bystanders were nearby was unlawful.  In *Isayeva v. Sacramento Sheriff's Dept.*, 872 F.3d 938, 948, 950 (9th Cir. 2017), the Ninth Circuit found the deputies were entitled to qualified immunity with respect to the use of a taser on a suspect who was <u>unarmed</u>, under the influence of methamphetamines, disobeying officer's orders, and was actively resisting arrest.  The Ninth Circuit determined that none of the prior three Ninth Circuit taser cases provided guidance on the use of a taser on a suspect that posed a threat to officers and was resisting arrest.  *Id*. at 950.

Similar to *Isayeva*, Decedent was under the influence of drugs, had repeatedly disobeyed orders, and posed a threat as he was actively fleeing. [SUF 24, 31, 41–42, 46, 57–58.]  More importantly, the amount of force Sergeant Calvert used was substantially less than in *Isayeva*, as the taser darts missed Decedent. [SUF 47, 59.]  A recent district court case found qualified immunity for an officer who tased a fleeing suspect after he disregarded the officer's command to stop.  *Harper v. County of Merced*, No. 118CV00562LJOSKO, 2020 WL 243118, at *6 (E.D. Cal. Jan. 16, 2020), aff'd sub nom. *Harper v. City of Merced*, 830 F.Appx. 217 (9th Cir. 2020).  In finding qualified immunity, the court noted that there was no clearly established law as to the use of taser in dart mode at a fleeing suspect who posed a danger even if no warnings were given.  *Id.* at *5. Here, not only did Decedent refuse orders and was fleeing, but he was also armed with a knife and running toward bystanders who were nearby.  [SUF 57.]  Accordingly, Sergeant Calvert is entitled to qualified immunity as there was no clearly established law at the time he tased Decedent that his actions were unconstitutional.

### 3.   Sergeant Wheeler Is Entitled To Qualified Immunity

As discussed above, Sergeant Wheeler did not violate Decedent's Fourth Amendment rights.  Even if the Court determines that he did, Sergeant Wheeler is still entitled to qualified immunity as there is no clearly established law that would have put him on notice that shooting a suspect armed with a knife, who was noncompliant with deputies' command, and was in close proximity to an innocent bystander was unlawful. Indeed, the Supreme Court case of *Kisela*, 138 S.Ct. at 1148, decided on April 2, 2018, found that the officers were entitled to qualified immunity because it was not clearly established in the Ninth Circuit, as of 2010, that it was unconstitutional to use deadly force on a suspect armed with a knife, standing six feet away from a bystander, and had refused commands to drop the knife, even where the bystander did not appear frightened as she told the officers "to take it easy" and the suspect with the knife "appeared calm." *Id.* at 1151, 1154.  Moreover, in *Ventura v. Rutledge*, 978 F.3d 1088, 1091 (9th Cir. 2020), the Ninth Circuit once again confirmed that, as of December 2015, there was no clearly

established law that it was unconstitutional to use deadly force on a suspect armed with a knife, who had ignored officers' commands, and walking toward a bystander who was 10 to 15 feet away with trash cans in between them.

The leading Ninth Circuit case that "squarely governs" the specific facts of this case is *Blanford*, 406 F.3d at 1110.  See *Kisela*, 138 S.Ct. at 1152–54 ("specificity is especially important in the Fourth Amendment context, where … it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.  Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue.").  In *Blanford*, the Ninth Circuit found that use of deadly force was reasonable to prevent a suspect with an edged weapon from entering a backyard, later the house, and later walking toward no one, after he refused commands to drop his weapon, was acting in an erratic manner, and walking away from the officers.  *Id*. at 1116.

Here, Sergeant Wheeler fired a single shot at Decedent who was armed with a knife, had disobeyed deputies' commands to drop the knife, de-escalation and several forms of less lethal force had already been used without success, and Decedent turned left toward the front yard of the adjacent house where the nearest bystander was standing approximately 12 feet away, in order to prevent Decedent from causing imminent threat of death or serious physical injury to the bystander.  [SUF 20–21, 24, 30–31, 38, 44, 47, 49–52.]  Sergeant Wheeler had a split-second decision to assess the potential danger Decedent posed to the bystanders standing in the front yard and inside the residence.  [SUF 49.]  Based on the circumstances and the existing legal precedent, including the Ninth Circuit decision in *Blanford*, every reasonable officer in Sergeant Wheeler's shoes would not have known that his actions were unreasonable.  Accordingly, Sergeant Wheeler is entitled to qualified immunity as there was no clearly established precedent as of July 22, 2018—the day of the shooting—that put him on clear notice that using deadly force in these particular circumstances would be unconstitutional.

