1  LAW OFFICES OF DALE K. GALIPO
2  Dale K. Galipo, Esq. (SBN 144074)
   dalekgalipo@yahoo.com
3  Renee V. Masongsong, Esq. (SBN 281819)
   rvalentine@galipolaw.com
4  21800 Burbank Boulevard, Suite 310
   Woodland Hills, CA  91367
5  Telephone:   (818) 347-3333
   Facsimile:    (818) 347-4118

6

7  *Attorneys for Plaintiffs*

8  **UNITED STATES DISTRICT COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA**

10

11  V.R., a minor, by and through her
    guardian *ad litem* Ariana Toscano,
12  individually and as successor in interest
    to Juan Ramon Ramos, deceased; and
13  RAMONA TERRAZAS, individually,

14              Plaintiffs,

15      vs.

16

17  COUNTY OF SAN BERNARDINO;
    GARY WHEELER; THUN HOUN;
18  JASON CALVERT; and DOES 4-10,
    inclusive,
19

20              Defendants.

21

Case No. 5:19-cv-01023-JGB-SP

[*Honorable Jesus G. Bernal*]

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT OR SUMMARY ADJUDICATION; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT**

[*Filed concurrently with Plaintiffs' Separate Statement of Facts and conclusions of law; Declaration of Renee V. Masongsong and Exhibits thereto; Proposed Order; Declaration of Scott DeFoe*]

Date: November 8, 2021
Time: 9:00 a.m.
Courtroom: Riverside, 1

22

23

24

25

26

27

28

PLEASE TAKE NOTICE that on November 8, 2021, at 9:00 a.m. in Courtroom 1 of the United States District Court for the Central District of California, which is located in Riverside, California, Plaintiffs will and, pursuant to Federal Rule of Civil Procedure Rule 56, hereby do, move the Court for partial summary judgment or summary adjudication against Sergeant Gary Wheeler ("Sgt. Wheeler") and the County of San Bernardino as to the following claims and issues:

1. Plaintiffs are entitled to judgment in their favor against Sgt. Wheeler as to their claim for "Unreasonable Search and Seizure—Excessive Force," which is brought pursuant to 42 U.S.C. § 1983, where the uncontroverted facts establish that Juan Ramos ("Mr. Ramos") did not pose an immediate threat of death or serious bodily injury to Sgt. Wheeler or anyone else at the time of the shooting.

2. Plaintiffs are also entitled to judgment in their favor against Sgt. Wheeler and the County of San Bernardino as to their claim for "Battery (wrongful death)," which is brought pursuant to California law, where the uncontroverted facts show that using deadly force against Mr. Ramos was unreasonable under the circumstances.

3. Plaintiffs are also entitled to judgment in their favor against Sgt. Wheeler and the County of San Bernardino as to their claim for "Negligence (wrongful death)," which is brought pursuant to California law, where the uncontroverted facts show that the use of deadly force was negligent, and that Sgt. Wheeler engaged in negligent pre-shooting tactics.

4.    Plaintiffs are also entitled to judgment in their favor against Sgt. Wheeler and the County of San Bernardino as to their claim for violation of California Civil Code § 52.1 (the Bane Act) because Sgt. Wheeler acted with reckless disregard for Mr. Ramos' constitutional rights when he fired the shot, which is sufficient to show an intent to violate his constitutional rights.

//

1

## STATEMENT OF MEET AND CONFER COMPLIANCE

2        Pursuant to Central District Local Rule 7-3, this Motion is made after a

3   conference of counsel that took place on September 20, 2021. Despite the parties'

4   good faith efforts, the issues presented in this Motion could not be resolved

5   informally.

6        This Motion is based on the Notice of Motion, the Memorandum of Points

7   and Authorities, the exhibits attached to the Declaration of Renee V.

8   Masongsong, Plaintiffs' Separate Statement of Undisputed Facts and Conclusions

9   of Law, the Declaration of Scott Defoe, any matters of which the Court may take

10   judicial notice, all pleadings and papers on file in this action, and upon such other

11   matters as may be presented to the Court.

12

13   DATED: October 4, 2021                LAW OFFICES OF DALE K. GALIPO

14

15                                          By: */s/ Renee V. Masongsong*

16                                             Dale K. Galipo
                                               Renee V. Masongsong
17                                             *Attorneys for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES.........................................1

I.      INTRODUCTION ...............................................................................1

II.     STATEMENT OF FACTS.....................................................................3

        A.  Background ..........................................................................3

        B.  Events Preceding the Shooting ............................................4

        C.  The Shooting ........................................................................5

        D.  Standards and Training on the Use of Deadly Force............7

        E.  The Shooting Was Inappropriate and Contrary to Basic
            Police Training....................................................................8

        F.  Pre-Shooting Negligent Tactics ..........................................9

III.    LEGAL STANDARD .........................................................................10

IV.     ARGUMENT .....................................................................................11

        A.  This Court Should Grant Summary Judgment in
            Plaintiffs' Favor on Plaintiffs 42 U.S.C. § 1983 Claim
            for Excessive Force Because the Undisputed Facts
            Show that Mr. Ramos Did Not Pose An Immediate
            Threat of Death or Serious Bodily Injury at the Time
            of the Shooting....................................................................11

        B.  Battery (Wrongful Death) and Negligence (Wrongful
            Death)................................................................................20

        C.  The Bane Act (Cal. Civ. Code § 52.1)................................22

        D.  Defendant County of San Bernardino is Vicariously
            Liable for Sgt. Wheeler's Misconduct on the State Law
            Claims. ..............................................................................23

