JOHN M. FUJII, SBN 172718
JFujii@SilverWrightLaw.com
MAHADHI CORZANO, SBN 254905
MCorzano@SilverWrightLaw.com
SILVER & WRIGHT LLP
3 Corporate Park, Suite 100
Irvine, California 92606
Phone: 949-385-6431
Fax:   949-385-6428

Attorneys for Defendants
COUNTY OF SAN BERNARDINO;
GARY WHEELER; THUN HOUN; JASON CALVERT

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| V.R., a minor, by and through her guardian *ad litem* Ariana Toscano, individually and as successor in interest to Juan Ramon Ramos, deceased; and RAMONA TERRAZAS, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN BERNARDINO; GARY WHEELER; THUN HOUN; JASON CALVERT; and DOES 4-10, inclusive <br><br> Defendants. | Case No.:   5:19-cv-01023-JGB-SP <br> Judge:       Jesus G. Bernal <br> Mag. Judge: Sheri Pym <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR EVIDENTIARY SANCTIONS FOR PLAINTIFFS' FAILURE TO DISCLOSE A CRITICAL CELL PHONE VIDEO OF THE SHOOTING INCIDENT** <br><br> [Filed concurrently with: <br> 1. Memorandum of Points and Authorities <br> 2. Declaration of Adrianna C. Paige <br> 3. Declaration of Mahadhi Corzano <br> 4. Appendix of Exhibits <br> 5. [Proposed] Order] <br><br> Hearing <br> Date:         November 8, 2021 <br> Time:         9:00 a.m. <br> Courtroom: 1 <br> Judge:        Jesus G. Bernal |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on November 8, 2021 at 9:00 a.m. in Courtroom 1 of the above-referenced Court, located at 3470 Twelfth Street, Riverside, California, 92501-3801, Defendants County of San Bernardino (the "County"), Sergeant Gary Wheeler, Sergeant Jason Calvert, and Deputy Thun Houn (collectively, "Defendants") will and hereby move this Court for an Order granting their Motion for evidentiary sanctions for Plaintiffs' failure to disclose a critical cell phone video of the shooting incident, pursuant to Federal Rules of Civil Procedure, rule 37 ("Motion"). This Motion is made on the grounds that:

1.  Plaintiffs concealed the existence of the cell phone video showing the crucial moments of the incident that was taken by Abraham Terrazas, one of the original Plaintiffs, that shows exactly how close Juan Ramon Ramos ("Decedent") was to Abraham Terrazas when Sergeant Wheeler fired his weapon. Plaintiffs failed to disclose the existence of this critical video in Plaintiffs' Initial the Disclosures and then again in response to written discovery asking for any such videos.

2.  Plaintiffs' counsel sandbagged Defendants during their depositions by failing to disclose this crucial video before these depositions, and elicited testimony about the distance between Decedent and the nearest bystander that was greater than the 12 feet shown in the concealed cell phone video.

3.  Defendants only discovered the existence of his video later when Abraham Terrazas testified in his deposition that he took a cell phone video of the crucial moments of this shooting incident. In a subsequent break in Abraham's deposition, Plaintiffs' counsel finally revealed the existence of Abraham's video and turned it over to Defendants' counsel.

4.  To compound the prejudice to Defendants, Plaintiffs filed a summary judgment motion citing to Sergeant Wheeler's tainted deposition testimony and also relied upon a declaration of their police practices expert, Scott Defoe, who did not include Abraham's cell phone video as a basis for his opinions, to opine that "no person [was] in

SILVER & WRIGHT LLP
IRVINE | INLAND EMPIRE | BAY AREA | SACRAMENTO

Mr. Ramos' immediate vicinity when Sgt. Wheeler fired the shot, according to Sgt. Wheeler and the videos."

5. Based on these reasons, by this Motion, Defendants ask the Court to issue an evidentiary ruling that Abraham Terrazas was at such close proximity to Decedent that it was reasonable for Sergeant Wheeler to believe that Decedent posed an imminent and significant threat of causing death or serious physical injury to a bystander standing 12 feet away when Sergeant Wheeler fired his weapon. The Court should also issue a ruling allowing Defendants to inform the jury of Plaintiffs' failure to disclose the cell phone video and to allow the jury to make reasonable inferences that Plaintiffs' failure to disclose should be treated as establishing that the cell phone video is a critical piece of evidence that favors Defendants' defenses and would be unfavorable to Plaintiffs.

