LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (Bar No. 281819)
rvalentine@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Tel:   (818) 347-3333
Fax:  (818) 347-4118

*Attorneys for Plaintiffs V.R., et al.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| V.R., a minor, by and through her guardian *ad litem* Ariana Toscano, individually and as successor in interest to Juan Ramon Ramos, deceased; and RAMONA TERRAZAS, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO; GARY WHEELER; THUN HOUN; JASON CALVERT; and DOES 4-10, inclusive,<br><br>Defendants. | Case No. 5:19-cv-01023-JGB-SP<br><br>[*Honorable Jesus G. Bernal*]<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR EVIDENTIARY SANCTIONS**<br><br>[Filed concurrently with declaration of Renee V. Masongsong and exhibits thereto; notice of manual filing]<br><br>Date: November 8, 2021<br>Time: 9:00 a.m.<br>Courtroom: Riverside, 1 |

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .......................................................................................................3

    A. Wheeler Reviewed the Stordahl Video to Prior to Giving His Initial Interview and His Deposition ......................................................3

    B. The Stordahl Video Shows the Position of Abraham Terrazas at the Time of the Gunshot or a Split Second Prior to the Gunshot ...........5

    C. The Cell Phone Video Does Not Show Abraham Terrazas at the Exact Moment of the Gunshot ...............................................................5

    D. Both Videos Show that Mr. Ramos Did Not Pose An Immediate Threat of Death or Serious Bodily Injury to Abraham Terrazas or Anyone Else ..........................................................................................6

    E. Wheeler's Use of Deadly Force Must Be Evaluated Based on the Facts and Circumstances Known to Wheeler At the Time of the Shooting ................................................................................................7

    F. Abraham Terrazas Was Retained by a Referring Attorney and Dismissed From the Lawsuit in April 2020 .............................................9

    G. Plaintiffs' Counsel Produced the Cell Phone Video During Mr. Terrazas' Deposition and Served Amended Discovery Responses ........9

    H. Evidentiary Sanctions Should Not Be Issued Because the Requested Sanctions Are Too Harsh ......................................................10

    I. Evidentiary Sanctions Are Unwarranted Because There is No Prejudice ..............................................................................................12

III. CONCLUSION .................................................................................................13

# TABLE OF AUTHORITIES

Cases

*Apple Inc. v. Samsun Elecs. Co., Ltd.*,
    881 F. Supp. 2d 1132 (N.D. Cal. 2012) ..........................................................11

*Caryl Richards, Inc. v. Superior Court*,
    10 Cal. Rptr. 377 (Ct. App. 2d 1961) ..............................................................10

*Crummer v. Beeler*,
    8 Cal. Rptr. 698 (Ct. App. 2d 1960) ................................................................10

*Deyo v. Kilbourne*,
    149 Cal. Rptr. 499 (Ct. App. 3d 1978) .............................................................10

*Graham v. Connor*,
    490 U.S. 386 (1989) ...........................................................................................8

*McGinty v. Superior Court*,
    31 Cal. Rptr. 2d 292 (Ct. App. 4th 1994) .........................................................10

*Millenkamp v. Davisco Foods International, Inc.*,
    562 F.3d 971 (9th Cir. 2009) ............................................................................12

*Motown Record Corp. v. Superior Court*,
    202 Cal. Rptr. 227 (Ct. App. 3d 1984) .............................................................10

*Smith v. City of Hemet*,
    394 F.3d 689 (9th Cir. 2005) ..............................................................................8

*Stein v. Hassen*,
    109 Cal. Rptr. 321 (Ct. App. 1973) ..................................................................10

*Tennessee v. Garner*,
    471 U.S. 1 (1985) ................................................................................................8

*Vallbona v. Springer*,
    51 Cal. Rptr. 2d 311 (Ct. App. 4th 1996) .........................................................10

*Wilson v. Jefferson*,
    210 Cal. Rptr. 464 (Ct. App. 1985) ..................................................................10

Other Authorities

Ninth Circuit Model Jury Instructions, Instruction No. 9.22 .......................................9