MEMORANDUM OF POINTS AND AUTHORITIES FOR DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**SILVER & WRIGHT** LLP
IRVINE, INLAND EMPIRE, BAY AREA, SACRAMENTO

1
2

**E.    Plaintiffs' Sixth and Seventh Claims For Battery And Negligence Fail As A Matter of Law**

3    "Claims of excessive force under California law are analyzed under the same
4 standard of objective reasonableness used in Fourth Amendment claims." *Hayes v.*
5 *County of San Diego*, 736 F.3d 1223, 1232 (9th Cir. 2013); see also *Johnson v. County of*
6 *Los Angeles*, 340 F.3d 787, 794 (9th Cir. 2003) (state law battery claim is "dependent" on
7 the deputy "applying an unreasonable amount of force").   Similarly, although state
8 negligence law "is broader than federal Fourth Amendment law," the "same consideration
9 of the totality of the circumstances is required in determining reasonableness under
10 California negligence law." *Hernandez v. City of Pomona*, 46 Cal.4th 501, 514 (2009);
11 see also *Wynn v. San Diego County*, No. 12CV3070 BTM–NLS, 2015 WL 472552, at
12 *10 (S.D. Cal. Feb. 5, 2015) ("The Fourth Amendment's reasonableness standard applies
13 to analyzing negligence claims related to excessive force by police officers.").

14    Since Plaintiff V.R. has failed to allege an excessive force claim under section
15 1983, Plaintiffs' battery and negligence claims must also fail.   In any event, Sergeant
16 Wheeler and the others devised a tactical plan to deescalate the situation, including
17 multiple less-lethal uses of force (taser, beanbags, and canine), spent over a half hour
18 pleading with Decedent to give up, and only resorted to lethal force when it was absolutely
19 necessary when Decedent ran with a knife in his hand toward bystanders causing an
20 imminent threat of death or serious physical injury.  [SUF 20–21, 24, 30–31, 38, 44, 47,
21 49–52.]  Thus, the Court should grant summary judgment for Defendants on these claims.

22
23

**F.    Plaintiffs' Eighth Claim For Violation Of Civil Code § 52.1 Fails As A Matter Of Law**

24    The Bane Act, California Civil Code § 52.1, authorizes a claim for relief against
25 any "person or persons, whether or not acting under color of law, [who] interferes by
26 threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or
27 coercion, with the exercise or enjoyment by any individual or individuals of rights secured
28 by the Constitution or laws of the United States, or of the rights secured by the

MEMORANDUM OF POINTS AND AUTHORITIES FOR DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SILVER & WRIGHT LLP
IRVINE, INLAND EMPIRE, BAY AREA, SACRAMENTO

SILVER & WRIGHT LLP
IRVINE INLAND EMPIRE BAY AREA SACRAMENTO

1 Constitution or laws of this state[.]"  Cal. Civ. Code, § 52.1(a)–(b).  "To succeed on a
2 Bane Act claim, a plaintiff must demonstrate both that a constitutional violation occurred
3 (either accompanied by threat, intimidation, or coercion, or with one of those as an
4 inherent aspect of the violation) **and** that defendant had the specific intent to violate
5 plaintiff's constitutional right(s)."  *A.B.*, 2020 WL 1937879, at *5 (C.D. Cal. Jan. 7, 2020)
6 (emphasis added), citing to *Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir.
7 2018).  The *A.B.* court granted summary judgment to the officer because "[p]laintiffs point
8 to no evidence in the record to show that Defendant [officer] had any such [specific]
9 intent."  2020 WL 1937879, at *6; see also *Pelayo*, 2021 WL 2153220, at *11 (granting
10 defendants summary judgment because plaintiff put no evidence showing that the officers
11 'had the specific intent to violate plaintiff's constitutional right(s).'").

12     Here, Defendants did not interfere with any of Decedent's legal rights since the
13 force used to restrain him was reasonable.  Plaintiffs lack the additional requirement under
14 the Bane Act as they failed to present any evidence that Deputy Houn, Sergeant Calvert,
15 or Sergeant Wheeler had a specific intent to violate Decedent's or Plaintiffs'
16 constitutional rights.  [SUF 68.]  Evidence simply showing that an officer's conduct
17 amounts to a constitutional violation under an "objectively reasonable" standard is
18 insufficient to satisfy the Bane Act's additional specific intent requirement.  *Reese*, 888
19 F.3d at 1045.  Since Plaintiffs have not put forth any evidence to show these Defendants'
20 specific intent, the Court should grant Defendants' summary judgment on this claim.