V.      CONCLUSION .................................................................................23

1

## **<u>TABLE OF AUTHORITIES</u>**

2

Cases

3

*Alexander v. Cty. of Los Angeles*,

4

    64 F.3d 1315 (9th Cir. 1995).................................................................12

5

*Anderson v. Liberty Lobby, Inc.*,

6

    477 U.S. 242 (1986) ........................................................................10

7

*Bryan v. McPherson*,

8

    630 F.3d 805 (9th Cir. 2010).........................................................12, 16

9

*Chien Van Bui v. City of and Cty. of San Fran.*,

10

    699 Fed. Appx. 614 (9th Cir. 2017) ............................................15, 19

11

*Cornell v. City and County of San Francisco*,

12

    17 Cal. App. 5th 766 (2017).............................................................22

13

*Curnow v. Ridgecrest Police*,

    952 F.2d 321 (9th Cir. 1991)...........................................................20

14

*Deorle v. Rutherford*,

15

    272 F.3d 1272 (9th Cir. 2001)..........................................................15

16

*Dombrowski v. Eastland*,

17

    387 U.S. 82 (1967) ..........................................................................11

18

*Edson v. City of Anaheim*,

19

    63 Cal. App. 4th 1269 (1998)...........................................................20

20

*Espinosa v. City & Cnty. of San Francisco*,

21

    598 F.3d 528 (9th Cir. 2010)........................................................11, 12

22

*George v. Morris*,

23

    736 F.3d 829 (9th Cir. 2013) ...........................................................19

24

*Glenn v. Washington Cnty.*,

25

    673 F.3d 864 (9th Cir. 2011)........................................................12, 18

26

*Graham v. Connor*,

27

    490 U.S. 386 (1989) ....................................................................12, 20

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

*Harris v. Roderick*,

   126 F.3d 1189 (9th Cir. 1997)........................................................................13, 19

*Hayes v. Cty. of San Diego*,

   736 F.3d 1223 (9th Cir. 2013)..............................................................18, 20, 21

*Headwaters v. County of Humboldt*,

   240 F.3d 1185 (9th Cir. 2000)........................................................................16

*Hughes v. Kisela*,

   862 F.3d 775 (9th Cir. 2016)...........................................................................17

*Mary M. v. City of Los Angeles*,

   54 Cal. 3d 202 (1991).....................................................................................23

*Meredith v. Erath*,

   342 F.3d 1057 (9th Cir. 2003)........................................................................12

*Munoz v. City of Union City*,

   120 Cal. App. 4th 1077 (2004).......................................................................20

*N.E.M. v. City of Salinas*,

   761 Fed. Appx. 698 (9th Cir. 2019)...............................................................19

*Nelson v. City of Davis*,

   685 F.3d 867 (9th Cir. 2012)..........................................................................16

*Policeman's Benev. Ass'n of N.J. v. Washington Tp.*,

   850 F.2d 133 (3rd Cir. 1988) .........................................................................23

*Reese v. County of Sacramento*,

   888 F.3d 1030 (9th Cir. 2018)........................................................................22

*Robertson v. County of Los Angeles*,

   2017 WL 5643179 (C.D. Cal. 2017)..............................................................20

*S.B. v. County of San Diego*,

   864 F.3d 1010 (9th Cir. 2017)........................................................................16

*Scott v. Harris*,

   550 U.S. 372 (2007) ..................................................................................11, 12

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

*Smith v. City of Hemet*,

   394 F.3d 689 (2005) ..........................................................................12

*Thomas v. Johnson*,

   295 F. Supp. 1025 (D.D.C. 1968) .....................................................23

*Torres v. City of Madera*,

   648 F.3d 1119 (9th Cir. 2011)...........................................................12

*Tennessee v. Garner*,

      471 U.S. 1 (1985)…………………………………………………13

*United States v. Reese*,

   2 F. 3d 870 (9th Cir. 1993)................................................................22

*Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*,

   (C.D. Cal. 1993) 860 F. Supp. 1448...................................................11

### Other Authorities

Jaffe, *Suits Against Governments and Officers: Damage Actions*

   (1963) 77 Harv. L. Rev. 209 .............................................................23

### Rules

Federal Rules of Appellate Procedure, Rule 32.1 ...............................15

Federal Rules of Civil Procedure, Rule 56....................................10, 11

1
**MEMORANDUM OF POINTS AND AUTHORITIES**

2
## I.    INTRODUCTION

3      This civil rights and state tort lawsuit arises out of the fatal shooting of

4 Juan Ramos ("Mr. Ramos") by Sergeant Gary Wheeler ("Sgt. Wheeler") on July

5 22, 2018. Plaintiffs respectfully request that this Court enter partial summary

6 judgment or summary adjudication in their favor and against Sgt. Wheeler and the

7 County of San Bernardino on their claims for excessive force under 42 U.S.C. §

8 1983 and the Fourth Amendment, battery (wrongful death), negligence (wrongful

9 death), and violation of the Bane Act because the undisputed material facts show

10 that no objectively reasonable officer in Sgt. Wheeler's position would have

11 believed that Mr. Ramos posed an immediate threat of death or serious bodily

12 injury warranting the use of deadly force, and no rational jury could determine

13 otherwise. This incident was captured on video, and it is undisputed that Sgt.

14 Wheeler shot Mr. Ramos in the back when Mr. Ramos was running away without

15 issuing a verbal warning that deadly force would be used. Immediately prior to

16 the shooting, officers commanded Mr. Ramos to exit his vehicle and then struck

17 Mr. Ramos with three beanbag rounds when Mr. Ramos exited the vehicle,

18 escalating the situation. Scared, Mr. Ramos retreated into the vehicle and then

19 panicked, exited the vehicle for the last time, and ran away from the officers

20 down a dirt alley. After Mr. Ramos was struck by Sgt. Wheeler's lethal shot, Mr.

21 Ramos hopped the fence toward his family's house, pleading, "help me."

22 Perceiving no threat, Mr. Ramos' family members removed the box cutter from

23 his hand and cradled the bleeding Mr. Ramos.

24      According to Plaintiffs' police practices expert, Scott DeFoe, and California

25 Peace Officer Standards and Training ("POST"), Sgt. Wheeler would not have been

26 justified for shooting Mr. Ramos for running away while holding a box cutter and

27 could not shoot Mr. Ramos under the fleeing felon theory under this set of facts. To

28 justify using deadly force under the fleeing felon theory, Sgt. Wheeler would need

-1-

(1) information prior to the shooting that Mr. Ramos had committed a felony involving the infliction of death or serious bodily injury and (2) Mr. Ramos still would need to pose an immediate threat of death or serious bodily injury at the time of the shots. Neither of these factors were present here. At the time of the shooting, Sgt. Wheeler had no information that Mr. Ramos had committed any crime involving the infliction of serious bodily injury or death. The only object Mr. Ramos had was a small box cutter, and Mr. Ramos never made any stabbing motions with the box cutter, never tried to attack anyone, and never injured or verbally threatened to injure anyone during this incident. At the time of the shooting, Mr. Ramos was not running directly toward anyone, and there was no person on the same side of the fence in Mr. Ramos' immediate vicinity. When Sgt. Wheeler fired his shot, he knew that the civilians at the scene were Mr. Ramos' family members and knew that they were separated from Mr. Ramos by a fence. According to Mr. Ramos' family members, prior to the shooting, they told the officers that Mr. Ramos was not dangerous and that they were not afraid of Mr. Ramos. Sgt. Wheeler had other reasonable measures to shooting available, including letting the K-9 apprehend Mr. Ramos, giving further commands such as "drop it," and deploying less than lethal force. Any fear Sergeant Wheeler had was subjective, and a subjective fear is insufficient to justify using deadly force.