6. Unless these sanctions are imposed, parties would be able to eviscerate the discovery process and file summary judgment motions relying upon concealed evidence without any consequences.

This Motion is based upon this Notice, the Memorandum of Points and Authorities filed concurrently herewith, the Declaration of Adrianna C. Paige, the Declaration of Mahadhi Corzano, the [Proposed] Order filed concurrently herewith, the documents and evidence on file in this action, and such further evidence and arguments as may be presented to the Court in this matter.

///
///
///
///
///
///
///
///
///

Pursuant to Local Rule 7-3, on several occasions, counsel for Defendants and counsel for Plaintiffs met and conferred on this intended motion through the exchange of several letters and through many subsequent telephone calls, including meet and confer telephone discussions that occurred as recently as September 30, 2021 and October 4, 2021.

Dated: October 8, 2021                       SILVER & WRIGHT LLP

By: /s/John M. Fujii
JOHN M. FUJII
MAHADHI CORZANO
Attorneys for Defendants
County of San Bernardino, Gary Wheeler, Thun Houn, Jason Calvert

## I.  INTRODUCTION

This lawsuit arises out of a July 22, 2018 shooting death of Juan Ramon Ramos ("Decedent").  The two remaining Plaintiffs, V.R. and Ramona Terrazas ("Plaintiffs"), allege that San Bernardino County (the "County"), Deputy Thun Houn, Sergeant Jason Calvert, and Sergeant Gary Wheeler ("Defendants") used excessive and deadly force during their course of restraining Decedent and that Decedent was not close to any bystanders when Sergeant Wheeler fired his weapon.  The entire incident was captured by the officers' body-worn camera videos, or so we thought.

A shocking development has arisen that has a significant impact on this case. Defendants have discovered that Plaintiffs have been concealing the existence of a critical cell phone video of the incident that was taken by former Plaintiff Abraham Terrazas and that Plaintiffs' counsel sandbagged Defendants during their depositions by failing to disclose this crucial video before these depositions, either in Plaintiffs' Initial Disclosures or in Plaintiffs' responses to discovery asking about the very existence of any such videos.

During the subsequent February 25, 2021 deposition of former Plaintiff Abraham Terrazas, he testified that he had taken a cell phone video of the May 22, 2018 shooting of Decedent.  During a subsequent break in that deposition, Plaintiffs' counsel finally admitted the existence of the cell phone video and provided counsel for Defendants with a copy of this critical video.  This is shocking since Abraham Terrazas was an original Plaintiff when this lawsuit was initiated on June 4, 2019 and when Plaintiffs' counsel filed the tort claim with the County on November 28, 2018 on behalf of Abraham Terrazas and the other original Plaintiffs.  This is not a case where Plaintiffs' counsel has substituted or associated in as Plaintiffs' trial counsel mid-stream through discovery.

Since Plaintiffs' counsel has been the attorneys for Abraham Terrazas since as early as November 28, 2018, and probably much earlier, Plaintiffs' counsel has known about the existence of this cell phone video for years.  One of the first questions Plaintiffs' counsel must have asked their 7 original Plaintiffs (especially since 5 of the Plaintiffs were present at the scene with during the May 22, 2018 incident) is whether any of them

– 1 of 9 –
MEMO OF POINTS AND AUTHORITIES FOR DEFENDANTS' MOTION FOR EVIDENTIARY SANCTIONS

took a cell phone video of the incident.

Thus, for over two years, Plaintiffs' counsel kept this critical piece of evidence a secret. What is more alarming is that Plaintiffs' counsel deposed Sergeant Wheeler, Sergeant Calvert, Deputy Houn, Deputy Lopez, and Deputy Kuskowski on such crucial topics as the distances between Decedent and his relatives without them being able to review the secret cell phone video to refresh their recollection of instantaneous events that occurred years before and during a time when physiological changes in a flight-or-fight situation often skew memory and perception. The secret cell phone video is the only video showing the close proximity of Abraham to Decedent (approximately 12 feet) when Sergeant Wheeler fired his weapon.

To make matters worse, Plaintiffs cited to the deposition transcript of Sergeant Wheeler as evidence for their summary judgment motion that Sergeant Wheeler believed the closest bystander was much further than the actual distance of 12 feet from Decedent when he fired his weapon. See ECF No. 64 [Plaintiffs' Separate Statement, Fact No. 72] ("Sgt. Wheeler estimated that at the time of the shooting, he could see a person in the front yard out of the corner of his side vision approximately 40 to 45 feet away from Mr. Ramos." [Citing to Wheeler Depo. at 79:6–14].). Defendants compound the prejudice to Defendants by eliciting a declaration of their police practices expert who did not rely on Abraham's video to make his opinions in support of Plaintiffs' Summary judgment motion. Thus, Plaintiffs continue to try to cash in on their ill-gotten testimony.