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR EVIDENTIARY SANCTIONS

## I. INTRODUCTION

This civil rights and state tort lawsuit arises out of the fatal shooting of Juan Ramos ("Mr. Ramos") by Gary Wheeler ("Wheeler") on July 22, 2018. Wheeler shot Mr. Ramos when Mr. Ramos was running away, aiming for his back, without issuing a verbal warning that deadly force would be used. Plaintiffs hereby oppose Defendants' motion for evidentiary sanctions. Defendants' motion should be denied for at least seven reasons. First, there is no evidence that Plaintiffs' counsel acted in bad faith or with intentional wrongdoing in inadvertently failing to produce the cell phone video taken by Abraham Terrazas ("Mr. Terrazas") and his cousins ("cell phone video") prior to Mr. Terrazas' deposition. Defendants boldly assert in their motion that Plaintiffs' counsel at the Law Offices of Dale K. Galipo intentionally concealed the cell phone video and make unfounded allegations that Plaintiffs' counsel at the Law Offices of Dale K. Galipo discussed the cell phone video with Mr. Terrazas prior to the timeframe when his deposition was taken in February 2021. Both of these subjective and conclusory assertions are inaccurate and without merit.

Second, this incident was captured on video from the body-worn cameras of numerous officers who were on scene at the time of the incident, and Wheeler and his counsel were in possession of those videos at the time of Wheeler's deposition. The 31-second cell phone video, while taken from a different angle than the deputies' body worn cameras, does not provide any new information. In the video captured by Rialto Police Department Officer Dane Stordahl's body-worn camera ("Stordahl video"), Mr. Terrazas is visible in the front lawn behind the fence at the time of the lethal gunshot or a split second prior to the gunshot, and in the cell phone video, Mr. Terrazas is visible approximately one second prior to the gunshot and then exits the frame of the video at the time of the gunshot. This is not a situation where Defendants had no information that any video of the shooting existed. Wheeler reviewed the body-cam videos to prepare for his deposition, including the

Stordahl video, and the Stordahl video and screenshots therefrom were shown during Wheeler's deposition and attached as exhibits. Wheeler also gave a lengthy statement to the San Bernardino County Sheriff's Department Homicide Division after the shooting, and in his initial statement, he stated that he had an opportunity to review videos of the incident from the body worn cameras prior to giving his initial statement. (COSB 00193). Wheeler testified at his deposition that he reviewed his initial statement to prepare for the deposition.

Third, the inquiry into whether Wheeler's use of lethal force against Mr. Ramos was excessive and unreasonable must be determined based on the facts and circumstances known to Wheeler at the time of the shooting and not with the benefit of 20/20 hindisght. Wheeler's deposition testimony with respect to his observations made at the time of the shooting—as opposed any testimony based only on his review of the videos—is relevant to this inquiry. Are Defendants suggesting that Wheeler did not testify truthfully at his deposition when he was under penalty of perjury, when he testified that he did not see anyone within 40-45 feet of Mr. Ramos at the time of the shooting, and that Wheeler's counsel would have coached him to testify differently had he reviewed the cell phone video?

Fourth, even if Mr. Terrazas were only 12 feet from Mr. Ramos at the time of the shooting—which Plaintiffs do not agree—this does not warrant a finding that Mr. Terrazas was in Mr. Ramos' "immediate vicinity" at the time of the shooting or a finding that Mr. Ramos posed an immediate threat of death or serious bodily injury to Mr. Terrazas at the time of the shooting. It is undisputed that Mr. Ramos and Mr. Terrazas were separated by a fence at the time of the shooting, and both videos show that Mr. Ramos ran right past Mr. Terrazas and show that Mr. Ramos was not about to stab or attack anyone at the time of the shooting. Wheeler also testified at his deposition that he did not see Mr. Ramos try to attack anyone prior to Wheeler firing his shot, that Mr. Ramos did not make any verbal threats, and that he had not seen the box cutter for two or three seconds at the time that he fired.