21     **G.    Ramona Terrazas, Decedent's Mother, Should Be Dismissed As A**
22     **Plaintiff To This Lawsuit**

23     With the dismissal of the third claim for interference with familial relations under
24 the Fourteenth Amendment, the only remaining claims of Decedent's mother are her
25 sixth, seventh, and eighth state law claims under California's wrongful death statute.
26 However, the undisputed facts show that she lacks standing to pursue any of these claims.
27     A parent can seek wrongful death damages under the wrongful death statute only
28 if the parent was "dependent on the decedent."  CCP, § 377.60(b).  A wrongful death

plaintiff has the burden to prove standing under CCP § 377.60.  *Nelson v. County of Los Angeles*, 113 Cal.App.4th 783, 789 (2003).  "[T]he term 'dependent parents' as it was used in [CCP] section 377 means parents who, <u>at the time of a child's death</u>, were actually dependent, to some extent, upon the decedent for the necessaries of life."  *Hazelwood v. Hazelwood*, 57 Cal.App.3d 693, 698 (1977) (underlining added).  However, "a parent cannot claim they are dependent within the meaning of [CCP] section 377 if they receive financial support from their children which merely makes available to them some of the niceties of life they might not otherwise be able to afford.  But, if a parent receives financial support from their child which aids them in obtaining the things, such as shelter, clothing, food and medical treatment, which one cannot and should not do without, the parent is dependent upon their child."  *Perry v. Medina*, 192 Cal.App.3d 603, 610 (1987).

One case discussed *Hazelwood* and *Perry* at length.  *Chavez v. Carpenter*, 91 Cal.App.4th 1433, 1446 (2001).  *Chavez* summarized *Perry* as follows: appellant mother "'lived on a meager $400 a month.  Decedent brought her $100 worth of groceries a month…. After he moved out of the apartment and stopped paying $100 a month in rent, decedent gave her $50 a month in addition to the groceries.  Although in this day and time $50 a month and some food to eat may seem like a very small amount, its value is greatly increased when viewed in the perspective that appellant lived on $400 a month, $200 of which paid her rent…. Given those facts, the [*Perry*] court concluded that a triable issue was presented on the question of the mother's dependence.  *Id.* at 1446–47.

In *Chavez*, "among other things, decedent paid his parents $100 per week on average, which helped defray the cost of housing and utilities.  He regularly provided groceries and grocery money.  Decedent contributed services to the household, including such tasks as window cleaning, maintenance of appellants' four automobiles, and yard work on appellants' one and one-half-acre property…. In addition, decedent helped purchase a truck in his parents' name, making the $9,000 down payment as well as some of the periodic loan payments.  He also helped his father's cleaning business when he was shorthanded or overworked."  *Chavez*, 91 Cal.App.4th at 1447.  This created a factual

SILVER & WRIGHT LLP
IRVINE  INLAND EMPIRE  BAY AREA  SACRAMENTO

dispute preventing summary judgment on the parents' lack of standing. *Id*. at 1447–48.

In contrast to the financial support provided by the deceased sons in *Perry* and *Chavez*, Ms. Terrazas has testified that, all throughout 2018, Decedent provided her with **no** financial support for any necessaries of life (rent, food, utility bills, or any money at all). [SUF 66.] Ms. Terrazas has also testified that, when she moved into her new apartment in October 2017, she did not give Decedent her new address, that he was homeless, and that she only saw him once between when she moved in October 2017 to his death, because he just happened to drop by her daughter's house to take a shower when she was visiting her daughter in May 2018. [SUF 64–65, 67.] Thus, Ms. Terrazas lacks standing to pursue her wrongful death claims and should be dismissed as a plaintiff.

## H.    In The Alternative, Each Defendant Individually Seeks Summary Judgment Or Partial Summary Judgment

Pursuant to Fed. R. Civ. P. 56(a), a party may move for partial summary judgment on each claim or defense. Here, each individual Defendant seeks summary judgment as to one or more claims asserted against him. Deputy Houn, Sergeant Calvert, and Sergeant Wheeler used reasonable force and did not violate Decedent's constitutional rights to give rise to any claims. Accordingly, each individual Defendant requests this Court to grant partial summary judgment as to one or more claims asserted to him.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion in its entirety and enter Judgment against Plaintiffs and in favor of Defendants.

Dated:  October 4, 2021

SILVER & WRIGHT LLP

By:   _/s/John M. Fujii_____
      JOHN M. FUJII
      MAHADHI CORZANO
      Attorneys for Defendants
      County of San Bernardino, Gary
      Wheeler, Thun Houn, Jason Calvert

MEMORANDUM OF POINTS AND AUTHORITIES FOR DEFENDANTS' MOTION FOR SUMMARY JUDGMENT