For each of these reasons and the reasons that follow, this Court should enter partial summary judgment or summary adjudication in Plaintiffs' favor on Plaintiffs' claims for excessive force under 42 U.S.C. § 1983 and the Fourth Amendment against Sgt. Wheeler, as well as on Plaintiffs' claims for battery (wrongful death), negligence (wrongful death), and violation of the Bane Act against Sgt. Wheeler and the County of San Bernardino.

//

//

//

## II.   **STATEMENT OF FACTS**

### A. Background

This incident occurred on July 22, 2018 and initiated as a call for reckless driving. (Plaintiffs' Statement of Facts ("PSF") 1, 2). Mr. Ramos did not engage in a high-speed pursuit prior to the shooting. (PSF 3). At the time of the shooting, Sgt. Wheeler did not have any information that Mr. Ramos had committed an act of violence against another person. (PSF 4). At the time of the shooting, the deputies had no information that Mr. Ramos committed a felony involving the infliction of serious bodily injury or death. (PSF 5). At the time of the shooting, Sgt. Wheeler had no information that Mr. Ramos had ever injured another person. (PSF 6). At the time of the shooting, Sgt. Wheeler had no information that Mr. Ramos had verbally threatened to harm another person. (PSF 7). At no point before or during this incident was Abraham Terrazas fearful of Mr. Ramos. (PSF 8). At no point before or during this incident was David Zuniga fearful of Mr. Ramos. (PSF 9). Other than some minor arrests, Sgt. Wheeler did not have any information about Mr. Ramos' background before he fired his shot. (PSF 10). Other than the box cutter, Sgt. Wheeler had no information that there were any other weapons in the car. (PSF 11). Sgt. Wheeler had no information that Mr. Ramos had a gun. (PSF 12). Sgt. Wheeler never saw Mr. Ramos try to harm himself with the box cutter. (PSF 13).

At the time of the shooting, there were reasonable alternative measures available other than shooting, including the Taser, beanbag shotgun, and a police K-9. (PSF 14). At the time of the shooting, Sgt. Wheeler had a Taser, pepper spray, and a collapsible metal baton. (PSF 15). At the time of the shooting, Sgt. Calvert was on scene with his Taser out and Deputy Houn was on scene with a beanbag shotgun. (PSF 16, 17). A police K-9 was on scene during this incident and was being deployed. (PSF 18, 19). At the time of the shooting, there was an aerial police unit/helicopter providing overwatch at the scene. (PSF 20). At the

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

time of the shooting, approximately eight officers were on scene. (PSF 21). The item that Mr. Ramos had was a Home Depot safety box cutter with a blade that retracts automatically. (PSF 22). The blade of the box cutter was less than one inch. (PSF 23).

### B. Events Preceding the Shooting

Prior to the shooting, Sgt. Wheeler used a door ram to smash the right front window of Mr. Ramos' vehicle as part of the tactical plan involving the K-9. (PSF 24). After Sgt. Wheeler smashed the right front window of Mr. Ramos' vehicle, Mr. Ramos' vehicle moved forward approximately 40 feet. (PSF 25). At no time prior to the tactical plan with the K-9 being implemented did Mr. Ramos try to accelerate his vehicle forward or in reverse. (PSF 26, 27). At the time of the shooting, Sgt. Wheeler's police vehicle was positioned behind Mr. Ramos' vehicle to prevent Mr. Ramos from backing up. (PSF 28). When Sgt. Wheeler went up to the right front window of Mr. Ramos' vehicle to smash it, he could see Mr. Ramos' silhouette in the car. (PSF 29). When Sgt. Wheeler saw Mr. Ramos' silhouette in the car when he rammed the vehicle's window, he did not see the box cutter in Mr. Ramos' hand. (PSF 30).

After Mr. Ramos' vehicle moved forward, it came to a stop at a dead end. (PSF 31). After Mr. Ramos' vehicle came to a stop at the dead end, Mr. Ramos exited the vehicle for the first time. (PSF 32). When Mr. Ramos exited the vehicle for the first time, Deputy Houn deployed a bean bag shotgun at Mr. Ramos three times. (PSF 33). When Deputy Houn fired the beanbag rounds, Mr. Ramos was standing in the area of the open door of his vehicle. (PSF 34). Mr. Ramos was struck by the three beanbag rounds. (PSF 35). Mr. Ramos flinched in reaction to the beanbag rounds. (PSF 36). Mr. Ramos was not advancing at any person when Deputy Houn fired the beanbag rounds. (PSF 37). After Deputy Houn fired the beanbag rounds, Mr. Ramos reentered the vehicle and closed the driver side door of the vehicle. (PSF 38). According to David Zuniga, after Mr. Ramos was struck

by beanbag rounds, he got scared and went back into the vehicle. (PSF 39). According to Abraham Terrazas, Mr. Ramos was panicking, trying to take cover, and did not know what to do when he was being struck by beanbag shots. (PSF 40). According to Abraham Terrazas and Josue Zuniga, Mr. Ramos was scared during this incident when he had officers pointing weapons at him. (PSF 41). After the beanbag shots were fired and Mr. Ramos reentered the vehicle, Mr. Ramos exited the vehicle again, for the last time. (PSF 42). Prior to Mr. Ramos exiting the vehicle for the last time, an officer commanded Mr. Ramos to get out of the vehicle. (PSF 43).

### C. The Shooting

Immediately after Mr. Ramos exited the vehicle for the last time, he ran northbound down an alley. (PSF 44). Sgt. Wheeler fired one shot at Mr. Ramos. (PSF 45). Sgt. Wheeler's shot struck Mr. Ramos. (PSF 46). When Sgt. Wheeler fired the shot, Mr. Ramos was running away. (PSF 47). When Sgt. Wheeler fired the shot, he was aiming at Mr. Ramos' back. (PSF 48). Prior to Sgt. Wheeler firing his shot, he did not see Mr. Ramos try to stab anyone with the box cutter. (PSF 49). Prior to the shooting, Mr. Ramos did not try to attack or stab anyone. (PSF 50). According to Deputy Charles Lopez, he did not see Mr. Ramos come at any of the officers with the box cutter.  (PSF 51). Prior to the shooting, Mr. Ramos did not make any stabbing motions with the box cutter. (PSF 52). Prior to Sgt. Wheeler firing his shot, he did not see Mr. Ramos try to attack anyone with the box cutter at the scene of the shooting. (PSF 53). When Sgt. Wheeler fired the shot, Mr. Ramos was not about to stab anyone. (PSF 54). Mr. Ramos never charged at any of the officers after he exited his vehicle for the last time. (PSF 55). After Mr. Ramos exited the car for the last time prior to the shooting, he never made any gesture toward any officer. (PSF 56).