Defendants bring this Motion to right a wrong. Defendants strongly believe that, had Abraham Terrazas not mentioned that he took the cell phone video at this February 25, 2021 deposition, the video and its existence would not be known by Defendants today. Under these circumstances where Plaintiffs continue to try to benefit from their failure to disclose this critical video, it is fair to seek a harsh evidentiary ruling that sanctions Plaintiffs and does just return the parties to the status quo. Thus, the Court should issue a ruling that Abraham was at such close proximity to Decedent that it was reasonable for Sergeant Wheeler to believe that Decedent posed an imminent and significant threat of

causing death or serious physical injury to a bystander when Sergeant Wheeler fired his weapon. Otherwise, there would no consequences for withholding a cell phone video of the critical moments of a shooting. Plaintiffs wanted to bury this video because it hurts their case. They almost succeeded. The jury should be allowed to know that Plaintiffs concealed this video because they did not like what it showed.

## II.  STATEMENT OF FACTS

Plaintiffs' counsel has been the attorneys for all seven original Plaintiffs, including Abraham Terrazas in this lawsuit since as early as November 28, 2018. See Declaration of Adrianna C. Paige ("Paige Decl."), ¶ 2, and Exhibit A to the Appendix of Exhibits [11/28/18 tort claim on Plaintiffs' counsel's letterhead and signed by Plaintiffs' counsel].

Plaintiffs' counsel initiated this lawsuit by filing the original Complaint on June 4, 2019 on behalf of seven Plaintiffs: V.R. (Decedent's minor daughter), Ramona Terrazas (Decedent's mother), and five relatives of Decedent (aunt, uncle, and three cousins (including Abraham Terrazas), who were all present when the July 22, 2018 incident occurred). ECF No. 1. On January 3, 2020, Defendants filed a motion to dismiss the eleventh claim for negligent infliction of emotional distress in the Second Amended Complaint, which was the only claim brought by the aunt, uncle, and three cousins, including Abraham Terrazas. ECF No. 33. On April 28, 2020, the Court granted Defendants' motion and dismissed the eleventh claim, which dismissed the aunt, uncle and three cousins as Plaintiffs in this lawsuit. ECF No. 37.

On September 17, 2020, Plaintiffs served its Plaintiffs' Initial Disclosures. See Paige Decl., ¶ 3, and Exhibit B to the Appendix of Exhibits [9/17/20 Plaintiffs' Initial Disclosures]. Plaintiffs failed to disclose this crucial cell phone video in Plaintiffs' Initial Disclosures.

On September 2, 2020, the County served both Plaintiffs V.R. and Ramona Terrazas with requests for production seeking any such cell phone video. The County's Request Number 7 asks Plaintiffs to produce "<u>any</u> and all … <u>videos</u> … or other recordings <u>related to the INCIDENT</u>." See Paige Decl., ¶ 4, and Exhibits C and D to the Appendix

of Exhibits [County's Requests for Production] (underlining added). The County's Request Number 8 asks Plaintiffs to produce "<u>any</u> and all … <u>recordings</u> <u>obtained from</u> <u>**anyone**</u> regarding the INCIDENT." See Paige Decl., ¶ 4, and Exhibits C and D to the Appendix of Exhibits [County's Requests for Production] (emphasis added). On October 16, 2020, months **before** Plaintiffs' counsel took any depositions, Plaintiffs responded to the County's Request Numbers 7 and 8 stating that <u>Plaintiffs have no responsive video</u> <u>recordings</u>. See Paige Decl., ¶ 5, and Exhibits E and F to the Appendix of Exhibits [Plaintiffs' Reponses to County's Requests for Production].

The secret cell phone video that Plaintiffs' counsel failed to disclose in its Initial Disclosures and then again in Plaintiffs' discovery responses showed that Abraham Terrazas was approximately 12 feet away from Decedent when Sergeant Wheeler fired his weapon. See Paige Decl., ¶ 12, and Exhibit L to the Appendix of Exhibits [Defendants' video presentation prepared by Jason Fries at 9:01]. That cell phone video was the only video that shows just how close Decedent was to Abraham Terrazas when Sergeant Wheeler fired his weapon. Because of the positioning and angle of view in the body-worn cameras of the deputies on scene, none of their body-worn camera videos showed this critical distance.