Fifth, Plaintiffs' counsel provided the cell phone video to defense counsel immediately upon hearing during Mr. Terrazas' deposition that Defendants did not have a copy of the video. Plaintiffs' counsel produced Mr. Terrazas for deposition and clearly made no efforts to destroy the video or obstruct Mr. Terrazas' deposition testimony. Defendants had an opportunity to question Mr. Terrazas and four other percipient witnesses about the cell phone video at their depositions, and Defendants timely provided the cell phone video to their experts. This is not a situation where Plaintiffs' counsel destroyed evidence, intentionally withheld the evidence, or where the video was discovered on the eve of trial. Sixth, Defendants have not shown that they have suffered prejudice by Plaintiffs' inadvertent delay in disclosing the video. Defendants have long been in possession of multiple body-cam videos capturing this incident, including the video showing Mr. Terrazas in the front yard just prior to the shooting, questioned multiple percipient witnesses about the video, timely provided the video to their experts, and used the video to support their motion for summary judgment. Seventh, the evidentiary sanctions requested by Defendants are completely unwarranted and would distort and undermine the true facts of this case. For each of the above reasons and the reasons that follow, Plaintiffs respectfully request that this Court deny Defendants' motion for evidentiary sanctions.

## II. ARGUMENT

### A. Wheeler Reviewed the Stordahl Video Prior to Giving His Initial Interview and His Deposition

This incident was captured on video from the body-worn cameras of numerous officers who were on scene at the time of the incident, including from the body-worn cameras of Officer Stordahl and County of San Bernardino Sheriff's Department Deputies Thun Houn, Charles Lopez, and Mariusz Kuskowski. Wheeler testified at his deposition that he reviewed video footage of this incident to prepare for his deposition, including the Stordahl video. (Deposition of Gary Wheeler ("Wheeler Depo."), attached to the Declaration of Renee V. Masongsong

("Masongsong Decl.") as "Exhibit 1" at 7:7-22, 10:12-25, 37:1-9). The Stordahl video and screenshots therefrom were shown during Wheeler's deposition and were attached as exhibits. Specifically, "Exhibit 19" to Wheeler's deposition, which is a screenshot from the Stordahl video, shows the positions of Mr. Terrazas, Mr. Ramos, and Wheeler at the time of the shooting. ("Exhibit 19" to Wheeler Depo., attached to Masongsong Decl. as "Exhibit 15"; "Exhibit 1" to Masongsong Decl. ("Wheeler Depo.") at 65:21-66:8). In "Exhibit 19" to Wheeler's deposition, Mr. Terrazas is seen with his arms raised in the same position that he is seen with his arms raised in the cell phone video. ("Exhibit 15" to Masongsong Decl.). Wheeler also gave a statement after the shooting, and in his initial statement, he stated that he had an opportunity to review videos of the incident from the body worn cameras prior to giving his initial statement. (COSB 00193; "Exhibit 1" to Masongsong Decl. ("Wheeler Depo.") at 74:19-75:5). Wheeler testified at his deposition that in addition to reviewing the videos, he also reviewed his initial statement to prepare for the deposition. ("Exhibit 1" to Masongsong Decl. ("Wheeler Depo.") at 7:4-22, 74:19-75:5).

      The Stordahl video shows the position of Mr. Terrazas at the time of the gunshot or a split second prior to the gunshot, and the cell phone video shows the position of Mr. Terrazas approximately one second prior to the gunshot. (Relevant Clip of Stordahl BWC Video ("Stordahl video"), identified in Masongsong Decl. as "Exhibit 5" and manually filed concurrently herewith at 0:00:34-35; cell phone video, attached to Masongsong Decl. as "Exhibit 8" and manually filed concurrently herewith at 0:00:30). Additionally, Mr. Terrazas was interviewed by law enforcement after the shooting and was questioned about his position at the time of the shooting. (COSB 00208). In his interview, Mr. Terrazas describes his position inside the fence in relation to Mr. Ramos and his vehicle, including describing that he waved his arms at Mr. Ramos, and that when Mr. Ramos was running in the wash or ditch outside the fence, Mr. Terrazas stayed inside the fence but started

going over to the fence and went to the edge of the fence. (COSB 00208).