The individuals in the front yard at the scene of the shooting were Mr. Ramos' own family members. (PSF 57). At the time of the shooting, Sgt. Wheeler

1 understood that the individuals in the front yard were Mr. Ramos' family

2 members. (PSF 58). According to Abraham Terrazas, he and the other family

3 members in the front yard were not scared of Mr. Ramos during this incident.

4 (PSF 59). According to Abraham Terrazas, Mr. Ramos appeared more relaxed

5 when Mr. Ramos saw him during the incident. (PSF 61). According to Abraham

6 Terrazas, Mr. Ramos was not going to hurt his family members if he got out of

7 his vehicle and ran. (PSF 62). According to Abraham Terrazas, he told officers on

8 scene that Mr. Ramos was not dangerous. (PSF 65). According to Abraham

9 Terrazas, he told officers on scene that the individuals in the front yard were Mr.

10 Ramos' family members, and that Mr. Ramos was not going to do anything to his

11 family members. (PSF 63). David Zuniga told the officers that Mr. Ramos was

12 his cousin. (PSF 64). According to Josue Zuniga, when Mr. Ramos was in his

13 vehicle prior to the shooting, Mr. Ramos asked for water and stated that he

14 wanted to go with his family. (PSF 60).

15       When Sgt. Wheeler fired the shot, Mr. Ramos' family members who were

16 in the front yard were behind a fence, on the opposite side of the fence as Mr.

17 Ramos. (PSF 66). According to Abraham Terrazas, officers instructed the family

18 members to stay behind the fence. (PSF 67). Sgt. Wheeler fired the shot before

19 Mr. Ramos went over the fence. (PSF 68). At the point when Sgt. Wheeler fired,

20 there was no person on the same side of the fence as Mr. Ramos in Mr. Ramos'

21 immediate area. (PSF 69). When Mr. Ramos was running northbound in the alley,

22 there was no other person in the alley other than Mr. Ramos. (PSF 70). According

23 to Deputy Mariusz Kuskowski, when Mr. Ramos went running down the alley, he

24 could not tell if Mr. Ramos was running towards anyone. (PSF 71). Sgt. Wheeler

25 estimated that at the time of the shooting, he could see a person in the front yard

26 out of his side vision approximately 40 to 45 feet away from Mr. Ramos. (PSF

27 72). At the time of the shooting, Abraham Terrazas was separated from Mr.

28 Ramos by a fence and a flood drain. (PSF 73). Mr. Ramos ran past Abraham

Terrazas. (PSF 74). At the time of the shooting, Sgt. Wheeler was the closest officer to Mr. Ramos. (PSF 75). When Sgt. Wheeler fired, he was approximately 35-40 feet from Mr. Ramos. (PSF 76). At the time of the shooting, Deputy Alfredo Lopez was over approximately 100 feet away from Mr. Ramos. (PSF 77). At the time that Sgt. Wheeler fired, he had not seen the box cutter for two or three seconds. (PSF 78).

After Mr. Ramos hopped the fence, Mr. Ramos was screaming, "help me." (PSF 80). According to Abraham Terrazas, after the shooting, Mr. Ramos ran toward his family's house for safety. (PSF 81). After the shooting, Mr. Ramos' aunt, Blanca Zuniga, removed the box cutter from Mr. Ramos' hand. (PSF 79). According to David Zuniga, Mr. Ramos hopped the fence because he was scared. (PSF 82). After Mr. Ramos hopped the fence, Abraham Terrazas held Mr. Ramos and knew that Mr. Ramos was not going to attempt to harm him. (PSF 83).

### D. Standards and Training on the Use of Deadly Force

At the time of this incident, basic police training provided that officers can only justify using deadly force where there is an immediate threat of death or serious bodily injury. (PSF 84). At the time of this incident, basic police training provided that officers shall give a warning before using deadly force, when feasible. (PSF 85). Prior to the shooting, Sgt. Wheeler himself had been trained to give a warning prior to using deadly force, when feasible. (PSF 86). Prior to firing his shot, Sgt. Wheeler did not give Mr. Ramos a verbal warning that he was prepared to use deadly force. (PSF 87). Sgt. Wheeler never told Mr. Ramos to get on the ground. (PSF 88). Sgt. Wheeler never told Mr. Ramos to put his hands up. (PSF 89). Sgt. Wheeler never gave Mr. Ramos a command, "drop it." (PSF 90). The deputies never told Mr. Ramos to get on his knees. (PSF 91).

No officer other than Sgt. Wheeler used deadly force during this incident. (PSF 92). At the time of this incident, basic police training provided that deadly force is the highest level of force. (PSF 93). At the time of this incident, Sgt.

Wheeler himself was trained that deadly force can only be used in an immediate defense of life situation, in other words, in defense of an immediate threat of death or serious bodily injury. (PSF 94). At the time of this incident, Sgt. Wheeler was trained that deadly force is the highest level of force an officer can use and that officers must have a reverence for human life. (PSF 95, 96). Deadly force is only justified on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury; in other words, a subjective fear is not enough. (PSF 97).

### E.  The Shooting Was Inappropriate and Contrary to Basic Police Training

Under the facts of this case, Sgt. Wheeler could not justify shooting at Mr. Ramos simply because Mr. Ramos was running away and holding a box cutter and could not shoot at Mr. Ramos under a fleeing felon theory. (PSF 98). Police officers are trained that they can only shoot a fleeing felon where (1) they have information that the suspect has committed an atrocious felony involving the infliction of injury or death, AND (2) the suspect poses an immediate threat of death or serious bodily injury. (PSF 99). At the time of this incident on July 22, 2018, POST, Learning Domain 20, Chapter 3—Use of Deadly Force, set forth four requirements that would make it reasonable for an officer to use deadly force against a fleeing subject escaping on foot. None of the four requirements were met in this case. These four requirements are:

(1) ". . . if the subject threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction of serious bodily harm [or death] . . ."
(2) ". . . probable cause to believe that the subject poses a threat of death or serious physical harm, either to the officer or others . . ."
(3) ". . .probable cause to believe that the use of deadly force is reasonably necessary . . ." [to prevent escape]
(4) ". . . some warning be given prior to the use of deadly force where feasible. . ."

(PSF 100).