Without the benefit of reviewing this secret cell phone video, the deputies on scene, including Sergeant Wheeler, were left without the ability to refresh their recollection of instantaneous events that occurred years before and during a time when physiological changes in a flight-or-fight situation often skew memory perception.

For instance, during the December 18, 2020 deposition of Sergeant Wheeler, Plaintiffs' counsel asked several questions about how far Sergeant Wheeler remembered Decedent being from the nearest bystander when he fired his weapon. See Paige Decl., ¶ 6, and Exhibit G to the Appendix of Exhibits [Sergeant Wheeler's deposition transcript 78:9–79:16].

On February 25, 2021, Defendants' counsel deposed Abraham Terrazas. When asked about what occurred during the incident, and while explaining the events of that

day, he responded that he started recording on his cell phone as then he handed his cell phone to his cousin David Zuniga, Jr., who continued recording Abraham as Abraham walked toward Decedent. See Paige Decl., ¶ 8, and Exhibit H to the Appendix of Exhibits [Abraham Terrazas deposition transcript at 92:9–96:4.].) Shockingly, minutes later during a break in the deposition, Plaintiffs' counsel delivered a copy of this critical cell phone video to Defendants' counsel. See Paige Decl., ¶ 9, and Exhibit I to the Appendix of Exhibits [Abraham's cell phone video].

Later in the deposition, Abraham was asked if Plaintiff Ramona Terrazas had seen the cell phone video, and Abraham said yes she did. See Paige Decl., ¶ 10, and Exhibit J to the Appendix of Exhibits [Abraham Terrazas' deposition transcript at 157:4–8].) This makes total sense that the cell video was shown to all seven original Plaintiffs on July 22, 2018 or the next day. Also, it makes total sense that any lawyer who retains seven clients, five of them who witnessed the shooting, would ask each of them whether they took any cell phone video of the incident.

On October 4, 2021, Plaintiffs filed a summary judgment motion. ECF No. 62. Equally as shocking as their failure to disclose the video during until forced to by Abraham's disclosure of its existence, Plaintiffs cited to the deposition transcript of Sergeant Wheeler as evidence that he believed the closest relative bystander was much further than the actual distance of 12 feet from Decedent when he fired his weapon. See ECF No. 64 [Plaintiffs' Separate Statement, Fact No. 72] ("Sgt. Wheeler estimated that at the time of the shooting, he could see a person in the front yard out of the corner of his side vision approximately 40 to 45 feet away from Mr. Ramos." [Citing to Wheeler Depo. at 79:6–14].). Thus, Plaintiffs continue to try to profit from their egregious discovery violation.

Plaintiffs' attempt to profit off this secret cell phone video even extended to their expert Scott Defoe and the declaration he submitted in support of Plaintiffs' summary judgment motion. In paragraph 4 of his declaration, Mr. Defoe lists everything he reviewed "[b]efore reaching his opinions in this case." See Paige Decl., ¶ 11, and **Exhibit**

**K** to the Appendix of Exhibits [Scott Defoe declaration].) While Mr. Defoe list the officers' body-worn camera videos as part of what he reviewed, conspicuously absent from what he reviewed is Abraham's cell phone video. See Paige Decl., ¶ 11, and Exhibit K to the Appendix of Exhibits [Scott Defoe declaration, ¶ 4].) Mr. Defoe then goes on to opine that "There was no immediate defense of life situation when Sgt. Wheeler fired his shot at Mr. Ramos. The videos show that there was no person in Mr. Ramos' immediate vicinity when Sergeant Wheeler fired the shot, and according to Sgt. Wheeler and the videos, the civilians who were present at the scene of the shooting were some distance away from Mr. Ramos and were separated from Mr. Ramos by a fence." See Paige Decl., ¶ 11, and Exhibit K to the Appendix of Exhibits [Scott Defoe declaration, ¶ 7]. If Mr. Defoe did not review Abraham's cell phone video, he would not have known that Decedent was only 12 feet away from Abraham when Sergeant Wheeler fired his weapon.