### B. The Stordahl Video Shows the Position of Abraham Terrazas at the Time of the Gunshot or a Split Second Prior to the Gunshot

Approximately five seconds prior to Wheeler firing the lethal gunshot, Mr. Terrazas becomes visible in the Stordahl video. ("Exhibit 5" to Masongsong Decl. ("Stordahl video") at 29 to 31 seconds into the video (time-stamped T23:52:35Z-37Z in the top right corner of the original video); *see also* "Exhibit 16" to Masongsong Decl., which is a screenshot of the video captured at approximately 30 seconds into "Exhibit 5," or at T23:52:36Z). Approximately three seconds prior to the gunshot, Mr. Terrazas can be seen and heard on the Stordahl video calling out to Mr. Ramos from his position behind the fence between the back of the blue sedan and the telephone pole. ("Exhibit 5" to Masongsong Decl. ("Stordahl video") at 32 seconds (T23:52:38Z)). Approximately two seconds prior to the gunshot, Mr. Terrazas can be seen in the Stordahl video with his arms raised from his position behind the fence. ("Exhibit 5" to Masongsong Decl. ("Stordahl video") at 33 seconds (T23:52:39Z); *see also* "Exhibit 17" to Masongsong Decl., which is a screenshot of the video captured at approximately 34 seconds into "Exhibit 5," or at T23:52:39Z). Mr. Terrazas is still visible in the Stordahl video at the time of the gunshot or a split second prior to the gunshot being fired. ("Exhibit 5" to Masongsong Decl. ("Stordahl video") at 34-35 seconds (T23:52:40-41Z); *see also* "Exhibits 18 and 19" to Masongsong Decl., which are screenshots of the video captured at approximately 34 and 35 seconds into "Exhibit 5," or at T23:52:40Z and T23:52:41Z; *see also* "Exhibit 15" to Masongsong Decl. ("Exhibit 19" from "Wheeler Depo.").

### C. The Cell Phone Video Does Not Show Abraham Terrazas at the Exact Moment of the Gunshot

At approximately 26 to 28 seconds into the cell phone video, Mr. Terrazas can be seen raising his arms in the same position that he raises his arms at

approximately T23:52:39Z on the Stordahl video. ("Exhibit 8" to Masongsong Decl. ("cell phone video") at 0:00:26-28; "Exhibit 5" ("Stordahl video") at 0:00:33). Mr. Terrazas exits the frame of the cell phone video at approximately 29 seconds and is not seen on the video again after that. (Exhibit 8" to Masongsong Decl. ("cell phone video") at 0:00:29). The gunshot occurs at approximately 30 seconds into the cell phone video. (*Id*. at 0:00:30). At that point, Mr. Terrazas is not seen on the cell phone video. (*Id*.). The cell phone video is taken from a different perspective than the Stordahl video, but it does not definitively show the distance between Mr. Terrazas and Mr. Ramos at the time of the gunshot any more than the Stordahl video. (*Id*.).

### D. Both Videos Show that Mr. Ramos Did Not Pose An Immediate Threat of Death or Serious Bodily Injury to Abraham Terrazas or Anyone Else

It is clear from both the Stordahl video and the cell phone video that Mr. Ramos did not pose an immediate threat of death or serious bodily injury to Mr. Ramos or any other person at the time of Wheeler's lethal gunshot. ("Exhibit 8" to Masongsong Decl. ("cell phone video") at 0:00:26-31; "Exhibit 5" ("Stordahl video") at 0:00:31-35). Plaintiffs' police practices expert, Scott DeFoe, reviewed the Stordahl video showing the position of Mr. Terrazas at the time of the gunshot or a split second prior to the gunshot, reviewed the interview of Mr. Terrazas where he described his position at the time of the shooting, and also reviewed the deposition of Mr. Terrazas where Mr. Terrazas again described his position at the time of the shooting. (Declaration of Scott DeFoe at Dkt. Doc. No. 62-2 p. 2-4). Mr. DeFoe has also reviewed the cell phone video, and it is listed in his Declaration in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment. (Dkt. Doc. No. 69-2 at pp. 2-4). Mr. DeFoe also reviewed the deposition of Wheeler, where Wheeler testified that at the point that he fired, he did not see any person on the same side of the chain link fence other than Mr. Ramos and testified that prior to firing his shot at Mr. Ramos, he did not see Mr. Ramos trying to attack anyone with

the box cutter. ("Exhibit 1" to Masongsong Decl. ("Wheeler Depo.") at 52:8-22, 53:3-13, 78:1-20). This testimony from Wheeler is consistent with the videos.