Sgt. Wheeler is trained that he cannot shoot someone merely because he sees a knife or box cutter in that person's hands. (PSF 101). When Sgt. Wheeler fired his shot, there was no immediate threat of death or serious bodily injury. (PSF 102). According to Deputy Mariusz Kuskowski, Mr. Ramos was involved in Misdemeanor 148 PC, Misdemeanor Failure to Yield, and he was holding a box cutter as opposed to brandishing the box cutter. (PSF 103). No person other than Mr. Ramos was injured during this incident. (PSF 104). Prior to the shooting, the deputies discussed that if Mr. Ramos tried to drive the car away, then they would just let him go. (PSF 105). It would not have been appropriate to shoot Mr. Ramos when he was sitting in the vehicle with the box cutter. (PSF 106).

From the standpoint of police practices and basic police training, Sgt. Gary Wheeler's use of deadly force was contrary to Peace Officer Standards and Training ("POST"), improper, inappropriate, excessive, and unreasonable, including (but not limited to) for the following reasons: (1) Sgt. Wheeler could not shoot Mr. Ramos for fleeing; (2) There was no immediate threat of death or serious bodily injury; (3) Mr. Ramos committed no crime involving the infliction of serious bodily injury or death; (4) There was no information that Mr. Ramos had a firearm; (5) Under the facts of this case, Sgt. Wheeler cannot justify shooting at Mr. Ramos simply because Mr. Ramos had a box cutter; (6) Mr. Ramos never verbally threatened to harm anyone; (7) There were other reasonable alternatives available rather than shooting; (8) This was not the direst of circumstances; (9) Sgt. Wheeler did not give a verbal warning that he was prepared to use deadly force prior to shooting; (10) Subjective fear is insufficient to justify a use of deadly force; (11) Sgt. Wheeler showed no reverence for human life when he fired. (PSF 107).

### F. Pre-Shooting Negligent Tactics

Sgt. Wheeler failed to formulate a safe tactical plan with the responding deputies and Sgt. Calvert. (PSF 108). Law enforcement officers are trained that

they should attempt to de-escalate and utilize proper defusing techniques throughout an incident.  In this case, there was no rush, as there was no crime in progress. (PSF 109). Sgt. Wheeler failed to properly supervise the vehicle pullover/stop when he failed to direct his subordinate Sgt. Calvert and the responding deputy sheriffs to remain at a position of cover or move to a position of cover to establish time and distance. (PSF 110). The officers failed to establish "Contact and Cover Officers," which could have been achieved by moving to a position of cover. The Contact Officer could have been the only officer to issue commands to Mr. Ramos while the Cover Officers provided Lethal and Less Lethal Cover.  Having a designated Cover Officer negates any issue of multiple officers issuing possible conflicting verbal commands simultaneously. (PSF 111). The deputies had no discussion as to when the bean bag rounds should be deployed. (PSF 112). The deputies did not have a plan for what to do if Mr. Ramos exited his vehicle. (PSF 113).

### III.   <u>LEGAL STANDARD</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be rendered if the pleadings, depositions, and other evidence in the case show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis added).

As to materiality, the substantive law will identify which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, 477 U.S. at 248, (citing A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §

-10-

2725, pp. 93–95 (1983)). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party; evidence that is merely colorable or not significantly probative will not preclude summary judgment. *Anderson*, 477 U.S. at 249 (citing *Dombrowski v. Eastland*, 387 U.S. 82 (1967) (per curiam)). When a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250.

Upon a showing that there is no genuine dispute of material fact as to particular claims or defenses, the court may grant summary judgment in the party's favor on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. Proc. 56(a); *Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.* (C.D. Cal. 1993) 860 F. Supp. 1448, 1450.  If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. Proc. 56(a).

## IV.  **ARGUMENT**

### A. This Court Should Grant Summary Judgment in Plaintiffs' Favor on Plaintiffs' 42 U.S.C. § 1983 Claim for Excessive Force Because the Undisputed Facts Show that Mr. Ramos Did Not Pose An Immediate Threat of Death or Serious Bodily Injury at the Time of the Shooting.

This Court should grant summary judgment in Plaintiffs' favor on Plaintiffs' claim for excessive force under 42 U.S.C. § 1983 because no rational jury could find that it was objectively reasonable for Sgt. Wheeler to use deadly force against Mr. Ramos under the facts of this case. "Fourth Amendment claims of excessive force are analyzed under an objective reasonableness standard." *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)). When evaluating a claim of excessive force, the inquiry is whether the officers' actions are "objectively reasonable" in light of the facts and

circumstances confronting them. *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "This inquiry requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Glenn*, 673 F.3d at 871 (quoting *Graham*, 490 U.S. at 396). The Court must "'balance the amount of force applied against the need for that force.'" *Bryan v. McPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (quoting *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003)). [A]ll force—lethal and non-lethal— must be justified by the need for the specific level of force employed." *Id.* at 825.

Governmental interest to balance against the type of force used include the following factors identified by the Supreme Court in *Graham*: "(1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape." *Espinosa*, 598 F.3d at 537. Another factor to consider is the availability of alternative methods to effectuate an arrest or overcome resistance. *Smith v. City of Hemet*, 394 F.3d 689, 701 (2005) (*en banc*). The inquiry is "highly fact-intensive" and involves "no *per se* rules." *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011). Courts do "recognize that 'police officers are often forced to make split-second judgments . . .'" *Id.* at 1124 (quoting *Graham*, 490 U.S. at 397). "Not all errors in perception or judgment, however, are reasonable," and while courts "do not judge the reasonableness of an officer's actions 'with the 20/20 vision of hindsight,' nor does the Constitution forgive an officer's every mistake." *Id.* (quoting *Graham*, 490 U.S. at 396). In the absence of material factual disputes, the objective reasonableness of a police officer's conduct is "a pure question of law." *Scott v. Harris*, 550 U.S. 372, 383 (2007); *see also Alexander v. Cty. of Los Angeles*, 64 F.3d 1315, 1322 (9th Cir. 1995). As set forth below, the *Graham v. Connor* analysis heavily favors Plaintiffs, and Sgt. Wheeler's shooting was objectively unreasonable as a matter of law.

-12-

In determining the objective reasonableness of Sgt. Wheeler's use of force, this Court "must assess the severity of the intrusion on [Mr. Ramos'] Fourth Amendment rights by evaluating the type and amount of force inflicted." *Espinosa*, 598 F.3d at 537. Because the shot fired by Sgt. Wheeler constitutes the greatest possible amount of force, it requires the highest justification:

> The intrusiveness of a seizure by means of deadly force is unmatched. The suspect's fundamental interest in his own life need not be elaborated upon.  The use of deadly force also frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment.