## III.   LEGAL ANALYSIS

California Rules of Professional Responsibility, Rule 3.4 provides, in pertinent part, that, "A <u>lawyer shall not</u>: (a) unlawfully obstruct another party's access to evidence, including a witness, or unlawfully alter, destroy or <u>conceal</u> a document or <u>other material having potential evidentiary value</u>. A lawyer shall not counsel or assist another person to do any such act; (b) suppress any evidence that the lawyer or the lawyer's client has a legal obligation to reveal or to produce…." (Underlining added.) In addition, while not a binding rule, the Central District's Civility and Professionalism Guidelines provides, in pertinent part, that, a lawyer "<u>will not delay</u> document <u>production</u> to prevent opposing counsel from inspecting documents <u>prior to scheduled depositions or for any other tactical reason</u>." (Underlining added.)

Plaintiffs' counsel failed to disclose this crucial cell phone video in Plaintiffs' Initial Disclosure served on September 17, 2020. See Paige Decl., ¶ 3, and Exhibit B to the Appendix of Exhibits [9/17/20 Plaintiffs' Initial Disclosures]. In addition, Plaintiffs again failed to disclose this cell phone video in response to written discovery seeking such videos. See Paige Decl., ¶ 4 and Exhibits C and D; ¶ 5, and Exhibit E and F to the

Appendix of Exhibits [County's Requests for Production and Plaintiffs' Responses].

Federal Rules of Civil Procedure, rule 37 provides the sanctions available for failing to disclose this critical video in Plaintiffs' Initial Disclosures and for Plaintiffs' failure to disclose this critical video in their discovery responses. Rule 37(c)(1) provides, in pertinent part, that "If a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court … (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) <u>may inform the jury of the party's failure</u>; and (C) <u>may impose other appropriate sanctions</u>, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." (Emphasis added.)

Under Rule 37(b)(2)(A)(i)-(vi), the court may issue the following orders:

(i) <u>directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action</u>, as the prevailing party claims;

(ii) <u>prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence</u>;

(iii) <u>striking pleadings in whole or in part</u>;

(iv) staying further proceedings until the order is obeyed;

(v) <u>dismissing the action or proceeding in whole or in part</u>;

(vi) rendering a default judgment against the disobedient party. (Underlining added.)

Rule 37 sanctions are within the trial court's inherent discretionary authority when a party's abuse of the discovery process undermines the integrity of discovery. Issue, evidentiary, and terminating sanctions are appropriate even where there was no violation of a court order. See *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980) (rejecting argument that preclusion sanction is available under Rule 37 only when a party

fails to obey a court discovery order because "this would leave courts powerless to deal with discovery violations not arising in defiance of a court order"). In egregious cases, dismissal is warranted. See *Projects Management Co. v. Dyncorp International LLC*, 734 F.3d 366, 373 (4th Cir. 2013) (Orders of dismissal for a discovery violation "are appropriate when a party … abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process.").

If Abraham Terrazas did not state in his February 25, 2021 deposition that he took a cell phone video, Defendants are quite sure that the cell phone video would still have been kept a secret today. Because of the seriousness of concealing this critical video, and Plaintiffs' use of sandbagged deposition testimony of Defendants in their summary judgment motion, coupled with Plaintiffs' expert Scott DeFoe not relying on this cell phone video to make his opinions, Defendants ask this Court to issue harsh sanctions that do not just take the parties back to the status quo of allowing the cell phone video to dictate the distance (approximately 12 feet) between Decedent and Abraham Terrazas when Sergeant Wheeler fired his weapon. To simply do that would be inconsistent with Rule 37, the discovery statutes, and the Federal Rules of Civil Procedure and give parties free passes to conceal critical evidence, in this case a clear video of the shooting, and face no consequences if their violation is somehow discovered years later. Unless harsh sanctions are imposed here, parties would be able to eviscerate the discovery process and file summary judgment motions relying upon concealed evidence without any repercussions.

///
///
///
///
///
///
///

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion in its entirety and issue evidentiary rulings that designate as a fact to be taken as established for purposes of this action that Abraham Terrazas was at such close proximity to Decedent that it was reasonable for Sergeant Wheeler to believe that Decedent posed an imminent and significant threat of causing death or serious physical injury to Abraham Terrazas when Sergeant Wheeler fired his weapon. The Court should also issue a ruling allowing Defendants to inform the jury of Plaintiffs' failure to disclose the cell phone video and to allow the jury to make the inference that the cell phone video was kept a secret because it hurts Plaintiffs' case.

Dated: October 8, 2021

SILVER & WRIGHT LLP

By: _/s/John M. Fujii_____
JOHN M. FUJII
MAHADHI CORZANO
Attorneys for Defendants
County of San Bernardino, Gary Wheeler, Thun Houn, Jason Calvert