As asserted in Plaintiffs' motion for summary judgment, Plaintiffs believe that summary judgment should be granted in their favor because the undisputed facts show that Mr. Ramos did not pose an immediate threat of death or serious bodily injury to any person at the time of the shots. (*See* Dkt. Doc. No. 62). Plaintiffs even used the cell phone video as an exhibit in support of their motion for summary judgment. At the time of the shooting, Mr. Terrazas and the other family members were separated from Mr. Ramos by a fence. ("Exhibit 8" to Masongsong Decl. ("cell phone video") at 0:00:26-31; "Exhibit 5" ("Stordahl video") at 0:00:31-35). Mr. Ramos ran past Mr. Terrazas in the wash or ditch, parallel to the fence and on the opposite side of the fence. (*Id.*). In the videos, Mr. Ramos does not appear to be running directly toward any person, including Mr. Terrazas. (*Id.*; *see also* "Exhibit 2" to Masongsong Decl. ("Kuskowski Depo.") at 21:7-9). Mr. Terrazas does not appear to be afraid of Mr. Ramos at any point; to the contrary, Mr. Terrazas appears to be concerned about Mr. Ramos and attempting to help him. ("Exhibit 8" to Masongsong Decl. ("cell phone video") at 0:00:26-31; "Exhibit 5" ("Stordahl video") at 0:00:31-35). The videos also show that at the time of the shooting, Mr. Ramos was not displaying the box cutter, and was not attempting to stab or attack anyone. (*Id.*). Mr. Terrazas was not in Mr. Ramos' "immediate vicinity" at the time of the shooting when he was some distance away from Mr. Ramos on the opposite side of a fence. Additionally, Mr. Ramos did not make any verbal threats, the deputies did not have any information that Mr. Ramos had injured anyone prior to the shooting, and the deputies had no information that Mr. Ramos had a gun.

**E. Wheeler's Use of Deadly Force Must Be Evaluated Based on the Facts and Circumstances Known to Wheeler At the Time of the Shooting**

Defendants appear to argue that if Wheeler had reviewed the cell phone video prior to his deposition, then he would have testified differently under penalty of

perjury with respect to his observations made at the time of the shooting. At his deposition, Wheeler testified that, at the time of the shooting, he could see a person in the middle of the front yard out of his peripheral vision and estimated that the person was approximately 40 to 45 feet away from Mr. Ramos. ("Exhibit 1" to Masongsong Decl. ("Wheeler Depo.") at 79:6-14). The Stordahl video shows that when Wheeler fired the lethal shot, Wheeler was wearing sunglasses and was focused on Mr. Ramos, aiming for Mr. Ramos' back. In the Stordahl video, Wheeler does not appear to be looking at the family members in the front yard, and the reasonable inference is that Wheeler did not see Mr. Terrazas immediately prior to or at the time of the shooting, which explains why Wheeler gave this estimate at his deposition. Wheeler also testified at his deposition that at the point that he fired, he did not see any person on the same side of the chain link fence other than Mr. Ramos, which is consistent with the videos. ("Exhibit 1" to Masongsong Decl. ("Wheeler Depo.") at 53:3-13).

Since the United States Supreme Court first elucidated the Fourth Amendment reasonableness standard in police shooting-death cases, lower courts and juries have been required to confine their inquiry to the information known to the officer at the time of the use of force. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). "The clarity of hindsight cannot provide the standard for judging the reasonableness of police decisions made in uncertain and often dangerous circumstances." *Tennessee v. Garner*, 471 U.S. 1, 26 (1985). The Ninth Circuit Model Instruction for excessive force claims further informs the jury, "the reasonableness of a seizure must [] be assessed by carefully considering the objective facts and circumstances that confronted the arresting officers." Ninth Circuit Model Jury Instruction 9.22 (citing *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005)). Wheeler was presumably focused on Mr. Ramos at the time of the shooting and may not have even seen Mr. Terrazas immediately prior to or at the time of the shooting, as reflected on the Stordahl video. Therefore, where Mr.

Terrazas was—as opposed to what Wheeler observed immediately prior to and at the time of his use of deadly force—is not relevant to the Fourth Amendment *Graham* analysis.