*Tennessee v. Garner*, 471 U.S. 1, 9 (1985). "Certain principles are clearly established . . . that implement the fundamental rules regarding the use of deadly force. Law enforcement officers may not shoot to kill unless, at a minimum, the suspect presents an immediate threat to the officer or others or is fleeing and his escape will result in serious threat of injury to persons." *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997). Under the factors set forth in *Graham* and its progeny, there was no "need" that justified Sgt. Wheeler's use of deadly force against Mr. Ramos. As to the first *Graham* factor, the severity of the crime at issue, it is undisputed that Sgt. Wheeler had no information that Mr. Ramos had injured or threatened to injure anyone and no information that Mr. Ramos had a gun or was wanted for any violent crime. This incident initiated as a call for reckless driving. Indeed, no person other than Mr. Ramos was injured during this incident. Therefore, the first *Graham* factor cuts heavily in Plaintiffs' favor.

The second and "most important" *Graham* factor is whether Mr. Ramos posed an immediate threat to the safety of the officers or others at the time of the shooting. *Bryan*, 630 F.3d at 826. Here, it is beyond any reasonable dispute that Mr. Ramos did not pose an immediate threat of death or serious bodily injury to Sgt. Wheeler or anyone else at the time of the shooting. The following undisputed facts support granting summary adjudication in Plaintiffs' favor with respect to Sgt.

-13-

Wheeler's use of lethal force: (1) Sgt. Wheeler shot Mr. Ramos in the back; (2) Sgt. Wheeler shot Mr. Ramos when Mr. Ramos was running away; (3) the only object Mr. Ramos had was a small box cutter; (4) Mr. Ramos never tried to attack anyone during this incident; (5) Mr. Ramos never made any stabbing motions with the box cutter; (6) Mr. Ramos never injured anyone; (7) Mr. Ramos never verbally threatened to harm anyone; (8) immediately prior to the shooting, Mr. Ramos was struck by beanbag rounds; (9) at the time of the shooting, there was no person in Mr. Ramos' immediate vicinity on the same side of the fence as Mr. Ramos; (10) the individuals on the other side of the fence were Mr. Ramos' own family members; (11) Sgt. Wheeler was the closest officer to Mr. Ramos at the time of the shot; (12) Sgt. Wheeler did not give Mr. Ramos a warning that he was prepared to use deadly force prior to shooting; (13) Sgt. Wheeler did not see the blade of the box cutter exposed during the shooting; (14) there were less-lethal options available, including the police K-9, the Taser, the beanbag shotgun, and giving further commands and a warning; (15) after the shooting, Mr. Ramos' aunt removed the box cutter from Mr. Ramos' hand; (16) no person other than Mr. Ramos was injured during this incident; and (17) Sgt. Wheeler was the only officer who used lethal force during this incident. According to Deputy Lopez and the videos, Mr. Ramos was not running directly toward any person when the shot was fired.

At the time of this incident POST set forth four requirements that would make it reasonable for an officer to use deadly force against a fleeing subject escaping on foot. None of the four requirements were met in this case. These four requirements are:

(1) ". . . if the subject threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction of serious bodily harm [or death] . . ."
(2) ". . . probable cause to believe that the subject poses a threat of death or serious physical harm, either to the officer or others . . ."
(3) ". . .probable cause to believe that the use of deadly force is reasonably necessary . . ." [to prevent escape]

(4) ". . . some warning be given prior to the use of deadly force where feasible. . ."

Additionally, Sgt. Wheeler is trained that he cannot shoot someone merely because he sees a knife or box cutter in that person's hands. According to Deputy Kuskowski, Mr. Ramos was holding a box cutter as opposed to brandishing the box cutter.

According to Abraham Terrazas, he was not fearful of Mr. Ramos before or during this incident, and he told the officers that Mr. Ramos was not dangerous and would not hurt the family if Mr. Ramos exited the vehicle and ran. After he was struck by the shot, Mr. Ramos pleaded, "help me," and his family held him. It is a reasonable inference that Mr. Ramos was scared during this incident. The undisputed facts show that Sgt. Wheeler did not have any objectively reasonable belief that Mr. Ramos was going to kill or seriously injure any person. The civilians at the scene were Mr. Ramos' own family members, and the officers had no information that Mr. Ramos was going to hurt his family members or anyone else. "A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be *objective* factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001) (emphasis added). An officer's "desire to resolve quickly a potentially dangerous situation" does not, on its own, justify the use of deadly force. *Id.* Basic police officer training instructs, that a subjective fear alone is not enough to justify the use of deadly force. Sgt. Wheeler overreacted when he shot Mr. Ramos, and an overreaction in using deadly force is a use of excessive force.

Under the third *Graham* factor, Mr. Ramos was not actively resisting arrest. *See, e.g., Deorle*, 272 F.3d at 1276-77 (although the plaintiff "brandish[ed] a hatchet" and crossbow, threatened to "kick [an officer's] ass," and continually roamed his property against officers' orders, this was not sufficient active resistance to warrant the use of a beanbag shotgun); *Chien Van Bui v. City of and Cty. of San Fran.*, 699 Fed. Appx. 614, 615 (Mem) (9th Cir. 2017) (unpublished, *see* FRAP

32.1(a)) (reasoning that the suspect's failure to comply with commands to drop the "X-Acto" knife could be an expression of confusion or fear as opposed to an act of resistance). According to Mr. Ramos' family members, Mr. Ramos was scared during this incident. Prior to the shooting, Mr. Ramos was contained in his vehicle at a dead end. Mr. Ramos exited his vehicle in response to a command to "get out" and then ran away to take cover from the beanbag rounds after Deputy Houn started shooting at him, escalating the situation.

Other significant factors to consider are the availability of alternative methods to effectuate an arrest or overcome resistance and whether the officer gave a warning that deadly force would be used. *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012); *Bryan,* 630 F.3d at 831; *Headwaters v. County of Humboldt*, 240 F.3d 1185, 1204 (9th Cir. 2000) ("[P]olice are 'required to consider what other tactics if any were available to effect the arrest.'"). Here, it is undisputed that Sgt. Wheeler did not give Mr. Ramos a verbal warning that he was going to use deadly force prior to shooting. Additionally, Sgt. Wheeler had reasonable alternative measures other than shooting. The video shows that a K-9 was already pursuing Mr. Ramos down the alley at the time that Sgt. Wheeler fatally shot Mr. Ramos. Sgt. Calvert had his Taser out, Deputy Houn had his beanbag shotgun out, multiple officers were present on scene, outnumbering Mr. Ramos, and a police helicopter was circling the scene. The officers could have instructed the family members to go inside the home or vacate the premises if they thought that were necessary, but according to Abraham Terrazas, officers instructed them to stay behind the fence. Sgt. Wheeler also could have given Mr. Ramos a command to "drop it."