### F. Abraham Terrazas Was Retained by a Referring Attorney and Dismissed From the Lawsuit in April 2020

Defendants argue, without any supporting evidence, that Plaintiffs' counsel intentionally concealed the cell phone video. This is untrue. Mr. Terrazas was initially retained by a referring attorney and not by the Law Offices of Dale K. Galipo. (Masongsong Decl. at ¶ 8). In conjunction with drafting the pleadings, Plaintiffs' counsel at the Law Offices of Dale K. Galipo received information relevant to Mr. Terrazas' standing through the referring attorney. (*Id*. at ¶ 9). Mr. Terrazas was dismissed from the lawsuit on April 28, 2020, when this Court determined that he did not have standing. (Dkt. Doc. No. 37). Plaintiffs' counsel at the Law Offices of Dale K. Galipo did not have any direct contact with Mr. Terrazas until February 2021 after his deposition was noticed by defense counsel. (Masongsong Decl. at ¶ 13). Mr. Terrazas never provided any documents, including the cell phone video, directly to the Law Offices of Dale K. Galipo. The referring attorney had at some point sent the cell phone video to the Law Offices of Dale K. Galipo, and Plaintiffs' counsel at the Law Offices of Dale K. Galipo were not aware that they had this video until the issue came up during Mr. Terrazas' deposition. Once the issue arose during Mr. Terrazas' deposition, Plaintiffs' counsel searched through what had been sent by the referring attorney, located the video, and immediately emailed it to Defendants' counsel. (*Id*. at ¶ 14).

### G. Plaintiffs' Counsel Produced the Cell Phone Video During Mr. Terrazas' Deposition and Served Amended Discovery Responses

Plaintiffs V.R., including her guardian *ad litem*, and Ramona Terrazas themselves did not ever have a copy of the cell phone. (*Id*. at ¶ 15). During the deposition of Abraham Terrazas on February 25, 2021, Mr. Terrazas testified that he

and his cousins had taken a video of the shooting on a cell phone and that he had given a copy of the video to the referring attorney. The very purpose of fact depositions during the discovery phase is to discover such information. During the deposition, Plaintiffs' counsel at the Law Offices of Dale K. Galipo immediately located the cell phone video that he had given that video to the referring attorney and provided it to defense counsel. Plaintiffs' counsel at the Law Offices of Dale K. Galipo had not reviewed the video prior to this time. (*Id*. at ¶ 16). Plaintiffs' counsel clearly did not destroy the video and clearly did not make any efforts to prevent Mr. Terrazas from appearing at his deposition and giving honest deposition testimony. (*Id*. at ¶ 17). Plaintiffs served amended discovery responses on or around March 3, 2021, including the cell phone video. (*Id*. at ¶ 18).

### H. Evidentiary Sanctions Should Not Be Issued Because the Requested Sanctions Are Too Harsh

The purpose of sanctions is to accomplish the object sought by the discovery process and to secure the just and expeditious resolution of actions, rather than to punish the party who has engaged in conduct constituting a misuse of the discovery process. *See McGinty v. Superior Court*, 31 Cal. Rptr. 2d 292 (Ct. App. 4th 1994); *Caryl Richards, Inc. v. Superior Court*, 10 Cal. Rptr. 377, 388 (Ct. App. 2d 1961); *Crummer v. Beeler*, 8 Cal. Rptr. 698 (Ct. App. 2d 1960). Sanctions are improper if they are not appropriate to the dereliction, and if they exceed that which is necessary to protect the interests of the party adversely affected by the misuse of the discovery process. *See Vallbona v. Springer*, 51 Cal. Rptr. 2d 311 (Ct. App. 4th 1996); *Motown Record Corp. v. Superior Court*, 202 Cal. Rptr. 227 (Ct. App. 3d 1984); *Deyo v. Kilbourne*, 149 Cal. Rptr. 499 (Ct. App. 3d 1978). The chief limitation on the use of sanctions is that the sanction may not be used to put the prevailing party in a better position than that party might have been in had the misuse of the discovery process not been engaged in, and had the results of the discovery process been totally favorable to the prevailing party. *See Wilson v. Jefferson*, 210 Cal.

Rptr. 464 (Ct. App. 1985); *Stein v. Hassen*, 109 Cal. Rptr. 321 (Ct. App. 1973).