Courts have found an officer's use of deadly force to violate the Fourth Amendment in cases where the *Graham* factors did not weigh as heavily in Plaintiffs' favor as they do in the instant case. For example, in *S.B. v. County of San Diego*, 864 F.3d 1010 (9th Cir. 2017), the Ninth Circuit found that the deputy's use of deadly force was not objectively reasonable and violated the Fourth Amendment

-16-

where the decedent was acting aggressively at the time of the shooting, grabbed a knife with a six-to-eight inch blade from his back pocket when he was six to eight feet away from a deputy, and where officers did not issue a verbal warning that deadly force would be used and the officers had non-lethal options available to them. *S.B.*, 864 F.3d at 1014. Similarly, here, Sgt. Wheeler failed to give a warning that deadly force would be used prior to shooting. Also similarly, Sgt. Wheeler and the other officers had less-lethal options available at the time of the shooting, including using Tasers, the police K-9, and the beanbag shotgun, or telling the family to get inside the house if that were necessary. The instant case is even stronger than *S.B.* because Mr. Ramos was not acting aggressively, he had only a small box cutter, and at the time of the shooting, there was no person on the same side of the fence as Mr. Ramos in Mr. Ramos' immediate vicinity.

In *Hughes v. Kisela*, 862 F.3d 775 (9th Cir. 2016) ("*Kisela I*"), *rev'd on other grounds*, 138 S. Ct. 1148 (2018) (reversing only on the grounds that the constitutional right was not clearly established in 2010), the Ninth Circuit denied qualified immunity to an officer who shot a woman holding a large kitchen knife after she walked toward another woman within five to six feet of her and did not comply with orders to drop the knife. The Ninth Circuit held that a rational jury could find that Ms. Hughes had the constitutional right to walk down her driveway holding a knife without being shot. 862 F.3d at 785. In *Kisela I*, the Ninth Circuit considered that the officers did not have information that the suspect was threatening or hurting a person, that the suspect did not appear angry or menacing, and that multiple officers responded to the scene. *Id.* Likewise, witnesses described Mr. Ramos as scared during this incident, as opposed to angry or menacing, the officers had no information that Mr. Ramos had committed any crime involving the infliction of injury or death, and Mr. Ramos never tried to attack anyone, never made any stabbing motions with the box cutter, and never even gestured toward officers prior to the shooting. Mr. Ramos

was not running directly toward anyone at the time of the shooting, he was separated from Abraham Terrazas and the other family members by a fence, and there were multiple officers on scene. Here, this Court should grant summary judgment in Plaintiffs' favor and hold that Mr. Ramos had the constitutional right to be free from excessive deadly force when he was running away on the opposite side of a fence as his own family members while holding a small box cutter that he did not brandish or use to make any stabbing motions.

The Ninth Circuit's decision in *Kisela I* relied on *Glenn*, *supra*, where the Ninth Circuit held that the officers were not entitled to summary judgment on the reasonableness of their use of deadly force. In *Glenn*, officers received a report of an agitated, intoxicated man carrying a pocketknife. 673 F.3d 867. The officers screamed for him to drop the knife. *Id*. An officer shot the man with several beanbags, and the impact of the beanbags caused the man to move away from the beanbag fire and toward the house in which his parents were standing. *Id*. Officers then opened fire and killed him. 673 F.3d at 869. The *Glenn* court found that the decedent's possession of a knife was not dispositive and considered that the decedent had not brandished the knife and that the decedent was the son of the homeowners. 673 F.3d 872. This is consistent with the opinion of Plaintiffs' police practices expert, Scott DeFoe, and Sgt. Wheeler's own training, that he could not shoot Mr. Ramos just for having the box cutter.

Similarly, here, Mr. Ramos was struck by three beanbag rounds prior to the shooting, which escalated the situation, and Sgt. Wheeler knew that the individuals at the scene of the incident were Mr. Ramos' family members. According to Mr. Ramos' cousins who witnessed the incident, Mr. Ramos appeared scared when officers were pointing weapons at Mr. Ramos and when he was struck by beanbag rounds, and it is a reasonable inference that Mr. Ramos retreated into the vehicle and then ran away from officers to take cover because officers were shooting at him. Also as in *Glenn*, Mr. Ramos was not wanted for

-18-

any crime and was not in possession of any guns. 673 F.3d 873. Mr. Ramos' case is even stronger because Mr. Ramos had only a small box cutter and he had not threatened to harm anyone.

In *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1233-34 (9th Cir. 2013), an excessive force and negligent use of deadly force case, the Ninth Circuit reversed a district court' grant of summary judgment where the decedent approached officers while armed with a knife, but where the decedent was not charging the officers, was given no warning that deadly force would be used, was located in his own home, was not witnessed acting erratically with the weapon, and where officers had no information that the decedent had threatened to harm anyone. *Id*. Likewise, here, Mr. Ramos was not charging anyone, was given no warning, was outside his family's property, was not making any stabbing motions, and had not injured or threatened to injure anyone.

In *Chien Van Bui*, *supra*, the Ninth Circuit found that "'it was not clear that the officers had probable cause to believe that Bui pose[d] a significant threat of death or serious physical injury to the officer[s] or others,'" a prerequisite for the use of deadly force to be reasonable." 699 Fed. Appx. at 614-15. In *Chien Van Bui*, Bui was holding an "X-Acto" knife in his hand when he was shot, did not raise his arm, was turning away from the officers at the time he was shot, and did not make any other threatening gestures even though he had previously inflicted a small cut on a teenager with the knife. *See also N.E.M. v. City of Salinas*, 761 Fed. Appx. 698 (9th Cir. 2019) (finding that the district court did not err in denying qualified immunity for excessive deadly force where the decedent swung gardening shears at officers who were approximately six feet away). This Court should hold that Mr. Ramos' case is even stronger than these cases and enter summary judgment in favor of Plaintiffs in the instant case.

Courts have even found that an officer's use of deadly force can violate the Fourth Amendment in cases where suspects had guns. *See, e.g., George v. Morris*,

736 F.3d 829 (9th Cir. 2013) (holding that the fact that a suspect is armed with a deadly weapon "does *not* render the officers' response per se reasonable under the Fourth Amendment"; *Harris*, *supra*, 126 F.3d 1189, 1203 (9th Cir. 1997) (finding that shooting the plaintiff was not objectively reasonable where he had "made no aggressive move of any kind"); *Curnow v. Ridgecrest Police,* 952 F.2d 321, 325 (9th Cir. 1991) (finding that the defendants were not entitled to qualified immunity where, in one witness' version of the shooting, "Curnow did not point the gun at the officers and apparently was not facing them when they shot him the first time"); *Robertson v. County of Los Angeles*, 2017 WL 5643179 (C.D. Cal. 2017) (denying summary judgment where the decedent had a gun and holding that a reasonable jury could view the videos and determine that the decedent did not make any threatening movements leading up to or during the shooting).