Here, Defendants are requesting a determination that "Abraham Terrazas was at such close proximity to Decedent that it was reasonable for Sergeant Wheeler to believe that Decedent posed an imminent and significant threat of causing death or serious physical injury to Abraham Terrazas when Sergeant Wheeler fired his weapon." This determination is contrary to the videos, which show the exact opposite, and contrary to Wheeler's perceptions made at the time of the shooting where Wheeler, at the time of the shooting, did not see Mr. Terrazas but saw a family member 40-45 feet away from Mr. Ramos. Granting Defendants' request for evidentiary sanctions would distort and undermine the true facts of this case. As discussed above, Mr. Ramos did not pose an immediate threat of death or serious bodily injury to any person when he was shot in the back while he was running away, even if Mr. Terrazas were 12 feet away from Mr. Ramos at the time of the gunshot (which Plaintiffs do not agree), including because Mr. Ramos and Mr. Terrazas were separated by a fence, Mr. Ramos never made any verbal threats toward Mr. Terrazas, Mr. Ramos did not make any threatening motions with the box cutter, and Mr. Ramos did not appear to be running directly toward Mr. Terrazas at the time of the gunshot. Additionally, Wheeler testified at his deposition that, at the time that he fired the shot, he had not seen the box cutter for two or three seconds. Therefore, the determination requested by Defendants would be too harsh and would also be inconsistent with the facts of this case and the controlling law, which the parties have briefed in their respective motions for summary judgment and oppositions thereto.

Defendants also ask this court to "issue a ruling allowing Defendants to inform the jury of Plaintiffs' failure to disclose the cell phone video and to allow the jury to make the inference that the cell phone video was kept a secret because it hurts Plaintiffs' case." This request for an adverse inference instruction should also be denied as unreasonably harsh, particularly given that there is no evidence that

Plaintiffs' counsel acted in bad faith or intentional wrongdoing. *See Apple Inc. v. Samsun Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132, 1147 (N.D. Cal. 2012) (to impose an adverse inference instruction, there must be "conscious disregard"). To the contrary, Plaintiffs' counsel produced Mr. Terrazas for deposition, learned during the deposition that Mr. Terrazas had taken a video during the incident and had given that video to the referring attorney, and then immediately located and produced the video. Plaintiffs' counsel did not destroy the video, did not obstruct Mr. Terrazas' testimony in any way, and did not delay in locating the video and transmitting it to Defendants' counsel. Defendants have provided only subjective, conclusory and unfounded allegations against Plaintiffs' counsel. Further, the rationales underlying the imposition of adverse instructions do not apply. As the Ninth Circuit has stated, an adverse inference is based on "the commonsense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy it." *Millenkamp v. Davisco Foods International, Inc.*, 562 F.3d 971, 981 (9th Cir. 2009). In addition to the requested sanctions being too harsh, this does not apply to the instant matter, and thus an adverse inference is not appropriate.

### I. Evidentiary Sanctions Are Unwarranted Because There is No Prejudice

Finally, in addition to all of the reasons stated above, evidentiary sanctions are unwarranted because Defendants cannot show that they suffered any prejudice. As indicated above, Defendants have long been in possession of the body-cam videos capturing this incident, and Wheeler reviewed those videos prior to giving his initial statement and his deposition. Plaintiffs' counsel Mr. Galipo played certain of those videos, including the Stordahl video, at Wheeler's deposition. Wheeler is an experienced officer, and he was represented by counsel at his deposition and was presumably testifying honestly at his deposition with respect to his perceptions at the time of the shooting. Defendants questioned Mr. Terrazas about the cell phone

video at the time of his deposition and also had the cell phone video at the time of the depositions of percipient witnesses Josue Zuniga; David Zuniga, Jr.; David Zuniga, Sr.; and Blanca Zuniga. Defendants also timely provided the cell phone video to their experts, one of whom used the cell phone video to create a video presentation that Defendants relied on to support their motion for summary judgment, which further shows that Defendants have suffered no prejudice. At trial, the jury will review the videos and listen to the testimony of the officers and witnesses, including Wheeler, to determine this case on its merits. Any evidentiary sanctions would be inappropriate and would invade the province of the jury and this court.

### III.   CONCLUSION

For each of the above reasons, Plaintiffs respectfully request that this Court deny Defendants' motion for evidentiary sanctions in its entirety.

Dated: October 18, 2021          LAW OFFICES OF DALE K. GALIPO

                                      By:   */s/ Renee V. Masongsong*
                                             Dale K. Galipo
                                             Renee V. Masongsong
                                             Attorneys for Plaintiffs