### B. Battery (Wrongful Death) and Negligence (Wrongful Death)

Plaintiffs are also entitled to summary adjudication in their favor and against Sgt. Wheeler and the County of San Bernardino on their state law claims for battery (wrongful death) and negligence (wrongful death) for the same reasons discussed in connection with their constitutional claim for excessive force in section IV(A), *supra*. Under California law, battery and negligence claims arising out of excessive force by a peace officer are evaluated by way of traditional Fourth Amendment analysis under *Graham*, *supra*. *See Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1121, fn. 6 (2004) ("Federal civil rights claims of excessive force are the federal counterpart to state battery and wrongful death claims; in both, the plaintiff must prove the unreasonableness of the officer's conduct. Accordingly, federal cases are instructive."); *see also Hayes v. County of San Diego*, 736 F. 3d 1223 (9th Cir. 2013), 1232; *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1274 (1998). As set forth above, the facts bearing on the reasonableness of Sgt. Wheeler's use of lethal force against Mr. Ramos are

undisputed and show that Sgt. Wheeler's gunshot was an objectively unreasonable and negligent use of force.

The video shows, and Sgt. Wheeler testified, that he fired at Mr. Ramos when Mr. Ramos was running away, and he was aiming for Mr. Ramos' back when he fired. It is undisputed that the object Mr. Ramos had was a small box cutter with blade of less than one inch and undisputed that the officers had no information that Mr. Ramos had a gun. It is undisputed that the officers had no information that Mr. Ramos had committed any crime involving the infliction of death or serious bodily injury, that Mr. Ramos did not try to attack anyone, did not verbally threaten to harm anyone, and never made any stabbing motions with the box cutter. It is undisputed that Mr. Ramos was outnumbered and scared during this incident, with multiple officers pointing weapons at him, and undisputed that Sgt. Wheeler did not give Mr. Ramos a verbal warning that he was going to shoot him. The officers had reasonable alternative measures to shooting, including the police K-9 that was already starting to follow Mr. Ramos down the alley, Tasers, and the beanbag shotgun. There was also a police helicopter providing assistance at the scene.

With respect to Plaintiffs' negligence claim, the California Supreme Court has clarified that in police shooting cases, the negligence analysis is even broader than a typical Fourth Amendment analysis because state law specifically considers negligent "pre-shooting" tactics as part of the "totality of the circumstances" evaluation. *Hayes*, 57 Cal. 4th at 639 (an officer's tactical conduct and decisions preceding the use of deadly force are relevant considerations in determining whether the use of deadly force gives rise to negligence liability, which can arise, for example, if the tactical conduct and decisions show, as part of the totality of circumstances, that the use of deadly force was unreasonable."). Here, Sgt. Wheeler and the other officers engaged in pre-shooting negligent tactics, which supports a finding of summary adjudication

in Plaintiffs' favor on this claim. Immediately prior to the shooting, Sgt. Wheeler broke the front passenger window of Mr. Ramos' vehicle, which escalated the situation and caused Mr. Ramos to drive the vehicle forward. At that point, Mr. Ramos' vehicle was contained in a dead end with Sgt. Wheeler's vehicle blocking it in from behind. An officer commanded Mr. Ramos to exit the vehicle, and when Mr. Ramos exited the vehicle and stood in the doorframe on the driver side of the vehicle, Deputy Houn struck him with three beanbag rounds, further escalating the situation. Mr. Ramos was not attempting to attack anyone when he was struck by the beanbag rounds. Law enforcement officers are trained that they should attempt to de-escalate and utilize proper defusing techniques throughout an incident.  In this case, there was no rush, as there was no crime in progress. Sgt. Wheeler failed to properly supervise the situation. The officers had no discussion as to when the bean bag rounds should be deployed and did not have a plan for what to do if Mr. Ramos exited his vehicle. Sgt. Wheeler failed to give Mr. Ramos a verbal warning that deadly force would be used prior to shooting him and failed to issue appropriate commands such as "drop it."

### C. Violation of the Bane Act (Cal. Civ. Code § 52.1)

Plaintiffs are entitled to judgment in their favor on their claim for violation of the Bane Act under California law. The Ninth Circuit in interpreting *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 798 (2017) stated, "it is not necessary for the defendants to have been 'thinking in constitutional *or legal terms* at the time of the incident[], because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.'" *Reese v. County of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) (quoting *United States v. Reese*, 2 F. 3d 870 (9th Cir. 1993). Here, Sgt. Wheeler shot Mr. Ramos in the back while Mr. Ramos was running away without warning when Mr. Ramos had not injured or threatened to injure anyone, had not tried to attack anyone, and had not made any stabbing motions with the box cutter. This

certainly indicates that Sgt. Wheeler acted with a reckless disregard for Mr. Ramos' constitutional right to be free from excessive force when he shot Mr. Ramos.

### D. Defendant County of San Bernardino is Vicariously Liable for Sgt. Wheeler's Misconduct on the State Law Claims.

In California, public entities are generally responsible for the conduct of their police officers acting under color of law, and California courts have pointed to strong policy reasons favoring this rule. Cal. Gov. Code 815(a); *see Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 216-17 (1991) (collecting cases and endorsing the proposition that "vicarious liability is an appropriate method to ensure that victims of police misconduct are compensated") (citing *Policeman's Benev. Ass'n of N.J. v. Washington Tp.*, 850 F.2d 133, 141 (3rd Cir. 1988). "It is, after all, the state which puts the officer in a position to employ force and which benefits from its use." *Thomas v. Johnson*, 295 F. Supp. 1025, 1032 (D.D.C. 1968) (quoting Jaffe, *Suits Against Governments and Officers: Damage Actions* (1963) 77 Harv. L. Rev. 209, 229). Here, it is undisputed that Sgt. Wheeler was acting under color of law and in the course and scope of his employment with the County of San Bernardino at the time of the shooting.

### V.   CONCLUSION

In light of the above, Plaintiffs respectfully submit that summary adjudication in Plaintiffs' favor is appropriate on their claims for Excessive Force under the Fourth Amendment, Battery (wrongful death), Negligence (wrongful death) and violation of the Bane Act.

Dated: October 4, 2021,                    LAW OFFICES OF DALE K. GALIPO

By:   */s/ Renee V. Masongsong*
Dale K. Galipo
Renee V. Masongsong
Attorneys for Plaintiffs